Richard S. Busch (SBN 319881)
*E-Mail: rbusch@kingballow.com*
KING & BALLOW
1999 Avenue of the Stars, Suite 1100
Century City, CA 90067
Telephone: (424) 253-1255
Facsimile: (888) 688-0482

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTEM STOLIAROV p/k/a ARTY, an individual. <br><br> PLAINTIFF, <br><br> vs. <br><br> MARSHMELLO CREATIVE, LLC, a Delaware Limited Liability Company; CHRISTOPHER COMSTOCK p/k/a MARSHMELLO, an individual; DANIEL CAMPBELL SMITH, an individual; STEVEN MCCUTCHEON p/k/a STEVE MAC, an individual; MARSHMELLO MUSIC LLC, a Delaware Limited Liability Company; ROKSTONE MUSIC LIMITED, a United Kingdom Private Limited Company; WWKD LIMITED, a United Kingdom Private Limited Company; KOBALT MUSIC PUBLISHING AMERICA, INC., a Delaware Corporation; POLYGRAM PUBLISHING, INC. d/b/a UNIVERSAL POLYGRAM INTERNATIONAL PUBLISHING, a Delaware Corporation. <br><br> DEFENDANTS. | Case No.: 2:19-cv-3934 <br> _____ <br><br> **COMPLAINT FOR COPYRIGHT INFRINGEMENT** <br><br> **DEMAND FOR JURY TRIAL** <br><br> Complaint Filed: |

## JURISDICTION

1.     This Court has subject matter jurisdiction under 28 U.S.C § 1331 as the action arises under the original and exclusive jurisdiction of the federal court and 28 U.S.C § 1338(a) as the controversy arises under the Copyright Act of 1976 (17 U.S.C § 101 *et seq.*).

2.     This Court has personal jurisdiction over Defendants as discussed fully herein.

3.     This Court has general personal jurisdiction over Marshmello Creative, LLC (hereinafter, "Marshmello Creative") because, upon information and belief, it has continuous and systematic contacts with the State of California to render it essentially at home in California.   Specifically, (1) Marshmello Creative is qualified to do business in California and is registered as a foreign corporation with the California Secretary of State; (2) Marshmello Creative's principal place of business is in California, including an office located at 16000 Ventura Blvd. Suite 600, Encino, California 91436, where it employs California residents; and (3) upon information and belief, Defendant Christopher Comstock p/k/a Marshmello (hereinafter, "Marshmello"), a resident of California, is the manager and sole shareholder of Marshmello Creative and is, in fact, the alter ego of Marshmello Creative.

4.     This Court has specific personal jurisdiction over Marshmello Creative because its suit-related conduct creates a substantial connection with the State of California.   Marshmello Creative is a copyright claimant of the United States Copyright Registration for the infringing musical composition "Happier" (hereinafter, the "Infringing Work" or "Happier"), as embodied in the sound recording bearing registration number SR0000831528.   Upon information and belief, Marshmello Creative has generated substantial revenue from exploitation of the Infringing Work in California, which upon information and belief flows

through Marshmello Creative to Defendant Marshmello.   Further and, as discussed more fully below, Marshmello co-wrote and recorded the Infringing Work in California.

5.     This Court has general personal jurisdiction over Marshmello because, upon information and belief, he is a resident of the State of California and this Judicial District, owns property in this Judicial District, and has other substantial contacts with the State of California and with this Judicial District specifically.

6.     This Court has specific personal jurisdiction over Marshmello because this suit arises out of or relates to his contacts with the State of California and this Judicial District.  Specifically, upon information and belief, Marshmello co-wrote the Infringing Work in the State of California.  Upon information and belief, the sound recording of the Infringing Work was also recorded in whole or in part in Marshmello's studio in California.  Additionally, upon information and belief, Marshmello has performed the Infringing Work at California locations including the following: (1) performing "Happier" live on September 20, 2018 at 1 Oak in West Hollywood, California; (2) performing "Happier" live on October 20, 2018 at the Hollywood Bowl in Los Angeles, California; (3) performing "Happier" live on March 14, 2019 at the Microsoft Theater in Los Angeles, California; and (4) performing "Happier" live on March 15, 2019 at the iHeart Radio Music Awards at the Microsoft Theater in Los Angeles, California.

7.     Additionally, this Court has specific personal jurisdiction over Marshmello because, upon information and belief, Marshmello has licensed and/or authorized the licensing, distribution, and sale of the Infringing Work to residents of California and to California companies including within this Judicial District; has directly advertised or authorized others to advertise the Infringing Work through California companies and to California residents; and has

generated substantial revenues from performing the Infringing Work in the State of California and this Judicial District.

8.      This Court has specific personal jurisdiction over Daniel Campbell Smith (hereinafter, "Smith") because this suit arises out of or relates to Smith's contacts with the State of California and this Judicial District.  Upon information and belief, Smith and Defendant Steven McCutcheon p/k/a Steve Mac (hereinafter, "Mac"), began writing "Happier" outside of California, but sent the incomplete version of Happier to Marshmello in California with the specific intent that Marshmello would continue to write/work on the Infringing Work in California, in collaboration with Smith and Mac, and that Happier would be recorded in California, and in this Judicial District.   Furthermore, upon information and belief, the sound recording of the Infringing Work was recorded by Smith in whole or in part in Marshmello's studio in California.  Additionally, Smith has performed the Infringing Work at California locations including the following: (1) performing "Happier" live on September 4, 2018 at The Wiltern in Los Angeles, California; and (2) performing "Happier" live on December 8, 2018 at SAP Center in San Jose, California. Marshmello, Smith, and Mac are in fact practical partners with respect to their work on the Infringing Work.

9.      Additionally, this Court has specific personal jurisdiction over Smith because, upon information and belief, Smith has licensed and/or authorized the licensing, distribution, and sale of the Infringing Work to California companies and to residents of California and within this Judicial District; and has directly advertised or authorized others to advertise the Infringing Work through California companies and to California residents; and has generated substantial revenues from performing the Infringing Work and selling the Infringing Work in the State of California and this Judicial District.

10.     This Court also has specific personal jurisdiction over Smith because, upon information and belief, Smith is signed with Performing Rights Organization ASCAP, which, upon information and belief, directs its actions on Smith's behalf in California, collects public performance royalties on his behalf in this Judicial District, and thereby serves as his agent in this Judicial District, all with respect to the Infringing Work, among other of his musical compositions. Upon information and belief, Smith has entered into agreements with WWKD Limited (hereinafter, "WWKD") to exploit his interest in the Infringing Work and upon information and belief, WWKD has specifically directed its actions on behalf of Smith, as his agent, in this Judicial District. On information and belief, Smith retains the right to approve licenses entered into with respect to the Infringing Work by WWKD.

11.     This Court has specific personal jurisdiction over Mac because this suit arises out of or relates to Mac's contacts with the State of California and this Judicial District.  Upon information and belief, Mac and Smith began writing "Happier" outside of California but sent the incomplete version of Happier to Marshmello in California with the specific intent that Marshmello, in collaboration with Smith and Mac, would continue to write/work on the Infringing Work in California.  Mac and Smith also knew, and intended that Happier would be recorded in California, and in this Judicial District. Furthermore, upon information and belief, Mac licensed and/or authorized the licensing, distribution, and sale of the Infringing Work to California companies and to residents of California and within this Judicial District; and has directly advertised or authorized others to advertise the Infringing Work through California companies and to California residents; and has generated substantial revenues from selling the Infringing Work in the State of California and this

Judicial District. Marshmello, Smith, and Mac are in fact practical partners with respect to their work on the Infringing Work.

12.     Additionally, this Court has specific personal jurisdiction over Mac because, upon information and belief, Mac is signed with Performing Rights Organization ASCAP, which, upon information and belief, directs its actions on Mac's behalf in California, collects public performance royalties on his behalf in this Judicial District, and thereby serves as his agent in this Judicial District, all with respect to the Infringing Work, among other of his musical compositions. Upon information and belief, Smith has entered into agreements with Rokstone Music Limited (hereinafter, "Rokstone") to exploit his interest in the Infringing Work and upon information and belief, Rokstone has specifically directed its actions on behalf of Smith, as his agent, in this Judicial District.   Upon information and belief, Mac also retains the right to approve licenses entered into by Rockstone with respect to the Infringing Work. Marshmello, Smith, and Mac are in fact practical partners with respect to their work on the Infringing Work.

13.     This Court has general personal jurisdiction over Marshmello Music LLC (hereinafter, "Marshmello Music") because, upon information and belief, it has continuous and systematic contacts with the State of California to render it essentially at home in California.  Specifically, (1) Marshmello Music is qualified to do business in California and is registered as a foreign corporation with the California Secretary of State; (2) Marshmello Music maintains a strong presence in California, including an office located at 16000 Ventura Blvd. Suite 600, Encino, California 91436, where it employs California residents; and (3) upon information and belief, Defendant Marshmello, a resident of California, is the manager of and sole shareholder of Marshmello Music.  Marshmello Music is in fact the alter ego of Marshmello.

14.     This Court has specific personal jurisdiction over Marshmello Music because its suit-related conduct creates a substantial connection with the state of California and this Judicial District.  Specifically, (1) Marshmello Music knowingly and intentionally licensed and distributed, or authorized the licensing and distribution of, the Infringing Work in California and to California companies; (2) Marshmello Music maintains a contractual and alter ego relationship with it sole shareholder Marshmello, a California citizen, under which Marshmello Music receives income and its interest in the Infringing Work, which was created in California by Marshmello, and recorded in California by Marshmello and Smith; (3) Marshmello Music's conduct causes injury to, and is directed at, Plaintiff and his intellectual property within the United States and the State of California; (4) Marshmello Music has benefitted substantially from the sale and exploitation of the Infringing Work to California residents; (5) Marshmello Music is, at a minimum, constructively aware of its continuous and substantial commercial interactions with California residents; (6) Marshmello Music actively participated in and/or authorized the unlawful manufacture of the Infringing Work in California and to California companies; (7) Marshmello Music issued a mechanical license allowing for the Infringing Work to be included in the recording of "Happier" (hereinafter, the "Infringing Sound Recording"), which was recorded in California; and (8) Marshmello Music advertised the Infringing Work to California residents and through California Companies.

15.     This Court has general personal jurisdiction over Rokstone. Rokstone, through its affiliation with Polygram Publishing, Inc. d/b/a Universal Polygram International Publishing (hereinafter, "Universal"), conducts systematic and continuous business in the State of California and this Judicial District and has generated substantial revenue from the exploitation of the

Infringing Work in California from Universal's principal place of business located at 2100 Colorado Avenue, Santa Monica, California 90404.

16.     This Court has specific personal jurisdiction over Rokstone because its suit-related conduct creates a substantial connection with the State of California, which includes:  (1) Rokstone is engaged in conduct within the State of California and in this Judicial District, specifically Rokstone knowingly and intentionally licensed and distributed, or authorized the licensing and distribution of, the Infringing Work to California companies and for California distribution; (2) Rokstone issues licenses through Universal as its agent for exploitation in the United States and California specifically, over which, upon information and belief, Mac and Rokstone retained approval rights; (3) Rokstone has benefitted substantially from the sale and exploitation of the Infringing Work through California companies and to California residents; (4) Rokstone is, at a minimum, constructively aware of its continuous and substantial commercial interactions with California residents; (5) Rokstone actively participated in, and/or authorized, the unlawful manufacture of the Infringing Work in California, including entering into a mechanical license with the California based record label allowing for the Infringing Work to be included in the Infringing Sound Recording, which was recorded in California; and (6) Rokstone advertised the Infringing Work through California companies and to California residents.

17.     This Court has specific personal jurisdiction over WWKD because its suit-related conduct creates a substantial connection with the State of California, which includes:  (1) WWKD is engaged in conduct within the State of California and in this Judicial District, specifically Defendant knowingly and intentionally licensed and distributed, or authorized the licensing and distribution of, the Infringing Work to California companies and for California distribution; (2) WWKD issued a mechanical license with the California based record label

allowing for the Infringing Work to be included in the Infringing Sound Recording, which was recorded in California; (3) WWKD issues licenses, through Universal as its agent for exploitation in the United States and California specifically, over which, upon information and belief, Smith and WWKD retained approval rights; (4) WWKD has benefitted substantially from the sale and exploitation of the Infringing Work through California companies and to California residents; (5) WWKD is, at a minimum, constructively aware of its continuous and substantial commercial interactions with California residents; (6) WWKD actively participated in, and/or authorized, the unlawful manufacture of the Infringing Work in California; and (7) WWKD advertised the Infringing Work through California companies and to California residents. Finally, Smith is the sole shareholder of WWKD and the two are alter egos of each other.  Smith, and WWKD, as discussed above, purposefully directed the incomplete version of the Infringing Work to Marshmello in California with the knowledge and intent that Marshmello, in collaboration with Smith and Mac, would write and complete the Infringing Work in California.

18.    This Court has general personal jurisdiction over Universal because, upon information and belief, it has continuous and systematic contacts with the State of California to render it essentially at home in California.  Specifically, Universal has a principle place of business located 2100 Colorado Avenue, Santa Monica, California 90404 where, upon information and belief, it employs California residents and conducts substantial business.

19.    This Court has specific personal jurisdiction over Universal because its suit-related conduct creates a substantial connection with the State of California and this Judicial District.  Specifically, (1) Universal knowingly and intentionally licensed and distributed, or authorized the licensing and distribution of, the Infringing Work in California and to California companies as the agent

for both WWKD and Rokstone; (2) Universal maintains a contractual relationship with Defendant Rokstone and Defendant WWKD under which it sub-publishes the Infringing Work; (3) Universal's conduct causes injury to, and is directed at, Plaintiff and his intellectual property within the United States and the State of California; (4) Universal has benefitted substantially from the sale and exploitation of the Infringing Work to California residents; (5) Universal is, at a minimum, constructively aware of its continuous and substantial commercial interactions with California residents; (6) Universal actively participated in and/or authorized the unlawful manufacture of the Infringing Work in California and to California companies, including by signing a mechanical license with the California-based record label authorizing the inclusion of the Infringing Work in the Infringing Sound Recording, which was recorded in California; and (7) Universal advertised the Infringing Work to California residents and through California Companies.

20.    This Court has general personal jurisdiction over Kobalt Music Publishing America, Inc. (hereinafter, "Kobalt") because, upon information and belief, it has continuous and systematic contacts with the State of California to render it essentially at home in California.  Specifically, (1) Kobalt is qualified to do business in California and is registered as a foreign corporation with the California Secretary of State; and (2) Kobalt maintains a strong presence in California, including an office located at 8201 Beverly Blvd, 4th Floor, Suite 400, West Hollywood, California 90048, where it employs California residents.

21.    This Court has specific personal jurisdiction over Kobalt because its suit-related conduct creates a substantial connection with the State of California and this Judicial District.  Specifically, (1) Kobalt knowingly and intentionally licensed and distributed, or authorized the licensing and distribution of, the Infringing Work in California and to California companies; (2) Kobalt maintains

a contractual relationship with Marshmello, a California citizen under which Kobalt receives income and its interest in the Infringing Work, which was created in California; (3) Kobalt's conduct causes injury to, and is directed at, Plaintiff and his intellectual property within the United States and the State of California; (4) Kobalt has benefitted substantially from the sale and exploitation of the Infringing Work to California residents; (5) Kobalt is, at a minimum, constructively aware of its continuous and substantial commercial interactions with California residents; (6) Kobalt actively participated in and/or authorized the unlawful manufacture of the Infringing Work in California and to California companies, including by signing a mechanical license with the California based record label authorizing the inclusion of the Infringing Work in the Infringing Sound Recording, which was recorded in California; and (7) Kobalt advertised the Infringing Work to California residents and through California Companies.

## VENUE

22.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to the claim occurred in this Judicial District.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1400 as at least one of the Defendants reside or may be found in this Judicial District and is subject to personal jurisdiction.

23.     This case is properly filed in the Central District, as a substantial part of events giving rise to this case occurred in the Central District of California.

## INTRODUCTION

24.     Plaintiff Artem Stoliarov (hereinafter, "Arty") hereby complains and alleges against Defendants: Marshmello, Mac, Smith, Marshmello Creative, Marshmello Music, Rokstone, WWKD, and Kobalt (collectively, "Defendants") as follows:

25.     This is an action for willful copyright infringement. In 2014, One Republic wrote and recorded the musical composition "I Lived." On September 23, 2014, Arty created an authorized derivative work of "I Lived," entitled "I Lived (Arty Remix)."  Arty does not claim ownership of the original underlying musical composition "I Lived" either as embodied in the original work bearing that name, or in the "I Lived (Arty Remix)." Arty only owns the original compositional elements he added to the underlying composition "I Lived" as embodied in "I Lived (Arty Remix)" (those original compositional elements added by Arty are hereinafter referred to as the "Original Work" or "I Lived (Arty Remix))."   As discussed herein, it was only the original compositional elements that Arty added to the underlying composition "I Lived" that were willfully copied by Defendants note for note and became the most recognizable and important part of the Infringing Work.  A United States Copyright for those original compositional elements Arty added to the underlying composition in "I Lived (Arty Remix)" was duly registered with the United States Copyright Office on March 6, 2019 bearing Registration Number PA0002157682.

26.     The Defendants are the credited writers, copyright claimants, performers, publishers, producers, and/or administrators of the Infringing Work "Happier" which, as set forth more fully herein, deliberately copied the infringed original elements from the Original Work. Defendants copied the Original Work without license or consent, and have exploited the subsequent  Infringing Work to their collective benefit without regard to Plaintiff's rights and to Plaintiff's detriment.   The Infringing Work directly misappropriate quantitatively and qualitatively important portions of Plaintiff's Original Work in a manner that is easily recognizable to the ordinary observer. The Infringing Work is substantially

similar to the Original Work as discussed fully below, and satisfies both the extrinsic and intrinsic test for copyright infringement. All Defendants herein are practical partners of each other as that term is understood under California law. All Defendants herein are jointly and severally liable for willful copyright infringement, as all have benefitted from the copying of the Original Work as described herein, and all have violated one or more of Plaintiff's exclusive rights under Section 106 of the United States Copyright Act.

## **PARTIES**

27.    Plaintiff Arty,  an individual, is  a citizen of Russia residing in the United States of America on a visa.  Arty created the original compositional elements that is the basis of this lawsuit and is embodied in the Infringing Work in a manner that constitutes willful copyright infringement.  Arty is a musician, producer, and DJ.  Arty is  a legal owner of the registered copyright  in the Original Work as discussed above.

28.    Defendant Marshmello Creative is a limited liability company organized and existing under the laws of Delaware with its principal place of business at 16000 Ventura Blvd., Suite 600 Encino, California 91436. Marshmello Creative is the copyright claimant of the Infringing Work. Marshmello Creative has generated substantial revenue from its authorization to unlawfully exploit, and direct exploitation of, the Infringing Work.

29.    Defendant Marshmello, an individual is, upon information and belief, a resident of the State of California.  Marshmello is a writer and performer of the Infringing Work "Happier."  Upon information and belief, he is signed with Defendant Marshmello Music and Defendant Kobalt.

30.    Defendant Smith, an individual, is a citizen of the United Kingdom. Smith is a singer, songwriter, and producer.  He founded the British rock band

Bastille.  In 2018, he collaborated with Marshmello and Mac in co-writing the Infringing Work.  Smith is the sole shareholder in Defendant WWKD.

31.     Defendant Mac, an individual, is a citizen of the United Kingdom. Mac is a songwriter and producer signed with Defendant Rokstone.  Mac is a writer of the Infringing Work.  In 2018, he collaborated with Marshmello and Smith in co-writing the Infringing Work.

32.     Defendant Marshmello Music is a limited liability company organized and existing under the laws of Delaware.  Marshmello Music has a principal place of business at 16000 Ventura Blvd., Suite 600 Encino, California 91436.  Marshmello Music is a publisher of the Infringing Work "Happier." Marshmello Music is Marshmello's publisher and serves as the administrator and/or music publisher of the Infringing Work.  Marshmello Music has also exploited the Infringing Work and collects royalties for the Infringing Work as described herein.

33.     Rokstone is a private limited company organized and existing under the laws of the United Kingdom with its principal place of business at Berbies, 9 Bonhill Street, London, EC2A 4DJ.  Upon information and belief, Rokstone serves as a music publisher of the Infringing Work for Defendant Mac's share of the Infringing Work and is affiliated with Universal, which administers Rokstone's interests in the United States.  Rokstone has also exploited the Infringing Work and collects royalties for the Infringing Work as described herein.

34.     WWKD is a private limited company organized and existing under the laws of the United Kingdom with its principal place of business at 2nd Floor Northumberland House, 303-306 High Holborn, London, United Kingdom, WC1V 7JZ.  Upon information and belief, WWKD serves as a music publisher of the Infringing Work and is affiliated with Universal, which upon information

and belief operates under a license agreement with WWKD and acts as WWKD's agent and administers WWKD's interests in the United States. WWKD has also exploited the Infringing Work and collects royalties for the Infringing Work as discussed herein.

35.    Defendant Universal is a Delaware corporation organized and existing under the laws of Delaware with its registered agent located at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. Universal also has offices located in Los Angeles, California.  Upon information and belief, Universal sub-publishes Defendant Rokstone's and Defendant WWKD's interest in the Infringing Work.  Universal has exploited the Infringing Work and collects royalties for the Infringing Work as discussed herein.

36.    Defendant Kobalt is a Delaware corporation organized and existing under the laws of Delaware with its principal place of business at 220 West 42nd Street, 11th Floor, New York, New York 10036.  Kobalt also has offices located in Los Angeles, California.  Upon information and belief, Kobalt is the publishing administrator for Defendant Marshmello Music on the Infringing Work "Happier."  Upon information and belief, Defendant Marshmello signed a global publishing deal with Kobalt under which Kobalt administers Marshmello's catalog.  Kobalt has also exploited the Infringing Work and collects royalties for the Infringing Work as discussed herein.

## **STATEMENT OF FACTS**

### 1.    **Background of the writer of "I Lived (Arty Remix)"**

37.    Arty is an electronic dance musician, producer, and DJ who has collaborated with artists including Halsey, Armin van Buuren, Above & Beyond, BT, Paul van Dky, Mat Zo, OneRepublic, and Matisse & Sakko.

38.     In 2011, Arty was rated number 25 in the Top 100 DJs selection of DJ Magazine, and his debut album, *Glorious*, peaked at #14 on the US Dance/Electronic Albums chart.

39.     2018 was a record-breaking year for Arty, which began with his single *Sunrise* going to #2 on US dance radio, and then closing the year with "Velvet" released on *Ninjawerks*, which was the first ever EDM and gaming collaboration soundtrack.

40.     In 2018 alone, Arty released 20 new songs between his two projects: ARTY, and progressive trance-focused, ALPHA 9, including incredibly successful remixes for Above and Beyond, Axwell ∧ Ingrosso, and Armin Van Buuren, making him #1 in 2018 for most releases by any EDM artist. Further, already in 2019, Arty's single "Save Me Tonight" has reached #1 on US Dance Radio.

41.     Arty has built an international following mixing his trademark big-room anthems with downtempo electronica year after year, showcasing his gift for translating club-focused sounds to the pop/radio format.  With nods to classic trance, Arty continues to produce under the moniker ALPHA 9, and is currently wrapping up a United States tour with special performances internationally.

42.     Further, with an XS Encore Las Vegas residency under his belt, and a pedigree of performances at Ultra, Electric Daisy Carnival, Tomorrowland, Ushuaïa, Amnesia Ibiza, and Creamfields, Arty has established himself as one of the music industry's most consistent artists, a prodigious talent, and has become a go-to for other artists, crafting immensely popular remixes for Axwell ∧ Ingrosso, Armin Van Buuren, Halsey, London Grammar, Above & Beyond, Porter Robinson, Years & Years, and importantly, One Republic.

43.     One Republic originally recorded the song "I Lived", which spent 15 weeks on the Billboard Mainstream Top 40 chart in 2014 and 2015.

Following the success of the One Republic original, Arty created an authorized remix of the "I Lived" track, and is a credited writer and producer of "I Lived (Arty Remix)," which was released in 2014.

44.    To date, the Original Work has generated over 10,000,000 streams on Spotify and over 3,800,000 views on YouTube.

**2.    Background and Success of the Infringing Work**

45.    Defendants are the performers, writers, producers, publishers, copyright owners, and administrators of the Infringing Work.

46.    The single "Happier" was released on August 17, 2018 by Astralwerks, a division of Universal Music Group.

47.    Upon information and belief, Defendant Smith and Defendant Mac began writing the Infringing Work in the United Kingdom, but directed the incomplete Infringing Work to Defendant Marshmello in California to complete the writing thereof.  Upon information and belief, Defendant Marshmello added the infringing material to the Infringing Work, in collaboration with Mac and Smith, while working in the State of California.  Defendant Marshmello reportedly wrote fifteen different versions of the Infringing Work, in collaboration with Mac and Smith, in an attempt finish the Infringing Work before finally settling on the final iteration of the Infringing Work, which as set forth below, contains note for note copying of the Original Work.

48.    The Infringing Work peaked at No. 2 on U.S. Billboard Hot 100 on February 16, 2019.  The song has been on the chart for 35 weeks and remains on the chart at No. 12.  "Happier" has been on Billboard Adult Contemporary for 20 weeks with a peak position of No. 9 for the week of April 27, 2019.  "Happier" peaked at No. 2 on Billboard Adult Top 40 on December 22, 2018 and was on the chart for 31 weeks.  "Happier" peaked at No. 1 on Billboard Dance Club Songs on November 17, 2018 and was on the chart for 20 weeks.  "Happier" is

currently the No. 1 song on Billboard Hot Dance/Electronic Songs. "Happier" has been No. 1 on the chart since September 29, 2018, 31 weeks, and has been on the chart for a total of 35 weeks. "Happier" peaked at No. 1 on Billboard Pop Songs on November 17, 2018 and was on the chart for 30 weeks. "Happier" peaked at No. 2 on Billboard Rock Airplay on October 27, 2018. "Happier" remains on the chart at No. 6 and has been on the chart for 35 weeks.

49. "Happier" was certified 2x Multi-Platinum on January 22, 2019 by RIAA for selling 2,000,000 copies.

50. As of May 4, 2019, the "Happier (Official Lyric Video)" has attracted more than 333,732,300 views on YouTube. As of May 4, 2019, the "Happier (Official Music Video)" has generated more than 283,987,600 views on YouTube. As of April 23, 2019, "Happier" has over 729,182,000 streams on Spotify.

51. Defendant Marshmello and Defendant Smith performed "Happier" live on *Good Morning America* on November 7, 2018. Defendant Marshmello and Defendant Smith performed "Happier" live on *The Ellen DeGeneres Show* on December 11, 2018. Defendant Marshmello and Defendant Smith performed "Happier" live on *The Voice* on December 19, 2018.

52. Upon information and belief, Defendant Marshmello performed "Happier" at Electronic Zoo – New York's premiere electronic music festival and at the iHeartRadio Jingle Ball in Philadelphia, Pennsylvania. Upon information and belief, Defendant Marshmello is currently on tour and has performed "Happier" in India, Thailand, Australia, Japan, California, Florida, and Nevada. Upon information and belief, Defendant Marshmello has also performed "Happier" in England, Minnesota, Arizona, Georgia, and Colorado.

53. The Infringing Work was also performed in a virtual concert live in the videogame *Fortnite*. Upon information and belief, the virtual performance

reached almost 10 million users. Upon information and belief, the Infringing Work moved from No. 8 on the Billboard Hot 100 to No. 2 following the virtual concert. The YouTube video of this event has been viewed in excess of 6,067,620 times.

54. The Infringing Work was played at the 2019 NFL draft on April 25, 2019 in front of an audience of more than 200,000 people. The Infringing Work was adapted to focus on the infringing material. This demonstrates that the infringing material is critical to the success of the Infringing Work and the most important part of the Infringing Work. At bottom, the Infringing Work has been a worldwide phenomenon, generating, upon information and belief, in excess of $20 million in revenue. Its success is owing in substantial part to the unauthorized inclusion of the Original Work. Defendants are required to disgorge their ill-gotten gains under the United States Copyright Act, as the success of the Infringing Work is due in large part to the unauthorized inclusion of the Original Work.

**3.    Access**

55. As set forth above, the Original Work was also a huge success and brought both the Original Work and Arty to the attention of the entire dance music/EDM industry.

56. Indeed, Defendant Marshmello is familiar with Plaintiff and his work as the two are personal acquaintances and often perform at the same musical venues and festivals including Beyond Wonderland in Southern California in March 2015, Freaknight on October 26, 2018 in Seattle, Washington, Decadence NYE 2016 music festival held on December 30-31, 2016 in Chandler, Arizona, and the upcoming Electric Love Festival to be held in Salzburgring, Austria on July 4-6, 2019. Many of these events saw Arty and

Marshmello perform on the same day, including at least one event where Arty performed "I Lived (Arty Remix)."

57.     In October 2017, Plaintiff and Defendant Marshmello were in Las Vegas together at an Alesso show at XS the night before Defendant Marshmello's XS residency.

58.     Defendant Kobalt publishes works by both Plaintiff and Defendant Marshmello.

59.     Plaintiff's manager has specifically told Defendant Marshmello's manager that he managed Plaintiff.

60.     Defendant Marshmello's team was in talks with Plaintiff's manager about designing and producing Marshmello shows.

61.     Defendant Marshmello's manager has attended events hosted by Plaintiff's manager in Los Angeles, California.

62.     Defendant Marshmello's manager and Plaintiff's booking agent are closely acquainted.

63.     Defendant Marshmello and his manager have met to play toplines in the past and made mention of working with Plaintiff.

64.     Defendant Marshmello was thus undeniably fully familiar with the work of Plaintiff.

65.     Given that Plaintiff and Defendant Marshmello are both active in the EDM community and their music represents the same music genres, and the fact that the Original Work is itself a major hit created by Plaintiff, and known by all in the EDM community including Marshmello to be so, and the fact that Arty performed the Original Work at events where Marshmello was also present, it is undeniable that Defendant Marshmello, Smith, and Mac were familiar with the Original Work at the time they wrote the Infringing Work.

66.   As a result, given the above, including the keen knowledge Marshmello has of Arty and his work, Defendants unquestionably had access to the Original Work, were fully familiar with the Original Work, and participated in the willful copying of it.

**4.   <u>Substantial Similarity</u>**

67.   Upon the release of the Infringing Work, Plaintiff immediately recognized his own work, "I Lived (Arty Remix)."

68.   Fans of both artists have noted the clear similarity of both the Original Work and the Infringing Work.  For example, in September 2018, a fan Tweeted that when he heard "Happier," he immediately thought of "I Lived (Arty Remix)."  Defendant Marshmello liked this Tweet.

69.   In addition to being apparent to the ordinary listener, a comparison of the musical elements of both "I Lived (Arty Remix)" and the Infringing Work reveals the works are substantially similar.  Each example below shows that Defendants copied qualitatively and quantitatively important portions of "I Lived (Arty Remix)" and placed those copied portions into qualitatively and quantitatively important portions of the Infringing Work.

70.   As evidenced in the following musical transcription, the repeating 4-bar synthesizer melody in the Infringing Work is almost identical to the first 4-bars of the 8-bar synthesizer melody in the Original Work.  Out of 20 notes in the Infringing Work, the order of the first 19 pitches is identical to the order of the first 19 pitches in the Original Work.  Additionally, 15 out of 20 notes have identical metric placements (i.e. placement on or within a beat in a bar), and identical pitches.  Furthermore, 11 of the 20 notes have identical pitches, identical metric placements, and identical rhythmic durations.

### Synthesizer Melodies: Comparative Transcription in C Major



71.     The chords accompanying the synthesizer melodies also have similarities.  The synthesizer melodies begin in bar 1 with a vi chord, and at the end of bar 4, there is a V chord that moves back to a vi chord in bar 5.  The synthesizer melody at issue is heard for a total of approximately 88 seconds of the 4:25 duration of the Original Work.  The synthesizer melody at issue is heard for a total of approximately 57 seconds of the 3:33 duration of the Infringing Work.  These similarities are detailed in the following musical transcription:

### Original Work Synthesizer Melody in its Recorded Key of A Major



### Infringing Work Synthesizer Melody in its Recorded Key of F Major



72.    There is very strong objective musicological evidence that a significant amount of melodic expression in the Infringing Work is copied from the Original Work with each of the transcriptions above showing that the Infringing Work was modeled after and copied original, prominent, and qualitatively and quantitatively important parts of the Original Work.   The qualitatively and quantitatively important substantial similarities in each of the examples above, and between the works as a whole, coupled with undeniable access makes any claim of independent creation of the Infringing Work dead on arrival.   The elements copied from the Original Work are also original as there

is no prior art substantially similar to the Original Work.  The copying alleged herein constitutes willful copyright infringement.

**5.**     **Continued Exploitation**

73.     The overwhelming success of the Infringing Work set forth above has provided Defendants substantial opportunities to tour and perform around the world.  The revenue and profits derived from these performances and appearances, among all other revenue and profits, are directly attributable to the success of the Infringing Work.  Thus, the touring and concert revenue generated for Defendants is causally connected to the Infringing Work, such that the touring revenue, concert revenue, and related public performance revenue should be disgorged by Plaintiff. The same is true of the inclusion of the Original Work in *Fortnite*, and with respect to indirect profits received by the Defendants with respect to the Infringing Work.

74.     Not only has the Infringing Work been a huge musical success for the Defendants, but it has resulted in touring revenue, artist royalties, licensing revenue, producer royalties, and songwriting and publishing revenue attributable to the success of the Infringing Work.  These opportunities would not have been available to Defendants if they had not infringed Plaintiff's Original Work.

75.     The Infringing Work continues to be reproduced, sold, distributed, publicly performed, licensed, and otherwise exploited on compact discs and albums by Defendants, and as digital downloads, ringtones, and mastertones, and in music videos, all without payment to Plaintiff.

76.     As discussed above, all Defendants are responsible in some manner for the events described herein and are liable to Plaintiff for damages available under the Copyright Act.  Defendants are involved with the creation, release, reproduction, distribution, exploitation, licensing, receipt of revenue, and public performance of the Infringing Work, which constitutes, among other things, the

improper preparation of a derivative work and direct, vicarious, and contributory infringement. As co-infringers and practical partners, Defendants are jointly and severally liable for all amounts owed, and for the profits enjoyed by the others. Upon information and belief, Defendants have received, or are owed in pipeline money, in total, more than $20 million in profits related to the Infringing Work. This revenue and profit received by Defendants include, but is not limited to, artist royalties, producer royalties, writer and publisher royalties, licensing royalties, synchronization royalties, public performance royalties, touring revenue, and other revenue, among other things, all of which are directly attributable to the Original Work and should be disgorged to Plaintiff.

77.     These acts by Defendants are willful, knowing, and malicious, and perpetrated without regard to Plaintiff's rights.

## FIRST CAUSE OF ACTION

### (Copyright Infringement – 17 U.S.C. § 501)

### (Against All Defendants)

78.     Plaintiff respectfully repeats and incorporates by reference the allegations contained in Paragraphs 1 through 77, as though fully set forth herein.

79.     Plaintiff is the legal or beneficial owner of the United States copyright in the work "I Lived (Arty Remix)," Registration Number PA 2-157-682, as discussed above, relating to the original compositional elements he added to the underlying composition "I Lived."

80.     Defendants have directly, vicariously, and/or contributorily infringed and/or induced infringement of Plaintiff's copyright in violation of 17 U.S.C. § 501.

81.     Defendants had access to "I Lived (Arty Remix)," as discussed above.

82.   Defendants' acts were performed without Plaintiff's permission, license, or consent.  Defendants' unauthorized reproduction, distribution, public performance, display, and creation of a derivative work, "Happier," infringes Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 101 *et. seq*.

83.   Defendants' infringement has been and continues to be, willful, intentional, purposeful, and with complete disregard to Plaintiff's rights.

84.   As a direct and proximate result of Defendants' infringement, Plaintiff has been irreparably harmed.

85.   "Happier" copies prominent original parts of "I Lived (Arty Remix)."  This copying satisfies both the intrinsic and extrinsic tests to establish copyright infringement.

86.   From the date of creation of "Happier," all Defendants have infringed Plaintiff's copyright interest in "I Lived (Arty Remix)" including:

a.   by substantially copying and publicly performing, or authorizing the copying and public performance, including publicly performing "Happier" at radio, live concerts, personal appearances, and on video, television, and otherwise;

b.   by substantially copying the related marketing and promotion of the sale of the videos, tickets to concerts and other performances, and other merchandise; and

c.   by participating in and furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial use of "I Lived (Arty Remix)" in and as part of "Happier," packaged in a variety of configurations and digital downloads, mixes, and versions, and performed in a variety of ways including radio, concerts, personal appearances, video, television, and/or otherwise.

87.    Plaintiff has received no copyright ownership interests in, and for any of the exploitations of, "Happier" or any of the works associated with "Happier."

88.    Defendants have and continue to reproduce, distribute, and manufacture large numbers of "Happier" which violates Plaintiff's copyrights and are at issue in this lawsuit.  Defendants have not only marketed and exploited the works that are at issue but have granted or caused to be granted to various parties, licenses to produce, sample, and/or distribute the work that is in violation of Plaintiff's copyright.

89.    Defendants had the right and ability to control other infringers and have derived a direct financial benefit from that infringement such that Defendants should be found to be vicariously liable.

90.    Defendants, with knowledge of the infringement, materially contributed to the direct infringement alleged herein such that they may be found contributorily liable.

91.    The infringement is continuing as "Happier" continues to be licensed for sale, downloads, ringtones, mastertones, and other exploitations by Defendants, and/or their agents.

92.    As a direct and proximate result of Defendants' infringement, pursuant to 17 U.S.C. § 504(a)(1) and (b), Plaintiff is entitled to actual damages in addition to Defendants' profits both domestically and relating to foreign sales of other exploitation of "Happier" that were manufactured, distributed, or otherwise infringed domestically.  Further, Plaintiff is entitled to a running royalty on all future exploitations of "Happier" following judgment in an amount to be determined.

93.    In the alternative to profits and actual damages, pursuant to 17 U.S.C. § 504(c), Plaintiff is entitled to the maximum amount of statutory damages for each act of copyright infringement.

94.    As a direct and proximate result of Defendants' infringement, Plaintiff has incurred attorneys' fees and costs which are recoverable pursuant to 17 U.S.C. § 505.

95.    Defendants' conduct has caused, is continuing to cause, and will further cause great damage to Plaintiff, which damages cannot be accurately measured in monetary terms, and therefore, unless enjoined by the Court, Plaintiff will suffer irreparable injury, for which Plaintiff is without adequate remedy at law.  Accordingly, Plaintiff is entitled to a permanent injunction pursuant to 17 U.S.C. § 502 following judgment, prohibiting further infringement, reproduction, distribution, sale, public performance, other use, or exploitation of Plaintiff's copyright.

## **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff prays for judgment and relief, as follows:

1.    For judgment in favor of Plaintiff and against Defendants;

2.    For a declaration and finding that Defendants have willfully infringed Plaintiff's copyrighted work in violation of the Copyright Act;

3.    For a declaration and finding that Defendants are directly, vicariously, and/or contributorily liable for copyright infringement, as applicable;

4.    For actual damages and profits for copyright infringement pursuant to 17 U.S.C. § 504(a)(1) and (b), including a finding that Defendants are jointly and severally liable for actual damages, as well as for each other's profits as practical partners;

5.     For an accounting of all profits, income, receipts, or other benefits derived by Defendants from the reproduction, copying, display, promotion, distribution, or sale of products and services or other media, either now known or hereafter devised, that improperly or unlawfully infringe Plaintiff's copyright pursuant to 17 U.S.C. § 504(a)(1) and (b);

6.     For statutory damages, upon election prior to final judgment and in lieu of actual damages and profits, for willful copyright infringement pursuant to 17 U.S.C. § 504(c);

7.     For cost of suit herein, including an award of attorneys' fees pursuant to 17 U.S.C. § 505;

8.     For pre-judgment and post-judgment interest;

9.     For a running royalty and/or ownership share in the Infringing Work following judgment in an amount to be proven at trial, or in the alternative, for the entry of an injunction requiring Defendants, their officers, agents, servants, employees, representatives, successors, licensees, partners, attorneys, and assigns, and all persons acting in concert or participation with each or any one of them to be permanently enjoined from directly or indirectly infringing, reproducing, displaying, promoting, advertising, distributing, or selling any work that infringes, contributorily infringes, or vicariously infringes Plaintiff's rights in the work protected by the Copyright Act;

10.     For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), and otherwise, Plaintiff respectfully demands a jury trial on all issues raised in this complaint.

Dated: May 6, 2019

Respectfully submitted,


By:  /s/ Richard S. Busch
Richard S. Busch (SBN 319881)
*E-Mail: rbusch@kingballow.com*
KING & BALLOW
1999 Avenue of the Stars, Suite 1100
Century City, CA 90067
Telephone: (424) 253-1255
Facsimile: (888) 688-0482

*Attorney for Plaintiff*