# EXHIBIT 3

3LAU Entertainment LLC
2813 Red Arrow Drive
Las Vegas, NV 89135

Dear Remixer:

This will confirm the following agreement ("Agreement") made as of April 29, 2016 between 3LAU Entertainment LLC ("Label") and the individual named in paragraph A of Exhibit A ("you") in respect of your providing remixing services.  Exhibit A is attached hereto shall be incorporated herein by this reference.

For good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, you will remix the master recording (the "Master") set forth in Para. B of Exhibit A and deliver to Label a remix and instrumental (the "Remixed Master"). The title of the Remixed Master is specified in Para. C of Exhibit A. You will be responsible for any and all expenses incurred by you in connection with the Remixed Master.

Label hereby warrants and represents that one hundred percent (100%) of the net profits (the "Net Profits") generated from any and all exploitation of the Remixed Master shall be donated to the Pencils of Promise charity. Notwithstanding anything contained herein to the contrary, in the event that Label is in breach of its foregoing representation and warranty, Remixer shall be entitled to Fifty Percent (50%) of  such Net Profits.

You warrant and represent that no materials, (including, but not limited to, so-called "samples") furnished or selected by you and contained in the Remixed Master will violate or infringe upon any rights of any person.

No fees or royalties will be payable to you in respect of the Remixed Master.  In this connection, you are to deliver mixes of the same high quality as other mixes you have currently been delivering to other record labels.

Label (and any licensee of Label or its exclusive recording label and/or distributor) shall have the right (and may grant to others the right) to reproduce, publish, print or disseminate in any medium your professional name as news or information for the purpose of trade or advertising in connection with records embodying the Remixed Master. You shall be given credit in metadata (wherever possible), and on the packaging and advertising of records containing the Remixed Masters in the form specified in paragraph E of Exhibit A. Any inadvertent, nonrepetitive failure to accord you such credit shall not be deemed a breach of this Agreement; provided that following our receipt of written notice from you of our failure to accord any such credit, we shall rectify same on a prospective basis.

You agree to indemnify Label, and their licensees, assigns, employees and agents from any and all liability, costs, losses and expenses arising out of any third party claims which are inconsistent with any warranties or representations made by you in this Agreement, provided such claims are reduced to a final, adverse, nonappealable judgment in a court of competent jurisdiction or settled with your prior written consent.

Label agrees to indemnify you, and your parent, licensees, assigns, employees and agents from and against any and all liability, costs, losses and expenses arising out of any third party claims resulting from or relating to the unremixed Master, provided such claims are reduced to a final, adverse, nonappealable judgment in a court of competent jurisdiction or settled with Label's prior written consent.

US_ACTIVE-126780714.1
ARTY000314

Case 2:19-cv-03934-PSG-JPR   Document 90-14   Filed 02/22/21   Page 3 of 74   Page ID
#:2944

The Remixed Master are and will be the property of Label throughout the world and in perpetuity from the
inception of their creation and Label shall have the exclusive right to use the Remixed Master in any manner
Label sees fit.  Without limitation of the foregoing, the Remixed Master will be deemed a "work made for
hire" for Label and Label shall have the exclusive right to copyright the Remixed Master in its name and
to secure any and all renewals and extensions of such copyright throughout the world.  If, for any reason,
the Remixed Master or any portion thereof is not deemed "work-made-for-hire", you hereby irrevocably
assign, without reservation, the entirety of the rights in the Remixed Master exclusively to Label.

You acknowledge and agree that no portion of the musical composition contained in the Remixed Master
(the "Composition"), musical or otherwise, if any, has been written or composed by you, in whole or in
part, or in collaboration with others, directly or indirectly, by you or any person in which you have a direct
or an indirect interest.  Accordingly, you further acknowledge and agree that you do not have any interest
in and to the Composition and therefore shall have no right to claim or receive any income derived from
the exploitation of the Composition, including, but not limited to, income derived from payments made
pursuant to the U.S. Copyright Law of The United States, synchronization license fees, public performance
fees collected by performance rights societies authorized to collect such fees on our or Artist's behalf, or
any other income collected on us or Artist's behalf as a result of the commercial exploitation of the Com-
position.

ACCEPTED AND AGREED TO:

Telma Music LLC

By: _____
                 An Authorized Signatory

3LAU Entertainment LLC

By: _____
                 An Authorized Signatory

HIGHLY CONFIDENTIAL – COUNSEL'S EYES ONLY

US_ACTIVE-126780714.1

ARTY000315

EXHIBIT A – REMIX INFORMATION

A. REMIXER:   Telma Music LLC f/s/o Artem Stoliarov p/k/a "Arty"

B. MASTER: "Is It Love" by the artist professionally known as 3LAU ("Artist")

C. REMIX TITLE:  "Is It Love (feat. Yeah Boy) [Arty Remix]"

D. REMIX FEE: Gratis

E. SPECIFY CREDITS AND SAMPLE INFORMATION FOR REMIXED MASTER BELOW:

REMIXED BY:  Arty

ADDITIONAL CREDITS: N/A

SAMPLE INFORMATION:   N/A

SIDE ARTIST:   N/A

- 3 -

HIGHLY CONFIDENTIAL – COUNSEL'S EYES ONLY

US_ACTIVE-126780714.1

ARTY000316

# REMIX-AGREEMENT



The undersigned:
Telma Music, LLC f/s/o Artem Stolyarov p/k/a "ALPHA 9"
c/o LaPolt Law, P.C. 9000 Sunset Blvd. Suite 800 West
Hollywood CA 90069, United States
Attn: Dina LaPolt, Esq.
dina@lapoltlaw.com
dominic@lapoltlaw.com
(hereinafter called "Producer")

and

Armada Music B.V.
Pilotenstraat 6k
1059 CJ Amsterdam
The Netherlands
(hereinafter called "Armada")

Armada hereby commissions Producer (professionally known as ALPHA 9) to remix Armada's original master recording titled "Shivers" ("the Original Master") under the following terms and conditions:

1.  Producer will render it's remixing services to Armada for the delivery of a remix of **"Armin van Buuren – Shivers (ALPHA 9 Remix)"** ("the Remix")

2.  Producer shall deliver to Armada the Remix in the form of a production copy of the highest sound quality.

3.  For Producer's remix services Armada  Music will pay Producer an all-in fee of **$750,-** (Seven Hundred Fifty USD) ("Remix fee") after signing of this agreement and after receipt and approval by Armada of the Remix. Hereby Armada acknowledge the delivery and acceptance of the Remix. The Remix fee shall be inclusive of all recording expenses to be incurred by Producer with respect to the Remix. The payment will be done within 30 days after signing of this agreement and after receipt of invoice from Producer.

4.  On reproductions containing the Remix released by Armada  Music the following credits will be featured on the artwork and in the metadata: **Remix and additional production by ALPHA 9.**

5.  Armada will have the sole, transferable and unlimited right to reproduce, multiply, publish, distribute, change and exploit the Remix in every possible way, known now or later developed, anywhere in the world. Producer guarantees it shall not deliver and/or disclose to any 3rd party any information or agreement(s) of the Remix.

6.  Producer guarantees to be fully entitled and authorized to enter into this agreement. Solely with respect to Producer's services and contributions to the Remix. Producer further guarantees not to have used, in the Remix, excerpts of other works, performances and/or recordings, without having obtained, insofar as necessary, the prior consent of the copyright owner and/or neighboring right owner of those works, performances and/or recordings. Producer shall not share the Part(s) of the Original Master or the Remix with a party other than Armada. Producer shall indemnify Armada from any claim, demand, or action by a third party which is inconsistent with any of the warranties made by Producer in this agreement, provided any such claim is reduced to a final adverse non-appealable judgement by a court of competent jurisdiction or settled with Producer's prior written consent, not to be unreasonably withheld.

7.  Armada shall indemnify Producer from and against any and all claims, costs, proceedings, demands, losses, damages and expenses resulting from or by reason of any claim relating to the Original Master.



## REMIX-AGREEMENT



Thus signed in duplicate on ... March 2018

Armada Music B.V.                                    Producer

...................................................                    ...............................................
Maykel Piron                                         Artem Stolyarov

2 9 MRT 2018

Armada Music B.V.
Po Box 75247 ,1070 AE, Amsterdam ,The Netherlands
Ph:+31(0)20 408 0846 F:+31(0)20 617 2249
www.armadamusic.com info@armadamusic.com



Armada B.V., Pilotenstraat 6K, 1059 CJ Amsterdam The Netherlands, Post: PO Box 75247, 1070 AE Amsterdam, The Netherlands
VAT NUMBER : NL8141.86.518.B.01, P: +31 20 408 08 46, F: + 31 20 617 22 49
www.armadamusic.com   www.armadadownloads.com

From: VIRGIN EMI RECORDS ("we, our, us")
A division of Universal Music Operations Limited
364-366 Kensington High Street
London W14 8NS

To: Telma Music, LLC f/s/o ("you, your") Artem Stoliarov p/k/a "Alpha 9" ("Remixer")
c/o LaPolt Law, P.C.
9000 Sunset Blvd., Suite 800
West Hollywood, CA 90069
Attn: Dina LaPolt, Esq.


January 18, 2018

**RE: Alpha 9 remixing the Axwell Λ Ingrosso track 'Dreamer'**

Dear Artem,

**YOUR MIXING SERVICES**

1.0 We engage you to provide your Remixer's services as a re-mixer of the Recording (defined below). You agree to cause Remixer to re- mix the Recording to the best of Remixer's skill and ability at times and places to be designated by us and to deliver to us when we reasonably require a first-class master embodying the Recording re-mixed by Remixer ("Re-Mix") which is technically satisfactory to us and artistically commensurate with recordings previously re-mixed by Remixer and released to the public on general sale.

2.0 We will pay you the Fee (defined below) in respect of Remixer's services referred to in this agreement, which Fee shall be paid to you as follows: One Hundred Percent (100%) upon full execution of this agreement. We hereby acknowledge satisfactory completion of your and/or Remixer's services and obligations hereunder and agree that the Re-Mix has been delivered to and accepted by us. The Re-Mix shall be deemed not to include any performance(s) by Remixer, unless it shall actually embody such performance(s) Any and all such performance(s) by Remixer shall be deemed for all purposes to be non-featured session performances. The Fee will be your sole remuneration in respect of your services referred to in this agreement and the exploitation of the Recording and the Re-Mix and will constitute fair and equitable remuneration for the services to be rendered under this agreement (and the product thereof) and the rights granted under this agreement including, without limitation, all rental and lending rights granted. You shall pay all costs solely incurred by you in connection with the re-mixing of the Recording and, accordingly, the Fee shall be inclusive of all such costs. You shall not have, and shall not purport to have, any authority to assume any liability on our behalf.

3.0 You irrevocably and unconditionally to the fullest extent permitted by law assign to us (by way of assignment of present and future copyright) all the copyright and other rights in and to the Re-Mix to hold to us absolutely without reservation for the use and benefit of

us and our successors, assigns and licensees throughout the world for the full period of copyright including all renewals, reversions and extensions; give all such consents as may be necessary to enable us to exploit, and authorise others to exploit, worldwide in any and all media by any and all means now known or developed in the future the Re-Mix; waive all so-called "moral rights" or similar rights now existing or created in the future in any part of the world in respect of the Re-Mix; grant to us the exclusive rental and lending rights in and to the products of your services as a remixer under this agreement (i.e. the Re-Mix) which you may have at the date hereof, or which may after the date hereof be conferred on you, whether pursuant to the implementation of the EEC Directive 92/100 EC or 19 November 1992 or otherwise; and grant to us the right to use, and to authorise others to use, Remixer's professional name ("Alpha 9"), prior written approved biographical details, prior written approved photographs and other prior written approved likenesses in all media in connection with the Re-Mix.

4.0 We will accord Remixer the Credit (defined below) on digital booklets, wherever metadata permits, and on the labels, liner notes and, where practicable, the sleeves of all records wholly embodying the Re-Mix and in all advertisements related to the Re-Mix, but if we inadvertently fail to do so on a non-repetitive basis we shall use best efforts to promptly rectify the error on all labels, metadata, advertising and, if applicable, sleeves manufactured after we receive written notice of the error from you or after our independent discovery of same.

5.0 You warrant that the Re-Mix (but specifically excluding the Recording): (i) contains no performances other than your own, (ii) will not embody any samples without our prior written approval and (iii) will not violate or infringe any common law or statutory right of any person, firm or corporation including, but without limitation, contractual rights and copyright. You shall indemnify us against any and all third party claims, costs, proceedings, demands, losses, damages and actual, verifiable, out-of-pocket expenses resulting from or by reason of any third party claim arising from a breach of any of your representations, warranties, agreements and undertakings in this agreement, provided such claim is reduced to a final, adverse judgment by a court of competent jurisdiction or settled with your prior written approval.

5.1 We warrant and represent that neither the underlying Recording nor the performances or any other materials embodied thereon will violate or infringe upon any rights of any person or entity. We shall indemnify you and Remixer against any and all claims, costs, proceedings, demands, losses, damages and expenses resulting from or by reason of any third party claim arising from a breach of any of our representations, warranties, agreements and undertakings in this agreement, provided such claim is reduced to a final, adverse judgment by a court of competent jurisdiction or settled with our prior written consent, not to be unreasonably withheld or delayed.

6.0 If we agree in writing that the Re-Mix may embody one or more samples, you will deliver to us, at the same time as you deliver the master embodying the Re-Mix, a complete list of all such samples.

7.0 This agreement shall be governed by, and construed in accordance with, the laws of England and Wales, whose courts shall be the courts of exclusive jurisdiction.

4848-4724-6426, v. 1

8.0 This agreement may be executed in one or more counterparts, each of which when taken together, will be deemed to constitute one and the same instrument.  Facsimile or .PDF digital signatures on this agreement will be deemed originals for all purposes.

## <u>SCHEDULE</u>

In this agreement:

1.      "Artist" means Axwell Λ Ingrosso.

2.      "Credit" means "Remix and additional production by Alpha 9".

3.      "Fee" means €1,500 (One Thousand Five Hundred Euros).

4.      "Recording" means the master recording embodying the Artist's performance of the composition entitled "Dreamer".

Please confirm your agreement to the above by signing and returning the enclosed duplicate of this agreement.

Yours faithfully

**VIRGIN EMI RECORDS**
A division of Universal Music Operations Ltd

**VIRGIN EMI RECORDS**
A division of Universal Music Operations Ltd

**Read, agreed and accepted**

**Telma Music, LLC f/s/o Artem Stoliarov p/k/a "ALPHA 9"**

4848-4724-6426, v. 1

Dear Remixer(s):

This will confirm the following agreement ("Agreement") made as of August 24th, 2017 between **Kensai Records** ("**Kensai Records**") and the entity named in paragraph A of Exhibit A ("you") in respect of your providing remixing services. Exhibit A is attached hereto shall be incorporated herein by this reference.

You will remix the track set forth in Para. B of the Exhibit A (the "Original Master") and deliver to **Kensai Records** a 12" mix and instrumental (the "Remixed Master"). The title of the Remixed Master is specified in Para C of Exhibit A.  **Kensai Records** acknowledges that you have satisfactorily delivered the Remixed Master and has deemed it to be commercially satisfactory.

You warrant and represent that no materials, (including, but not limited to, so-called "samples") furnished or selected solely by you and contained in the Remixed Master will violate or infringe upon any rights of any person. **Kensai Records** warrants and represents that no materials, (including, but not limited to, so-called "samples") contained in the Original Master will violate or infringe upon any rights of any person.

Royalties will be payable to you in respect of the Remixed Master as set forth in Para D of Exhibit A. You will be responsible for any and all expenses (outside of sample clearance costs) incurred by you in connection with the remix.

**Kensai Records** (and any licensee of **Kensai Records**) shall have the right (and may grant to others the right) to reproduce, publish, print or disseminate in any medium your professional name (Alpha 9) as news or information solely for the purpose of trade or advertising in connection with records embodying the Remixed Master. You shall be given credit on the packaging, metadata, and advertising of records containing the Remixed Masters in the form specified in Para. E of the Exhibit A. Any non-repetitive inadvertent failure to accord you such credit shall not be deemed a breach of this Agreement, provided following our receipt of written notice from you of our failure to accord any such credit or upon our independent discovery of same, we shall use reasonable efforts to rectify same on a prospective basis.

You agree to indemnify **Kensai Records** and Artist, and their licensees, assigns, employees and agents from any and all liability, actual verifiable out-of-pocket costs, losses and expenses arising out of any third party claims which are inconsistent with any warranties or representations made by you in this Agreement provided that such claim is reduced to a final, adverse, non-appealable judgement by a court of competent jurisdiction or settled with your prior written consent.

**Kensai Records** agrees to indemnify you, and your licensees, assigns, employees and agents from any and all liability, actual verifiable out-of-pocket costs, losses and expenses arising out of any third party claims which are inconsistent with any warranties or representations made by **Kensai Records** in this Agreement provided that such claim is reduced to a final, adverse, non-appealable judgement by a court of competent jurisdiction or settled with your prior written consent.

The Original Master and the Remixed Master are and will be the property of **Kensai Records** throughout the world and in perpetuity from the inception of their creation and **Kensai Records** shall have the exclusive right to copyright the Remixed Master in its name and to secure any and all renewals and extensions of such copyright throughout the world.

The net profits due to you as set forth in Para D of Exhibit A shall be calculated and accounted twice a year and shall concern the accounting periods 1 January – 30 June and 1 July – 31 December. The payment of the net profits shall be accounted during the period under which the equivalent income/remuneration was received or credited. Accounting and payment for the net profits shall be carried out within 90 days after the end of each accounting period. You shall be entitled at your own cost and expense to instruct an accountant to inspect **Kensai Records'** books and records insofar as they relate to statements rendered to **Kensai Records** regarding royalty payments hereunder.  In the event that such audit discloses an underpayment, **Kensai Records** shall pay such underpayment to you.  In the event any such audit reveals an underpayment of more than five percent (5%) for the period audited, **Kensai Records** agrees to reimburse you for your documented audit costs.

This agreement may be executed in one or more counterparts, each of which when taken together, will be deemed to constitute one and the same instrument.  Facsimile or .PDF digital signatures on this agreement will be deemed originals for all purposes.

KENSAI RECORDS

By: _____
    An Authorized Signatory


ACCEPTED AND AGREED TO:

By: _____
    Telma Music LLC


4827-0978-6449, v. 1

EXHIBIT A – REMIX INFORMATION

A.   REMIXER:        Telma Music LLC f/s/o Artem Stolyarov p/k/a "Alpha 9"

B.   ORIGINAL SONG TITLE "**Atlas**" PERFORMED BY THE ARTIST P/K/A **Faux Tales** ("Artist")

C.   REMIX TITLE: Faux Tales – Atlas (Alpha 9 Remix)

D.   REMIX ROYALTIES: **50% of net receipts on all exploitations of the Remixed Master shall be payable to you**

E.   SPECIFY CREDITS AND SAMPLE INFORMATION BELOW

     REMIXED BY: **Alpha 9**

     ADDITIONAL CREDITS: _____

     SAMPLE INFORMATION: _____

     SIDE ARTIST: _____

# REMIX-AGREEMENT

The undersigned:
Arty Music Group Inc.
c/o M3 Management, Inc.
8335 Sunset Blvd, LA
California, 90069
Attn. Craig Muench
mmazunov@gmail.com
(hereinafter called "Producer")

and

Armada Music B.V.
Pilotenstraat 6k
1059 CJ Amsterdam
The Netherlands
(hereinafter called "Armada")

Armada hereby commissions Producer (professionally known as Arty) to remix Armada's original master recording titled "Ride" ("the Original Master") under the following terms and conditions:

1.   Producer will render it's  remixing services to Armada for the delivery of a remix of **"Chable & Bonnici – Ride (Arty Remix)"** ("the Remix")

2.   Producer shall deliver to Armada the Remix and part(s) in the form of a production copy of the highest sound quality.

3.   For Producer's remix services Armada will pay Producer an all-in fee of **€2500,-** ("Remix fee") after signing of this agreement and after receipt and approval by Armada of the Remix. The Remix fee shall be inclusive of all recording expenses to be incurred by Producer with respect to the Remix.  The payment will be done within 30 days after signing of this agreement and after receipt of invoice from Producer.

4.   On reproductions containing the Remix released by Armada or any of its licensees the following credits will be featured on the artwork: **Remix and additional production by Arty.**

5.   Armada will have the sole, transferable and unlimited right to reproduce, multiply, publish, distribute, change and exploit the Remix in every possible way, known now or later developed, anywhere in the world. Producer guarantees it shall not deliver and/or disclose to any 3rd party any information or agreement(s) of the Remix.

6.   Producer guarantees to be fully entitled and authorized to enter into this agreement. Producer further guarantees not to have used, in the Remix, excerpts of other works, performances and/or recordings, without having obtained, insofar as necessary, the prior consent of the copyright owner and/or neighboring right owner of those works, performances and/or recordings. Producer shall indemnify against all damages arising from breaches of one or more of the above mentioned guarantees, and it shall indemnify Armada against all possible actions that 3rd parties (including those who have been part in the realization of the Remix) may institute against Armada.

7.   Armada warrants the Master and the musical compositions embodied thereon are original and does not constitute a libel or slander of any person, or violate or infringe upon the rights of any party.

8.   Armada hereby fully indemnifies and shall keep Producer harmless against all possible claims of third parties, all damages, claims and costs (including reasonable costs of legal assistance) and expenditure of Armada which might ensue from breach of the obligations under the Original Master Agreement between Armada and Chable & Bonnici.

# REMIX-AGREEMENT



Thus signed in duplicate on :__ of January 2013

Armada Music B.V.                                          Producer

..........................................                ..........................................
Maykel Piron                                              Arty Music Group Inc.

# REMIX-AGREEMENT



The undersigned:
Telma Music LLC f/s/o Arten Stoliarov p/k/a Arty
c/o LaPolt Law, P.C.
9000 Sunset Blvd., Suite 800
West Hollywood, CA 90069
Attn: Dina LaPolt, Esq.
mikhail@riseupme.com
(hereinafter called "Producer")

and

Armada Music B.V.
Pilotenstraat 6k
1059 CJ Amsterdam
The Netherlands
(hereinafter called "Armada")

Armada hereby commissions Producer (professionally known as Arty) to remix Armada's original master recording titled "Embrace" ("the Original Master") under the following terms and conditions:

1.  Producer will render it's  remixing services to Armada for the delivery of a remix of **"Armin van Buuren feat. Eric Vloeimans - Embrace (Arty Remix)"** ("the Remix")

2.  Producer shall deliver to Armada the Master(s) and Part(s) including an Edit of the Track in the form of a production copy of the highest sound quality.

3.  For Producer's remix services Armada  Music will pay Producer an all-in fee of **€2000,-** (two thousand euro) ("Remix fee") after signing of this agreement and after receipt and approval by Armada of the Remix. The Remix fee shall be inclusive of all recording expenses to be incurred by Producer with respect to the Remix.  The payment will be done within 30 days after signing of this agreement and after receipt of invoice from Producer.

4.  On reproductions containing the Remix released by Armada  Music the following credits will be featured on the artwork: **Remix and additional production by Arty.**

5.  Armada will have the sole, transferable and unlimited right to reproduce, multiply, publish, distribute, change and exploit the Remix in every possible way, known now or later developed, anywhere in the world. Producer guarantees it shall not deliver and/or disclose to any 3rd party any information or agreement(s) of the Remix.

6.  Producer guarantees to be fully entitled and authorized to enter into this agreement. Solely with respect to Producer's services and contributions to the Remix, Producer further guarantees not to have used, in the Remix, excerpts of other works, performances and/or recordings, without having obtained, insofar as necessary, the prior consent of the copyright owner and/or neighboring right owner of those works, performances and/or recordings. Producer shall not share the Part(s) of the Original Master or the Remix with a party other than Armada. Producer shall indemnify Armada from any claim, demand or action by a third party which is inconsistent with any of the warranties, representations, or covenants made by us in this agreement, provided such claim is reduced to a final, adverse, non-appealable in a court of competent jurisdiction or settled with our prior written consent, not to be unreasonably withheld, conditioned, or delayed.

7.  Armada shall indemnify Producer from and against any and all claims, costs, proceedings, demands, losses, damages and expenses resulting from or by reason of any claim relating to the Original Master.

Thus signed in duplicate on … March 2016

Armada Music B.V.

Maykel Piron
28/3/2016

Producer

Telma Music LLC

Armada Music B.V.
Po Box 75247 ,1070 AE, Amsterdam
Ph:+31(0)20 408 0846 F:+31(0)20 617 2249
www.armadamusic.com info@armadamusic.com

Armada B.V., Pilotenstraat 6K, 1059 CJ Amsterdam The Netherlands, Post: PO Box 75247, 1070 AE Amsterdam, The Netherlands
VAT NUMBER : NL8141.86.518.B.01, P: +31 20 408 08 46, F: + 31 20 617 22 49
www.armadamusic.com   www.armadadownloads.com

To:   **TELMA MUSIC LLC** ("**you**"/"**your**") f/s/o Artem Stolyarov p/k/a "ARTY" ("**Producer**") 9000 Sunset Blvd., Suite 800 West Hollywood, CA 90069 Attn: Dina LaPolt, Esq.

From: **ANGUS AND JULIA STONE PTY LTD** c/o White Sky, 79 Little Oxford St, Collingwood VIC 3066, Australia ("**us**"/"**we**")

Date:     June 7th, 2018

Dear Sirs,

**REMIXING OF 'CHATEAU' FOR ANGUS & JULIA STONE**

1.   It is hereby acknowledged that you have been engaged by us to provide Producer's services as a remixer in connection with the remixing of the recording by Angus & Julia Stone (the "**Artist**") embodying the composition entitled 'Chateau' (the "**Original Recording**") (the recording remixed by you being the "**Remixed Recording**"). You shall deliver to us, at the same time as you deliver the Remixed Recording, a consent form in respect of each person furnished by you (other than the Producer) whose performance is embodied on the Remixed Recording properly and fully completed and signed by such person.

2.   You shall deliver to us the Remixed Recording in such formats as we may reasonably request in writing as of the date of this agreement.

3.   In consideration of the payments contained herein, you irrevocably and unconditionally to the fullest extent permitted by law, assign to us (by way of present assignment of all present and future copyright) with full title guarantee all your and Producer's copyright and all of your and Producer's other rights (including performer's property rights) in and to the Remixed Recording and the other products of Producer's services under this Agreement to hold to us absolutely without reservation for our use and benefit and the benefit of our successors, assigns and licensees throughout the world for the full period of copyright including all renewals, reversions and extensions, you give and procure that Producer gives to us all such consents as may be necessary to enable us to exploit, and authorise others to exploit, worldwide in any and all media by any and all means now known or developed in the future the products of Producer's services under this Agreement, you procure that Producer will waive all so-called "moral rights" or similar rights now existing or created in the future in any part of the world in respect of the product of Producer's services under this Agreement, you grant to us the exclusive rental and lending rights in and to the products of Producer's services under this Agreement which you or Producer may have at the date hereof, or which may after the date hereof be conferred on you or Producer, whether pursuant to the Copyright and Related Rights Regulations 1996 or otherwise, and you grant to us the right to use, and to authorise others to use, Producer's professional name, prior written approved likeness and prior written approved biography in all media in connection with the exploitation of the products of Producer's services under this Agreement.

4.   We will pay to you a non-returnable fee of seven thousand five hundred US Dollars (US $7,500) ("Fee"), fifty percent (50%) of which (i.e. US $3,750) shall be deemed a fully recoupable advance ("**Advance**"), promptly following delivery and acceptance of the Remixed Recording and following our receipt of a valid invoice therefor.

5.   You shall not and you shall procure that Producer shall not incur any cost or liability on our behalf or in any way hold yourself out to be our agent or representative without our specific prior written consent.

6.   In addition to the payment of the Fee, we will pay you or (in the event that the Remixed Recording is exploited by our licensee ("Licensee")) we may procure the direct payment to you (as totally inclusive remuneration for Producer's services and in full consideration of the rights granted and

1

4853-3033-9944, v. 1

exploited herein) from the first record sold or first exploitation, subject to the recoupment of the Advance, of the following royalty ("Your Royalty"):

(i) two percent (2%) of the dealer price in respect of net sales of full-priced physical or digital records of a long-playing studio album which embodies the Remixed Recording;

(ii) in relation to monies accruing from the exploitation of Remixed Recordings (i) in respect of streaming or other digital exploitation via direct transmissions to the consumer, (including without limitation via the internet and mobile applications) or (ii) which are accounted to us on a so-called "flat fee", twelve per cent (12%) of our net receipts after deduction solely of commissions or fees payable to an independent third party for sourcing or procuring any such license.

7.   Your Royalty shall be calculated and paid on the same basis, in the same manner and in respect of the same sales and exploitation as the royalty payable to us ("**Artist's Royalty**") in respect of net sales and exploitation of records embodying the Remixed Recordings pursuant to any agreement that we have with a Licensee ("License Agreement") and all of the provisions thereof relating to the calculation and payment of the Artist's Royalty (including all reductions, deductions (including territorial and packaging deductions) and pro-rations and escalations of the Artist's Royalty) shall apply to the calculation and payment of Your Royalty.

8.   In the event that the Remixed Recording is exploited by us pursuant to independent distribution agreements where we may not be accounted to on the dealer price of records then Your Royalty shall be:

(i) in respect of physical records at two percent (2%) of the dealer price less sales taxes, duties and discounts (but without deduction of a packaging deduction) in relation to records sold by us, which are not returned and for which we are paid and for digital downloads on our net receipts; and

(ii) in respect of streaming or other digital exploitation via direct transmissions to the consumer, (including without limitation via the internet and mobile applications) or which are accounted to us on a so-called "flat fee" basis six per cent (6%) of our net receipts.

For the purposes of this clause 8, "net receipts" shall mean actual receipts therefrom directly and solely identifiably attributable by title to Remixed Recordings after deduction of any third party rights management costs, errors in billing or transmission, bona fide arm's length third party commission, discounts, agency fees, credit card or electronic payment charges, sales taxes, government or similar levies or similar charges;

9.   You shall be paid from the first record embodying a Remixed Recording sold or the first exploitation of a Remixed Recording subject to the recoupment of the Advance.

10.   In respect any record (or other compilation of recordings) which contains Remixed Recordings alongside recordings which are not the subject of this Agreement the monies received by us from the exploitation of same and the expenses deductible will be pro-rated by multiplying such amount by a fraction the numerator of which shall be the number of Remixed Recordings embodied thereon and the denominator of which is the total number of royalty bearing recordings (including the Remixed Recordings) embodied thereon. If a Remixed Recording is embodied on the so-called "A-side" or "lead track" of a single play record (other than a so-called "double A-side" single play record) then Your Royalty in respect of net sales of such single play record only will not be pro-rated in accordance with this clause.

11.   You acknowledge and agree that the Fee and Your Royalty will be your and Producer's sole remuneration in respect of Producer's services hereunder and the exploitation of the Remixed Recordings and constitute fair and equitable remuneration for the Remixed Recordings and the services to be rendered under this Agreement (and the product thereof) and all the rights granted under this Agreement.

2

12.    We will accord Producer the following credit:

**"Remixed by Arty"**

on the liner notes and back cover of the sleeve or inlay card of all records embodying the Remixed Recording which are manufactured by us or on our behalf and in the metadata of all exploitations of the Remixed Recording provided that our inadvertent, non-repetitive failure to procure that you are accorded such credit shall not be deemed to be a breach hereof, provided we use best endeavours to rectify the error on all such materials produced after we receive written notice of the error from you or upon our independent discovery of such failure.

13.    You hereby warrant represent and undertake to us that you are entitled to enter into this Agreement and to grant to us the rights granted to us in it, no material embodied on the Remixed Recording solely by Producer will violate or infringe any common law or statutory right of any person, you will procure that Producer will not re-record any composition embodied on the Remixed Recordings for a period of five (5) years from the date hereof and you will be solely responsible for your own tax and other such liabilities.

14.    We hereby warrant represent and undertake to us that you are entitled to enter into this Agreement and that neither the Original Recording, nor any material embodied thereon by us, will violate or infringe any common law or statutory right of any person.

15.    You confirm that Producer has no interest in the underlying composition of the Recording and Remixed Recording.

16.    You shall indemnify us against any and all costs, proceedings, demands, losses, damages and actual, verifiable, out-of-pocket expenses (including reasonable, outside legal costs) resulting from or by reason of any third party claim arising from a breach of any of your representations, warranties, agreements and undertakings in this Agreement, provided any such claim is reduced to a final, adverse, non-appealable judgment by a court of competent jurisdiction or settled with your prior written consent.

17.    We shall indemnify you against any and all costs, proceedings, demands, losses, damages and actual, verifiable, out-of-pocket expenses (including reasonable, outside legal costs) resulting from or by reason of any third party claim arising from a breach of any of our representations, warranties, agreements and undertakings in this Agreement.

18.    We shall account to you (or shall procure that any relevant Licensee accounts to you) within ninety (90) days of the 30th June and 31st December in each year subject to recoupment hereunder and provided that we shall not be obliged to account (but we shall still provide statements) in any accounting period in which Your Royalty is less than one hundred US Dollars (US $100).  You shall be entitled to audit our books and records, upon reasonable notice and not more than once a year, to ensure correct accounting to you hereunder.

19.    You will procure that Producer executes the inducement letter in the form attached at the Schedule and we shall not be required to make any payment to you hereunder until such time as we have received a fully executed inducement letter from Producer.

20.    We shall be free to assign, sub-license or otherwise deal with the whole or any part of our rights under this Agreement.

21.    No waiver, variation or amendment to this Agreement shall be valid unless made in writing and signed by you and us.

22.    This Agreement shall be governed by, and construed in accordance with, the laws of England and Wales, whose courts shall be the courts of exclusive jurisdiction.

3

23. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which taken together shall constitute a single instrument.  Digital .pdf or facsimile signatures shall be deemed originals for all purposes.

Please confirm your agreement to the above by signing and returning to us the enclosed duplicate of this Agreement.

Yours faithfully                                                Read and confirmed

…………………………….                        …………………………….
For and on behalf of                                     For and on behalf of
**ANGUS AND JULIA STONE PTY LTD**           **TELMA MUSIC LLC**

4

**SCHEDULE**
**Inducement Letter**

I Artem Stolyarov p/k/a "ARTY" confirm that **TELMA MUSIC LLC ("Lender")** is entitled to grant all rights granted by the Lender pursuant to the above agreement (**"Services Agreement"**) including without limitation in respect of my name, likeness and biography.

I acknowledge that the Lender has entered into the Services Agreement on my behalf for the provision of my production services and in consideration of the payment of the sum of one pound (£1) from **ANGUS AND JULIA STONE PTY LTD ("Company")** to me, the receipt and sufficiency of which I hereby acknowledge, I agree to guarantee all warranties, undertakings, representations, covenants and agreements made by the Lender should Lender fail to perform any of its obligations pursuant to the Services Agreement and will provide all services required by Company, pursuant to the Services Agreement.

To the extent that any right or copyright or other rights in and/or to the product of my services under the Services Agreement or the Remixed Recording(s) may remain vested in me and not the Lender, I hereby subject always to the terms of the Services Agreement, assign (in relation to Remixed Recording(s)) and license (in relation to all other of said products of my services) the same to Company (as defined in the Services Agreement) absolutely with full title guarantee for the full periods specified in the Services Agreement.

I hereby give all necessary consents and where necessary shall obtain all other necessary consents as may be required pursuant to the Copyright Designs and Patents Act 1988 or otherwise to enable you, Artist and/or your respective licensees to make the fullest permitted use of the Remixed Recording(s) pursuant to the Services Agreement.

I agree to look solely to the Lender for payment of any compensation in connection with my performance of the production services.

By      _____
        **Artem Stolyarov**

Agreed   _____
        For and on behalf of
        **ANGUS AND JULIA STONE PTY LTD**

5

4853-3033-9944, v. 1

## REMIX-AGREEMENT



The undersigned:
Telma Music, LLC f/s/o Artem Stolyarov (p/k/a ARTY)
c/o LaPolt Law, P.C. 9000 Sunset Blvd. Suite 800 West
Hollywood CA 90069, United States
Attn: Dina LaPolt, Esq.
diana@lapoltlaw.com
dominic@lapoltlaw.com
and
Vitaly Konkin (p/k/a Vion
Konger) Berzarina st. 21/1
Moscow
Russia
v.konger99@gmail.com
(hereinafter individually and collectively called "Producer")

and

Armada Music B.V.
Pilotenstraat 6k
1059 CJ Amsterdam
The Netherlands
(hereinafter called "Armada")

Armada hereby commissions Producer (professionally known as ARTY x Vion Konger) to remix Armada's original master recording titled "Couldn't Be Better" ("the Original Master") under the following terms and conditions:

1.  Producer will render it's remixing services to Armada for the delivery of a remix of **"ARTY – Couldn't Be Better (ARTY x Vion Konger Remix)"** ("the Remix")

2.  Producer shall deliver to Armada the Remix in the form of a production copy of the highest sound quality.

3.  For Producer's remix services Armada Music will pay Producer an all-in fee of €250,- (Two Hundred Fifty Euro) ("Remix fee") after signing of this agreement and after receipt and approval by Armada of the Remix. This fee will be paid to Vion Konger. Hereby Armada acknowledge the delivery and acceptance of the Remix. The Remix fee shall be inclusive of all recording expenses to be incurred by Producer with respect to the Remix. The payment will be made within 30 days after signing of this agreement and after receipt of invoice from Producer.

4.  On reproductions containing the Remix released by Armada Music the following credits will be featured on the artwork and in the metadata: **Remix and additional production by ARTY x Vion Konger.**

5.  Armada will have the sole, transferable and unlimited right to reproduce, multiply, publish, distribute, change and exploit the Remix in every possible way, known now or later developed, anywhere in the world. Producer guarantees it shall not deliver and/or disclose to any 3rd party any information or agreement(s) of the Remix.

6.  Producer guarantees to be fully entitled and authorized to enter into this agreement. Solely with respect to each of Producer's services and contributions to the Remix, Producer further guarantees not to have used, in the Remix, excerpts of other works, performances and/or recordings, without having obtained, insofar as necessary, the prior consent of the copyright owner and/or neighboring right owner of those works, performances and/or recordings. Producer shall not share the Part(s) of the Original Master or the Remix with a party other than Armada. Producer shall indemnify Armada from any claim, demand, or action by a third party which is inconsistent with any of the warranties made by Producer in this agreement, provided any such claim is reduced to a final adverse non-appealable judgement by a court of competent jurisdiction or settled with Producer's prior written consent, not to be unreasonably withheld.

## REMIX-AGREEMENT

*armada*

Thus signed in duplicate on … July 2018

Armada Music B.V.

……………………………………

Maykel Piron

Producer

…………………………………

Artem Stolyarov

o/b/o

Vitaly Konkin

0 9 AUG 2018
Armada Music B.V.
Po Box 75247 ,1070 AE, Amsterdam ,The Netherlands
Ph:+31(0)20 408 0846 F:+31(0)20 617 2249
www.armadamusic.com info@armadamusic.com

4829-7189-0542, v. 1

# <u>CERTIFICATE OF RECORDING</u>

For good and valuable consideration as set forth below, the receipt or sufficiency of which is hereby acknowledged, I agree that I, Telma Music LLC f/s/o Artem Stoliarov p/k/a "ARTY", will perform or have performed various services as a "remixer" in connection with the master recording(s) currently entitled **"Let Me Take You There (feat. Laura White)"** (the "Master(s)") embodying the performances of **Max Styler** ("Artist"), intended for release pursuant to an agreement (the "Agreement") between Maximilian Styler and Dim Mak Records, Inc. ("Dim Mak").

All formats and versions, including but not limited to the original remix, radio edit, extended/club mix, instrumental version, vocal mix, remix parts (including accapella if applicable), a clean version of any explicit recordings, and video of the Master(s) as remixed by me hereunder shall hereinafter be referred to as the "Remixed Master(s)." The results and proceeds of my services hereunder, including without limitation my contributions to the Remixed Master(s) and any incidental materials created in connection herewith, or any portion thereof, shall hereinafter be referred to as the "Work." The Work (but excluding the underlying musical composition) shall from the inception of its creation, be a "work made for hire" for Dim Mak within the meaning of the Copyright Act of 1976 (Title 17, U.S.C.), and shall be entirely Dim Mak's property in perpetuity throughout the universe, free of any claim whatsoever by me, or by any persons deriving any rights or interests from me. If it is determined that the Work does not so constitute a "work made for hire", then the Work (but excluding the underlying musical composition), together with all rights therein including without limitation the sound recording copyright therein and any extensions or renewals thereof is hereby assigned to Dim Mak, and, upon Dim Mak's request, I shall execute and deliver to Dim Mak any documents (at Dim Mak's non-recoupable expense) which Dim Mak may reasonably require to vest in Dim Mak the rights herein granted in respect of such Master. If I fail to execute such documents within ten (10) business days after being provided same, I hereby grant Dim Mak a limited power of attorney solely to execute such document in my name, such right being coupled with an interest and irrevocable. Following Remixer's request, Dim Mak will provide a copy of the foregoing executed documents, if any, to Remixer. Without limiting the forgoing, I specifically agree that Dim Mak shall have the sole and exclusive right in perpetuity throughout the universe to manufacture, advertise, sell, license or otherwise exploit the Work in any and all manner and media now known or hereafter devised, in all configurations as Dim Mak shall determine, upon such terms and conditions and under such trademarks as Dim Mak shall elect, and to permit the public performance thereof by any method or means now or hereafter known. I hereby waive any claim to any moral or similar rights in the Work (but excluding the underlying musical composition). I agree that Dim Mak has the right to use my professional name (i.e. "ARTY"), prior written approved likeness and prior written approved biographical data solely in connection with the distribution, exhibition, advertising and exploitation of the Work.

Dim Mak will use its commercially reasonable efforts to provide a credit, substantially as follows, in the liner notes, labels, and packaging of records embodying the Remixed Master (or such other place where other remixer credits are given), on metadata (including all digital service provider metadata) in connection with electronic transmissions, and in all print ads one-quarter (1/4) page or larger featuring the Remixed Master: "Max Styler 'Let Me Take You There (feat. Laura White) (ARTY remix agreement)'". No inadvertent, non-repetitive failure to comply with the provisions of this paragraph nor any failure of any third party to comply therewith shall constitute a breach of this agreement, provided that Dim Mak uses reasonable efforts to promptly cure any such failure. Dim Mak will accord Remixer with a 'primary artist tag' in respect of the use of the Remixed Master solely in the single configuration (not on the remix package) and solely on the Spotify digital streaming platform.

I shall pay all costs incurred by me to remix the Master(s) hereunder. I will pay all royalties or other compensation (whether in lieu of royalties or otherwise) becoming due to any third party solely furnished or engaged by me who performs or in any way contributes to the remixing of the Master(s) hereunder.

Fee: In consideration of all services rendered by Remixer, and all of rights granted by Remixer to Dim Mak herein, and subject to Remixer's performance of all of the terms hereof, and following delivery and acceptance of the Remixed Master (Dim Mak acknowledges that the Remixed Master has been delivered and accepted) and a valid invoice and signed W-9 or W-8, Dim Mak shall pay, or shall cause to

Initial here: 

be paid, to Remixer, a non-recoupable fee in the amount of two thousand U.S. Dollars ($2,000.00 USD) ("Fee").

Royalty:  In addition to the Fee, in consideration of all services rendered by Remixer, and all of rights granted by Remixer to Dim Mak herein, and subject to Remixer's performance of all of the terms hereof, and following delivery and acceptance of the Remixed Master (Dim Mak acknowledges that the Remixed Master has been delivered and accepted) Dim Mak will pay Remixer royalties (the "Remixer Royalty") as follows:  thirty-three and thirty-three hundredths percent (33.33%) of all royalties, net profit or other amounts (as applicable) due to, received by and/or credited to (as the case may be) Artist under Artist's recording agreement or licensing agreement (as the case may be) with Dim Mak or related entities in respect of sales of records and other exploitations made of the Remixed Master (Remixer will be paid after recoupment of this Master, not after recoupment of Artist's overall royalty account).  The Remixer Royalty will be computed, reduced, escalated and paid (e.g. for royalty base price, singles, foreign sales, sales at reduced price, etc.) in the same manner and at the same times as the Artist's royalty.  With respect to records embodying Remixed Master along with other master recordings, the Remixer Royalty will be pro-rated based on the number of master recordings on the record.

Accounting:  Semi-annual accountings as of June 30 and December 31 of each year and statements within 90 days from such dates.  Reserves no greater than **25**% (none for digital), liquidated in two (2) accounting periods after retention.  No royalties are due on a reasonable number of records, MP3s, or other configurations given away for promotion or as free goods.  Remixer will have the right to examine Dim Mak's books and records concerning each particular royalty statement only once and only during the two-year period after the rendering of that statement and provided that Remixer has given Dim Mak 30 days' prior written notice.

In the event that I have written or composed, in whole or in part, alone or in collaboration with others, or that I own or control, in whole or in part, directly or indirectly, or that any other party in which I have a direct or indirect interest owns or controls, in whole or in part, directly or indirectly, a musical composition embodied in the Work, I further grant (or shall use reasonable efforts to cause my publishing designees to grant) to Dim Mak the right to use such composition on the same terms and conditions under which Dim Mak may use compositions written by Artist pursuant to the Agreement but specifically excluding any reductions in the statutory rate. The foregoing is not intended to limit my or any my publishing designees' right to receive directly its respective share of publishing monies in connection with "monetized" promotional videos (e.g., videos exhibited on YouTube, Vimeo or Vevo). My interest and control in the musical composition embodied in the Work is specified in Exhibit A, Copyright Ownership and Income Participation Agreement, Musical Composition, attached hereto and incorporated into this agreement by this reference.

Dim Mak's rights hereunder may be freely assigned and licensed and Dim Mak's rights shall be binding upon me and inure to the benefit of any such assignee or licensee, provided Dim Mak remains secondarily liable.  I warrant and represent that I am free to enter into, to make the grants made under, and to perform the terms hereof.  I further warrant and represent that all music and other material furnished solely by me and all ideas, designs, and inventions furnished solely by me in connection with the Work are free of any claims by any third party and will not violate or infringe upon the rights of any third party.  Dim Mak warrants and represents that all music and other material furnished solely by Dim Mak and all ideas, designs, and inventions furnished solely by Dim Mak in connection with the Work, including, but not limited to, the Master, are free of any claims by any third party and will not violate or infringe upon the rights of any third party.  I agree not to assert any claim against Dim Mak in connection with the Work, and I agree not to attempt to prevent the exploitation of the Work by Dim Mak.  Each party shall indemnify and hold the other harmless from and against any actual, verifiable, out-of-pocket losses, costs, liabilities, claims, damages or expenses arising out of any third party claim or action that is brought as a result of a breach by the at-fault party of any warranty, representation, covenant or agreement made by the at-fault party in this certificate, provided such claim or action claim is reduced to final adverse, non-appealable judgment by a competent court of jurisdiction or a written settlement entered into with the not-at-fault party's written consent.  This certificate shall be governed by the laws of the State of California applicable to agreements executed and to be performed entirely therein. Any action to enforce the provisions hereof shall be brought in a court in the County of Los Angeles, and the Parties hereby submit to the exclusive jurisdiction of such courts.  This agreement may be executed in counterparts, each of



which shall be deemed an original and all of which taken together shall constitute a single instrument.  Digital .pdf or facsimile signatures shall be deemed originals for all purposes.

I ACKNOWLEDGE AND AGREE THAT I HAVE HAD THE RIGHT AND THE OPPORTUNITY TO SEEK THE ADVICE AND COUNSEL OF MY OWN ATTORNEY IN CONNECTION WITH THIS AGREEMENT.

IN WITNESS WHEREOF, I have signed this certificate effective as of _____02-05-20_____.

**LICENSOR/ARTIST**                                      **DIM MAK RECORDS, INC.**

_____                         _____

An Authorized Signatory                              Lee Kurisu, President

Print Name: _____

**REMIXER**

Telma Music LLC f/s/o Artem Stoliarov p/k/a "ARTY"
c/o LaPolt Law P.C.
9000 Sunset Blvd, Suite 800
West Hollywood, CA 90069

_____
Signature

Credit: "Let Me Take You There (feat. Laura White) (ARTY remix)"

## **INDUCEMENT**

As an inducement to Dim Mak to enter into the remix agreement (the "Remix Agreement") and as a material part of the consideration moving to Dim Mak for so doing, I confirm that: (a) Telma Music LLC ("Company") has the right and authority to enter into the Remix Agreement on my behalf; (b) all of the rights which Company requires from me to enable it to grant to Dim Mak the rights specified in the Remix Agreement have been granted by me to Company; (c) in the event that Company is unable or refuses, for any reason, to perform as set forth in the Remix Agreement, or Company is in breach of any term or condition under the Remix Agreement, I shall perform all obligations in the Remix Agreement and Dim Mak shall have the right to enforce all obligations and proceed directly against me as if I were a party to the Remix Agreement or such breach were committed by me; and (d) I will look solely to Company, and not to Dim Mak, for all compensation which arises under the Remix Agreement.

Yours faithfully,

_____
Artem Stoliarov p/k/a "ARTY"

   02-05-20
_____
Date



**Copyright Ownership and Income Participation Agreement, Musical Composition**

As of:  December 17, 2019

This is to confirm that the undersigned are the sole writers of one hundred percent (100%) of the below-listed original compositions, and hereby agree to the following split of ownership (including writer's and publisher's shares) of the below-listed compositions as follows:

Title of Composition: Let Me Take You There (feat. Laura White) (ARTY remix) ("the Composition")

| | | |
|---|---|---|
| 1. | **Maximilian Styler** | **20%** |
| 2. | **Laura Jane Amanda White** | **15%** |
| 3. | **Marcia Thadea Angèle Sondeijker** | **15%** |
| 4. | **Jonty Howard** | **15%** |
| 5. | **Joseph Murphy** | **15%** |
| 6. | **Artem Stoliarov** | **20%** |

Each of the undersigned confirms that the above is an accurate representation of the percentage of the Composition contributed and/or owned by the writers (and their publishers) named above including but not limited to the worldwide copyrights in and to the Composition. No writer or publisher shall claim a greater percentage than set forth above. Nothing contained herein shall preclude either party from assigning their partial or entire interest in and to the Composition.  It is the intention of the writers (and their publishers) named above to exclusively administer their respective ownership percentages.  This agreement may be signed in counterpart each counterpart together constituting one original and a facsimile signature and/or PDF copy of signature will be deemed the same as an original.

**READ AND AGREED:**


_____            _____
**Maximilian Styler**                                        **Laura Jane Amanda White**


_____            _____
**Marcia Thadea Angèle Sondeijker**                  **Jonty Howard**


_____            _____
**Joseph Murphy**                                           **Artem Stoliarov**



**Atlantic Recording Corporation**
**1633 Broadway**
**New York, New York 10019**

Dear Remixer(s):

This will confirm the following agreement ("Agreement") made as of May 19, 2016 between Atlantic Recording Corporation ("Atlantic Records") and the entity named in paragraph A of Exhibit A ("you") in respect of your providing remixing services.  Exhibit A is attached hereto shall be incorporated herein by this reference.

You will remix the track set forth in Para. B of the Exhibit A and deliver to Atlantic Records a 12" mix and instrumental (the "Remixed Master"). The title of the Remixed Master is specified in Para. C of Exhibit A. In respect of your services hereunder Atlantic shall provide an "all in" recording fund as set forth in Para. D of Exhibit A ("fund"). Half of the fund is payable to you upon commencement of recording with the balance payable upon or the full execution of this agreement.  You will be responsible for any and all expenses (outside of sample clearance costs) incurred in connection with the remix in excess of the fund.  Atlantic Records acknowledges the satisfactory receipt of the Remixed Master.

You warrant and represent that no materials, (including, but not limited to, so-called "samples") furnished or selected by you and contained in the Remixed Master will violate or infringe upon any rights of any person.

No royalties will be payable to you in respect of the Remixed Master.

Atlantic Records (and any licensee of Atlantic Records) shall have the right (and may grant to others the right) to reproduce, publish, print or disseminate in any medium your professional name as news or information for the purpose of trade or advertising in connection with records embodying the Remixed Master. You shall be given credit in the metadata (wherever possible), on the packaging and advertising of records containing the Remixed Masters in the form specified in Para. E of the Exhibit A. Any non-repetitive, inadvertent failure to accord you such credit shall not be deemed a breach of this Agreement and in no event shall you be entitled to injunctive or other legal or equitable relief in the event of any such failure.  Following our receipt of written notice from you of our failure to accord any such credit (or our independent discovery of the same), we shall use reasonable efforts to rectify same on a prospective basis.

You agree to indemnify Atlantic Records and Artist, and their licensees, assigns, employees and agents from any and all liability, costs, losses and expenses arising out of any third-party claims which are inconsistent with any warranties or representations made by you in this Agreement provided that such claim is (i) less than $7,500, (ii) more than $7,500 and settled with your consent, or (iii) reduced to final judgment.

Atlantic Records, the owner of the master recording to be remixed hereunder, agrees to indemnify you from any and all liability, costs, losses and expenses arising out of any third-party claims arising in connection with the original version of the master set forth in Para B. of Exhibit A (i.e., the unremixed version of the master) provided that such claim is (i) less than $7,500, (ii) more than $7,500 and settled with the consent of Atlantic Records, or (iii) reduced to final judgment.

The track and the Remixed Master are and will be the property of Atlantic Records throughout the world and in perpetuity from the inception of their creation and Atlantic Records shall have the exclusive right to use the Remixed Master in any manner Atlantic Records sees fit.

Without limitation of the foregoing, the Remixed Master will be deemed a "work made for hire" for Atlantic Records and Atlantic Records shall have the exclusive right to copyright the Remixed Master in its name and to secure any and all renewals and extensions of such copyright throughout the world.

ATLANTIC RECORDING CORPORATION

By: _____

**ACCEPTED AND AGREED TO:**

By: _____
    SIGNATURE – REMIXER 1

By: _____
    SIGNATURE – REMIXER 2

By: _____
    SIGNATURE – REMIXER 3

**EXHIBIT A – REMIX INFORMATION**

A.   REMIXER 1 (Legal Name):     Telma Music LLC f/s/o Artem Stoliarov p/k/a "Arty"

      REMIXER 2 (Legal Name):     _____

      REMIXER 3 (Legal Name):     _____

      CONTRACTUAL ADDRESS:     c/o LaPolt Law, P.C., Attn: Dina LaPolt, Esq
                              (C/O contact, Production Company, Management Company, etc)

                              9000 Sunset Blvd., Suite 800
                              (Street Address)

                              West Hollywood, CA, USA
                              (City, State, Country)

B.   ORIGINAL SONG TITLE "**How To Love (feat. Sofia Reyes)**" PERFORMED BY THE ARTIST P/K/A **Cash Cash**

C.   REMIX TITLE: **How To Love (feat. Sofia Reyes)[Arty Remix]**

D.   REMIX FEE: **$5,200.00**

E.   SPECIFY CREDITS AND SAMPLE INFORMATION BELOW:

      REMIXED BY: **Arty**

      ADDITIONAL CREDITS: _____

      SAMPLE INFORMATION: _____

      SIDE ARTIST: _____



Enhanced Music Limited
9 Suna House, 65 Rivington Street
London, EC2A 3QQ
United Kingdom

Registered in the UK: 6581977
VAT No: 945 4891 80

(the 'Company')

**Ref : REMIX**

Date :                                        Wednesday 11th of September 2019
Artist Alias Name :                    ALPHA 9
Artist Name and Address :        Telma Music, LLC f/s/o Artem Stoliarov p/k/a "ALPHA 9" (the 'Artist') c/o LaPolt Law, P.C.,
                                                 9000 Sunset Blvd., Suite 800, West Hollywood, CA 90069, Attn: Dina LaPolt, Esq

Dear Artem

**Remix Agreement**

Schedule :
**Tritonal feat. Rosie Darling - Never Be The Same**" (the 'Master')
"**Tritonal feat. Rosie Darling - Never Be The Same (ALPHA 9 Remix)**" (the 'Remix')

We refer to our recent discussions regarding the Remix named in the Schedule, and write to confirm the terms of our agreement with you as follows:

    1.    In consideration of the services to be provided by the Artist and of the rights granted by it to the Company under the Agreement, the Company agrees;

        a)    the Artist will receive a percentage of Royalties received from the exploitation of the Remix.

        b)    the Artist will receive a non-returnable fee of $2000.00 USD for the exploitation of the Remix, which is fully recoupable.

        c)    to allocate a 2-point share of the master royalty

Please confirm your acceptance of the terms by initialing every page, and signing and dating all copies of this letter, returning one to the above address and retaining all others.

Yours sincerely,

Christo Patricios
For and on behalf of Enhanced Music Limited

Accepted and agreed by The Artist;

Print Name ___Artem Stoliarov_____   Signed_____   Date ___02-27-20___

Initial[................]                          Enhanced Music, 9 Suna House, 65 Rivington Street, London, EC2A 3QQ, United Kingdom



Enhanced Music Limited
9 Suna House, 65 Rivington Street
London, EC2A 3QQ
United Kingdom

Registered in the UK: 6581977
VAT No: 945 4891 80

(the 'Company')

**Ref : REMIX**

Date :                                      Wednesday 11th of September 2019
Artist Alias Name :                    ALPHA 9
Artist Name and Address :         Telma Music, LLC f/s/o Artem Stoliarov p/k/a "ALPHA 9" (the 'Artist') c/o LaPolt Law, P.C.,
                                               9000 Sunset Blvd., Suite 800, West Hollywood, CA 90069, Attn: Dina LaPolt, Esq

Dear Artem

**Remix Agreement**

Schedule :
**Tritonal feat. Rosie Darling - Never Be The Same**" (the 'Master')
"**Tritonal feat. Rosie Darling - Never Be The Same (ALPHA 9 Remix)**" (the 'Remix')

We refer to our recent discussions regarding the Remix named in the Schedule, and write to confirm the terms of our
agreement with you as follows:

1.   In consideration of the services to be provided by the Artist and of the rights granted by it to the Company under
     the Agreement, the Company agrees;

     a)   the Artist will receive a percentage of Royalties received from the exploitation of the Remix.

     b)   the Artist will receive a non-returnable fee of $2000.00 USD for the exploitation of the
          Remix, which is fully recoupable

     c)   to allocate a 2-point share of the master royalty

Please confirm your acceptance of the terms by initialing every page, and signing and dating all copies of this letter,
returning one to the above address and retaining all others.

Yours sincerely,

Christo Patricios
For and on behalf of Enhanced Music Limited

Accepted and agreed by The Artist;

Print Name  Artem Stoliarov                         Signed                              Date  02-27-20

Initial [ ..... / .... ]                   Enhanced Music, 9 Suna House, 65 Rivington Street, London, EC2A 3QQ, United Kingdom

1. The Remix

    1.1.   The Artist agrees that the entire copyright and all other rights in the Remix [excluding the underlying musical composition] and all Records and Digital Media manufactured from it shall vest in the Company absolutely throughout the world for the full period of copyright and all renewals and extensions and to operate as a present assignment of future copyright together with all accrued causes if action in respect thereof.

    1.2.   The Artist has delivered the Remix in the following formats to the Company, and the recording is, in the Company's reasonable opinion, of a technical standard suitable for the production of Records for sale to the public and artistically and commercially satisfactory to the Company.

    1.3.   The Artist grants to the Company and to its assignees or licensees the non-exclusive right to use the Artist's professional name [i.e., ALPHA 9], prior written approved likeness, prior written approved photographs and prior written approved biographical material solely in connection with the Company's advertising, publishing and/or otherwise exploiting of the Remix.

    1.4.   The Artist irrevocably grants to the Company all consents required to authorise the Company's exploitation of the Remix throughout the World.

    1.5.   In addition to the royalties below, the Artist will receive a non-returnable fee of $2000.00 USD for the exploitation of the Remix, which is fully recoupable.

2. Royalties

    1.1.   The Company will pay the Artist a 2% (two percent) share of the Net Receipts from Company's exploitation of the Master (which shall be deducted by Company from Tritonal's royalty from Company). (Net Receipts shall mean gross receipts received by Company in connection with it's exploitation of the Master Recording, minus all actual, out-of-pocket taxes incurred by Company)

    2.1.   The Artist splits are set out in APPENDIX 1.

3. Accounting

    3.1.   The Company will account to the Artist for royalties within 90 days of each Half Year Day in each year in respect of sums received by it during the previous six month period from the exploitation of the Remix made pursuant to the Agreement, manufactured and distributed by the Company. The Company shall supply the Artist with statements showing in reasonable detail all sums received by the Company and the calculation of royalties due to the Artist in Royalty Payments. For the purposes of this clause "Half Year Day" shall mean 30 June or 31 December

    3.2.   The Artist shall have the right at its own expense to appoint a chartered accountant or qualified auditor to inspect the Company's books and records insofar as they relate to the Agreement but not more than once in any calendar year upon reasonable notice during normal office hours. Should any such inspection reveal an underpayment by Company, Company will immediately pay such amounts to Artist, and should any such underpayment exceed the lesser of five percent (5%) of the total royalties due to Artist under the relevant statement, Company shall pay Artist's reasonable costs of such inspection. Any statements sent to the Artist shall be binding upon it and not subject to objection unless it gives the Company notice in writing specifying its objection within two years after the date of such statement is rendered.

4.  Company shall accord Artist credit on record labels and liner notes and packaging, and in all metadata (to the extent possible), of records in all configurations which embody the Remix.  Said credit shall read substantially as follows:

"ALPHA 9 Remix"

Artist shall also be tagged as a primary artist with respect to the Remix on all digital service providers (to the extent possible).

5. Warranties

    5.1.   The Artist hereby represents, warrants and undertakes to the Company that:

    (a)   the Artist is solely and exclusively entitled to grant and assign the rights granted and assigned to the Company hereunder and has full power and authority to enter into the Agreement;

    (b)   the Artist is not a minor;

    (c)   the Remix (but excluding the underlying musical composition) will be considered a work made for hire. If the Remix (but excluding the underlying musical composition) is determined not to be a work for hire, it will be deemed transferred and assigned to the Company by this letter, together with all rights in the Remix, in consideration of the Fee;

Initial [    ]                  Enhanced Music, 9 Suna House, 65 Rivington Street, London, EC2A 3QQ, United Kingdom

(d)  Artist's contributions to the Remix will not contain any unauthorized samples. The Artist agrees that any samples furnished by the Artist (including both master and publishing samples) are the Artist's sole responsibility and have been cleared and paid for;

(e)  none of the Artist's contribution to the Remix shall infringe the rights of any third party;

(f)  the Artist will not without the Company's prior written consent divulge to any other third party other than the Artist's own professional advisers or as otherwise may be required by law any information concerning the Company's business including but not limited to the terms of the Agreement;

(g)  the Artist will do nothing to detract from the Company's rights under the Agreement;

(h)  the Artist agrees it will not release information regarding the Remix, or any sample or preview containing the Master into the public domain without prior written permission from the Company;

(i)  the Artist agrees that no copies of the Remix, whether physical or digital or other will be distributed in whole or in part to any other person, persons or companies, without prior written permission from the Company;

(j)  The Artist will at all times indemnify and hold the Company and the Company's licensees harmless from and against any and all third party claims, damages, liabilities, costs, and expenses, including reasonable outside counsel fees, arising out of any breach by the Artist of Artist's representations or warranty contained in this agreement, provided such claim is reduced to a final adverse judgment in a court of competent jurisdiction or is settled with Artist's prior written consent not to be unreasonably withheld.

5.2    The Company hereby represents, warrants and undertakes to the Artist that:

(a)  The Company is free to enter into and perform this Agreement with Artist, and Company is not and will not be under any disability, restriction or prohibition, contractual or otherwise, with respect to Company's (i) right to execute this Agreement, (ii) right to grant all of the rights granted to us hereunder, and (iii) right to fully perform each and every term and provision hereof;

(b)  The Master shall not infringe the rights of any third party;

(c)  The Company will at all times indemnify and hold the Artist and the Artist's designees harmless from and against any and all third party claims, damages, liabilities, costs, and expenses, including reasonable outside counsel fees, arising out of any breach  by the Company of Company's representations or warranties contained in this agreement.

6.   Miscellaneous

6.1.  All payments due to the Artist hereunder are exclusive of VAT and the Company agrees to pay VAT in addition on receipt of a valid invoice.

6.2.  The Artist acknowledges that it has been advised to seek independent expert legal advice prior to signing the agreement and confirms that it has done so.

6.3.  The Agreement shall be governed by and construed in accordance with English Law.

6.4.  The Company shall have the right to assign its rights under the Agreement, provided that Company remains secondarily liable

6.5.  This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which taken together shall constitute a single instrument.  Digital .pdf or facsimile signatures shall be deemed originals for all purposes..

APPENDIX 1.

Artem Stoliarov                                         100%





**MUSIC GROUP**   ("Company")        **REMIXER AGREEMENT**

Date: <u>1/21/15</u>

| | |
|---|---|
| 1. Remixer ("Remixer"): <u>ARTYOM STOLYAROV pka ARTY</u><br><br>Furnishing Company, if any ("Furnisher"):<br><br><u>Telma Music, LLC</u><br><br>Address of Remixer or Furnisher, as applicable:<br><u>c/o Monarch Business & Wealth Management</u><br><u>209 East 31st Street</u><br><u>New York, NY 10016</u><br><u>Attention: Josh Klein</u><br><br>Requested Credit ("Credit"):<br><br><u>Remix by Arty</u> | 2. Company's Artist (the "Artist"):<br><br><u>Halsey</u><br><br>3. Title of Master (s) ("Master") to be Remixed:<br><br><u>Hurricane</u><br><br>4. Description and/or Title(s) and/or Versions of Remix(es):<br><br><u>Hurricane (Arty Remix)</u><br><u>Hurricane (Arty Instrumental)</u><br><br>and any other remix(es) delivered therewith (collectively, the "Remix").<br><br>5. Company Contact:<br><br>Name: <u>Ryan Del Vecchio</u><br>Email: <u>ryan.delvecchio@umusic.com</u><br>Phone: <u>310-865-5142</u> |

| | |
|---|---|
| Check and Complete Applicable Payment Method:<br><br>☒ All-In Fund ("Fund"): $ <u>2,000</u><br>☐ Advance plus Budget:<br>    Advance: $ _____<br>    Budget: $ _____ | **Delivery Due Date ("Due Date"): ASAP**<br><br>**All Remixes Must Be Delivered to Company No Later Than This Date** |

<u>Royalty</u>: No royalties are payable in connection with the Remix unless specifically approved by Company. If initialed in the space below by Company's VP, Business Affairs, then the specified royalty shall be payable in accordance with the terms hereof:
☐ Royalty: _____% Initialed: _____

Accepted and Agreed To:                                  Accepted and Agreed To:

**Furnisher (if applicable)**                              **Company**

By: _____                          By: _____
(Please initial page 2 as well)                          Sr., Vice President, Business Affairs

**Remixer:** _____

(Please initial page 2 as well)

**_Subject to Standard Terms and Conditions on Page 2 Attached_**

-1-



**MUSIC GROUP**   ("Company")

**REMIXER AGREEMENT**
**Standard Terms and Conditions**

Page 1 of this agreement is subject to the following standard terms and conditions that have been mutually agreed upon:

1.  If a Furnisher is listed on Page 1 hereof, then, for purposes of this agreement, Remixer's services hereunder shall be deemed to be furnished to Company by Furnisher, all payments otherwise payable to Remixer hereunder shall be made to Furnisher, Furnisher will be solely responsible for and will pay all amounts due to Remixer and all references to Remixer below will be deemed to refer to both Remixer and Furnisher.

2.  Remixer will remix the Master and deliver the Remix to Company by no later than the Due Date. As used herein, the term "deliver" includes, without limitation: (i) delivery to, and acceptance by, Company of the Remix in a form that is both technically and commercially acceptable to Company; (ii) clearance of any and all samples embodied by Remixer to the satisfaction of Company; and (iii) delivery to Company of: (A) a clearly labeled production master in the format customarily utilized by Company; (B) the source multi-track master(s) or digital file equivalent; and (C) written production credits.

3.  The Remix will be deemed a "work made for hire" for Company, and Company shall have the exclusive right to copyright the Remix in its name and to secure any and all renewals and extensions of such copyright throughout the world. Accordingly, the Master, the Remix, and all duplicates and derivatives thereof, are and will be the property of Company throughout the world in perpetuity from the inception of their creation, and Company shall have the exclusive right to use or not use the Remix in any medium or manner, by any method now known or hereafter created without any compensation to Remixer other than as specifically set forth in paragraph 4 below. Remixer agrees that each recording or derivative thereof of the Remix is a work made for hire and, additionally, a contribution to a collective work. In any event, Remixer assigns to Company ownership and all rights, including the copyright, in the Remix and agree to execute and deliver to Company any additional documents Company desires to confirm same, and failing which, Company may sign such documents in Remixer's name.

4.      (a) <u>All-In Fund</u>.  If the "All-In" Fund payment method on page 1 is selected by Company, then the Fund will be paid one-half (1/2) once Remixer starts work hereunder (provided this agreement has been signed by Remixer and Company), and the balance will be paid after the delivery to and acceptance by Company of the Remix in accordance with paragraph 2 above. In this case, Furnisher will be solely responsible for and will pay all costs incurred in connection with the Remix including, without limitation, payments to the Remixer, unions, engineers, studios, and the cost of tape and sample clearance, but excluding any payments to the Artist under the Artist's agreement with Company.

     (b) <u>Advance and Budget</u>.  If the Advance plus Budget payment method on page 1 is selected by Company, then the Advance will be paid one-half (1/2) once Remixer starts work hereunder (provided this agreement has been signed by Remixer and Company), and the balance will be paid after the delivery to and acceptance by Company of the Remix in accordance with paragraph 2 above. In this case, Company shall pay recording costs in accordance with a written budget approved in advance by Company up to a maximum of the dollar figure listed on page 1 hereof as the Budget (the "Budget"). Remixer shall be solely responsible for and shall pay any and all costs and expenses in connection with the Remix in excess of the Budget.

     (c) <u>Royalty</u>.  If and only if the royalty section on page 1 above is checked and initialed, Company shall pay Remixer the basic royalty rate indicated in such section applicable to net "full-price" sales of records embodying the Remix through normal retail channels in the

United States, computed, adjusted and paid in the same manner at the same times and subject to the same terms and conditions as the royalty payable to the artist under the artist's agreement with Company, with proportionate reductions on all sales for which reduced royalties (or no royalties) are payable under that agreement. As to records not consisting entirely of the Remix, Remixer's royalty will be prorated based on the number of versions of the Remix that are contained on each such record compared to the total number of royalty bearing master recordings (including the Remixes) contained on each such record. Company shall have the right to recoup from this royalty an amount equal to the Advance or one-half the Fund, whichever applies.

5.  Company and its licensees will have the right, but not the obligation, to use Remixer's professional name, approved likeness and approved biographical material on packaging and label copy, and for publicity and advertising in connection with records embodying the Remix. Company shall use its best reasonable efforts to give Remixer the Credit listed on page 1 as part of the packaging of records containing the Remix and in trade advertising for the Remix; but any inadvertent failure by Company to do so will not be deemed a breach hereof.

6.  Remixer warrants and represents that: (a) Remixer has the right to enter into and perform this agreement; (b) Remixer will be solely responsible for and will pay the amounts required to be paid by Remixer hereunder; (c) Remixer will not incorporate any samples or side artist performances into the Remix without Company's prior written consent; and (d) Remixer shall obtain and supply to Company all necessary licenses, consent, permissions, waivers and other consents from all participants in the recording, as well as all payroll forms, invoices, receipts and documents pertaining to such recording sessions; and (e) no materials (including, but not limited to, samples) furnished by Remixer contained in the Remix will violate or infringe upon any rights of any person or entity. Remixer hereby irrevocably waives any claims, right, title or interest, including, without limitation, any copyright interest, in any composition embodied on the Remix. Furnisher and Remixer hereby waive any claim to any moral rights in the Remix. Remixer will not be responsible for and will have no liability in connection with any elements or materials, including the musical composition(s), embodied in the original Master, even if such materials or elements thereof)are utilized in the Remix.

7.  Remixer acknowledges that the Master may not have been released to the public. Except to the extent necessary for Remixer to render Remixer's services hereunder, Remixer agrees not to sell, transfer or copy in any way (including, by CD burning, loading them onto a computer or uploading to the internet) any sound recording provided by Company. Remixer agrees not to make sound recordings provided hereunder available in any manner to a third party and will take all necessary steps to make sure that they do not pass into the possession of any third party.

8.  Remixer hereby agrees to indemnify, save and hold harmless Company and Artist, and their respective licensees, assigns, employees and agents from any and all liability, costs, losses and expenses arising out of or connected with any claims by any third party or any act by Remixer which is inconsistent with any of the warranties, representations or agreements made by Remixer in this agreement.

9.  This agreement may not be assigned by Remixer, shall be governed by New York law and constitutes the entire agreement

-2-



MUSIC GROUP   **("Company")**

among the parties superseding any other negotiations or
understandings which are being merged herein.

Initialed: _MM_ (Furnisher) _AS_ (Remixer)



("Company")

**REMIXER AGREEMENT**

Date: 12/19/19

| | |
|---|---|
| 1. Remixer ("Remixer"): <u>Artem Stoliarov</u><br><u>p/k/a ARTY</u><br><br>Furnishing Company,<br>if any ("Furnisher"):<br><br><u>Telma Music, LLC</u><br><br>Address of Remixer or Furnisher, as applicable:<br><br><u>c/o Monarch Business & Wealth Management</u><br><u> LLC</u><br><u>9350 Wilshire Blvd, Suite 328</u><br><u>Beverly Hills, CA 90212</u><br><br>Attn: <u>Brett Bassock</u><br><br>Phone:<br><br>Email: <u>brettbassock@gmail.com</u><br><br>Requested Credit ("Credit"):<br><br><u>Remixed by ARTY</u><br><u>Mastered by ARTY in Los Angeles, CA</u> | 2. Company's Artist (the "Artist"):<br><br><u>Halsey</u><br><br>3. Title of Master (s) ("Master") to be Remixed:<br><br><u>Graveyard</u><br><br>4. Description and/or Title(s) and/or Versions<br>of Remix(es):<br><br><u>Graveyard (ARTY Remix)</u><br><u>Graveyard (ARTY Instrumental Remix)</u><br><br>and any other remix(es) delivered therewith<br>(collectively, the "Remix").<br><br>5. Company Contact:<br><br>Name: <u>Ryan Del Vecchio</u><br>Email: <u>ryan.delvecchio@umusic.com</u><br>Phone: <u>323-871-5142</u> |

| | |
|---|---|
| Check and Complete Applicable Payment Method:<br><br>☒ All-In Fund ("Fund"): $ <u>20,000</u><br>☐ Advance plus Budget:<br>   Advance: $ _____<br>   Budget: $ _____ | **Delivery Due Date ("Due Date"):**<br><br><u>Company hereby acknowledges Furnisher's</u><br><u>satisfactory delivery and Company's acceptance of</u><br><u>the Remixes.</u> |

<u>Royalty</u>: No royalties are payable in connection with the Remix unless specifically approved by Company. If initialed in the space below by Company's VP, Business Affairs, then the specified  royalty shall be payable in accordance with the terms hereof:
☐ Royalty: _____% Initialed: _____

Accepted and Agreed To:

**Furnisher (if applicable)**

By: _____
(Please initial page 2 as well)

Accepted and Agreed To:

**Company**

By: _____
Sr., Vice President, Business Affairs

(DH)

The undersigned has read and understands the foregoing agreement (including the standard terms and conditions attached) and agrees to all of the terms and conditions thereof.  The undersigned agrees to guarantee his performance, and all warranties, representations, covenants and agreements made by Furnisher under the foregoing agreement, and further agrees to look exclusively to Furnisher for payment of all compensation due to the undersigned in connection with the performance of the undersigned's services as set forth in this agreement.

Remixer: _____
(Please initial page 2 as well)

*Subject to Standard Terms and Conditions on Page 2 Attached*

-1-



**MUSIC GROUP**   ("Company")

## REMIXER AGREEMENT
### Standard Terms and Conditions

Page 1 of this agreement is subject to the following standard terms and conditions that have been mutually agreed upon:

1.  If a Furnisher is listed on Page 1 hereof, then, for purposes of this agreement, Remixer's services hereunder shall be deemed to be furnished to Company by Furnisher, all payments otherwise payable to Remixer hereunder shall be made to Furnisher, Furnisher will be solely responsible for and will pay all amounts due to Remixer and all references to Remixer below will be deemed to refer to both Remixer and Furnisher.

2.  Remixer will remix the Master and deliver the Remix to Company by no later than the Due Date. As used herein, the term "deliver" includes, without limitation:  (i) delivery to, and acceptance by, Company of the Remix in a form that is both technically and commercially acceptable to Company; (ii) clearance of any and all samples furnished by Remixer to the satisfaction of Company; and (iii) delivery to Company of: (A) a clearly labeled production master in the format customarily utilized by Company; (B) the source multi-track master(s); and (C) written production credits.  Company acknowledges that the Remixes have been Delivered in accordance with the terms set forth herein.

3.  The Remix (but excluding the underlying musical composition) will be deemed a "work made for hire" for Company, and Company shall have the exclusive right to copyright the Remix in its name and to secure any and all renewals and extensions of such copyright throughout the world. Accordingly, the Master, the Remix, and all duplicates and derivatives thereof, are and will be the property of Company throughout the world in perpetuity from the inception of their creation, and Company shall have the exclusive right to use or not use the Remix in any medium or manner, by any method now known or hereafter created without any compensation to Remixer other than as specifically set forth in paragraph 4 below. Remixer agrees that each recording or derivative thereof of the Remix is a work made for hire and, additionally, a contribution to a collective work.  In any event, Remixer assigns to Company ownership and all rights, including the copyright, in the Remix (but excluding the underlying musical composition) and agree to execute and deliver to Company any additional documents Company reasonably desires to confirm same, and failing which, Company may sign solely such documents in Remixer's name.

4.      (a)  All-In Fund.  If the "All-In" Fund payment method on page 1 is selected by Company, then the Fund will be paid one-half (1/2) once Remixer starts work hereunder (provided this agreement has been signed by Remixer and Company), and the balance, less any recording costs incurred or paid by Company on behalf or Remixer, will be paid promptly following the delivery to and acceptance by Company of the Remix in accordance with paragraph 2 above.  In this case, Furnisher will be solely responsible for and will pay all costs incurred in connection with the Remix by Remixer including, without limitation, payments to the Remixer, unions, engineers, studios, and the cost of tape and sample clearance, but excluding any payments to the Artist under the Artist's agreement with Company.

        (b)  Advance and Budget.  If the Advance plus Budget payment method on page 1 is selected by Company, then the Advance will be paid one-half (1/2) once Remixer starts work hereunder (provided this agreement has been signed by Remixer and Company), and the balance will be paid after the delivery to and acceptance by Company of the Remix in accordance with paragraph 2 above. In this case, Company shall pay recording costs in accordance with a written budget approved in advance by Company up to a maximum of the dollar figure listed on page 1 hereof as the Budget (the "Budget").  Remixer shall be solely responsible for and shall pay any and all costs and expenses in connection with the Remix in excess of the Budget.

        (c)  Royalty.  If and only if the royalty section on page 1 above is checked and initialed, Company shall pay Remixer the basic royalty rate indicated in such section applicable to net "full-price" sales of records embodying the Remix through normal retail channels in the United States, computed, adjusted and paid in the same manner at the same times and subject to the same terms and conditions as the royalty payable to the artist under the artist's agreement with Company, with proportionate reductions on all sales for which reduced royalties (or no royalties) are payable under that agreement.  As to records not consisting entirely of the Remix, Remixer's royalty will be prorated based on the number of versions of the Remix that are contained on each such record compared to the total number of royalty bearing master recordings (including the Remixes) contained on each such record. Company shall have the right to recoup from this royalty an amount equal to the Advance or one-half the Fund, whichever applies.

5.  Company and its licensees will have the right, but not the obligation, to use Remixer's professional name, prior written approved likeness and prior written approved biographical material on packaging and label copy, and for publicity and advertising solely in connection with records embodying the Remix.  Company shall use its best reasonable efforts to give Remixer the Credit listed on page 1 as part of the packaging of records containing the Remix, on metadata in connection with electronic transmissions and in trade advertising for the Remix; but any inadvertent failure by Company to do so will not be deemed a breach hereof. With respect to the Spotify platform, Company will use best reasonable efforts to accord Remixer credit as a so-called "primary artist" such that the Remix will appear among the "singles" listed on Remixer's Spotify page but any inadvertent failure by Company to do so will not be deemed a breach hereof, provided Company use its best reasonable efforts to cure any such failure promptly following receipt of notice from Furnisher requesting same.

6.  Furnisher warrants and represents that: (a) Remixer has the right to enter into and perform this agreement; (b) Remixer will be solely responsible for and will pay the amounts required to be paid by Remixer hereunder; (c) Remixer will not incorporate any samples or side artist performances into the Remix without Company's prior written consent; and (d) Remixer shall obtain and supply to Company all necessary licenses, consent, permissions, waivers and other consents from all participants in the recording, as well as all payroll forms, invoices, receipts and documents pertaining to such recording sessions; and (e) no materials (including, but not limited to, samples) furnished by Remixer contained in the Remix will violate or infringe upon any rights of any person or entity.  Remixer hereby irrevocably waives any claims, right, title or interest, including, without limitation, any copyright interest, in any composition embodied on the Remix. Furnisher and Remixer hereby waive any claim to any moral rights in the Remix. Remixer will not be responsible for and will have no liability in connection with any element or materials, including the musical composition(s), embodied in the original Master, even if such materials or elements thereof are utilized in the Remix.

7.  Remixer acknowledges that the Master may not have been released to the public. Except to the extent necessary for Remixer to render Remixer's services hereunder, Remixer agrees not to sell, transfer or copy in any way (including, by CD burning, loading them onto a computer or uploading to the internet) any sound recording provided by Company.  Remixer agrees not to make sound

-2-



**MUSIC GROUP**    ("Company")

recordings provided hereunder available in any manner to a third party and will take all necessary steps to make sure that they do not pass into the possession of any third party.

8.   Furnisher hereby agrees to indemnify, save and hold harmless Company and Artist, and their respective licensees, assigns, employees and agents from any and all liability, actual, verifiable out-of-pocket costs, losses and expenses arising out of or connected with any claims by any third party or any act by Remixer which is inconsistent with any of the warranties, representations or agreements made by Remixer in this agreement to the extent reduced to a final judgment (prior to appeals) in a court of competent jurisdiction or settled with Remixer's prior written consent, such consent not to be unreasonably withheld.

9.  This agreement may not be assigned by Remixer, shall be governed by California law and constitutes the entire agreement among the parties superseding any other negotiations or understandings which are being merged herein.

Initialed _____ (Furnisher) _____ (Remixer)

From:      **Warner Music UK Limited**
27 Wrights Lane
Kensington
London
W8 5SW

("**Us**"/"**us**"/"**we**")

To:       **Telma Music, LLC**
f/s/o Artem Stolyarov p/k/a Arty
c/o LaPolt Law, P.C.
9000 Sunset Blvd., Suite 800
West Hollywood, CA 90069
Attention: Dina Lapolt, Esq.

("**You**"/"**your**")

Dated  16/11/16   2016

Dear Sir,

**Re:   Arty remixing Kita Alexander 'Hotel Song'**

1.1    Subject to the terms and conditions of this agreement (the "Agreement") we hereby engage you to provide Artem Stolyarov p/k/a Arty ("**Remixer**") non-exclusive services as an independent remixer to remix the track "Hotel Song" ("**Track**") embodying the performances of the artist professionally known as Kita Alexander ("**Artist**"). You shall procure that Remixer remixes the Track and you shall deliver to us remixed recordings in accordance with sub-clauses 1.2 and 1.3 below in such formats as we may reasonably require (the recordings being referred to herein as "**Masters**").

1.2    You shall and shall procure that Remixer shall comply with the applicable rules and regulations of all applicable unions including the AF of M and of all recording studios.

1.3    All Masters delivered to us shall be:

    (a)   technically satisfactory to us;

    (b)   artistically commensurate in style and content with recordings previously remixed by Remixer which have been commercially released; and

    (c)   commercially satisfactory to us as records for general release.

2.1    In consideration of the provision of Remixer's services and the rights granted by you hereunder we will pay you three thousand five hundred pounds (£3500) ("**Remix Fee**") payable upon receipt of a valid invoice therefor and upon the later of (i) delivery and acceptance of the Masters and (ii) signature of this Agreement. The parties hereby acknowledge and agree that the Masters have been delivered to and accepted by us.

2.2    For the avoidance of doubt the Remix Fee shall include all costs and expenses incurred solely by you and/or Remixer or on your or Remixer's behalf (or as directed by you or Remixer) in connection with the production and delivery of the Masters and Remixer's services hereunder, including but not limited to, studio rental, engineers and programmers' fees, tape and equipment rental costs, session musicians and all other expenses relating to the recording, remixing of the Masters (as applicable).  We shall not be obligated to pay you or any third party any sums in addition to the Remix Fee and you shall not incur any costs either yourself nor on our behalf in connection with the Masters unless we have approved the same in writing in advance. Any costs and expenses incurred by you and/or Remixer in excess of the Remix Fee without our prior written approval shall be deducted from the Remix Fee. The parties hereby acknowledge and agree that you have not incurred any such excess costs or expenses in connection with the Masters.

1

3.    You hereby irrevocably agree that the entire copyright and all other rights in the Masters (but expressly excluding the copyright in and to the underlying musical composition) and all derivatives produced and/or remixed by Remixer are vested in us throughout the world for the full period of copyright and all extensions and renewals thereof and insofar as any rights (including without limitation copyright) are vested in you, you hereby assign to us the aforesaid rights and we shall be free to exploit the Masters and all derivatives thereof and to authorise others so to do without further reference or payment to you or Remixer.

4.    You hereby and shall procure that Remixer grants and gives all necessary consents as may be necessary to enable us and others authorised by us to exploit the Masters by any and all means and in all media now known or hereafter invented and you hereby and shall procure that Remixer irrevocably and unconditionally waives any and all moral and like rights that you and/or Remixer have in the Masters and the performances embodied therein and agree that you will not and shall procure that Remixer shall not make any claim against us or any party authorised to exploit the Master by us based on moral or like rights in the Masters save for Remixer's right to receive appropriate credit as agreed hereunder.

5.1   You hereby grant to us the non-exclusive right to use and allow others to use Remixer's professional name, prior written approved photographs, prior written approved likeness and prior written approved biography in all media solely in connection with the marketing, promotion, advertising and exploitation of the products of Remixer'sservices under this Agreement.

5.2   We agree to use best efforts to ensure that an appropriate credit is afforded to Remixer on digital booklets, wherever metadata permits (and where applicable, in a manner which links back to Remixer's artist page on all so called "digital service providers"), and on the packaging and/or sleeves of records embodying Masters which are manufactured and/or distributed by us or on our behalf and in all advertisements related to the Masters.   Said credit shall read substantially as follows:

"Hotel Song (Arty Remix)"

No inadvertent, non-repetitive failure by us to fulfill any obligation under this Paragraph 5.2 shall be deemed a breach thereof, provided that, we shall use best efforts to rectify any such error on future runs (where applicable) within thirty (30) days after we receive written notice of such error from you or upon our independent discovery of such error.

6.    You warrant and represent that:

6.1   except with respect to material embodied on the Track, the material embodied on the Masters is new and original and you and/or Remixer have not included any recordings, materials or extracts which are not your or Remixer's own work and/or wherein copyright may be owned by any third party (e.g. "sampled" or "replayed" material);

6.2   except with respect to material embodied on the Track, the material embodied on the Masters does not include the contribution of any third party which has not been commissioned directly by us (eg. voice-over, musicians, vocalist, mixer, etc.);

6.3   except with respect to material embodied on the Track, neither the Masters nor material embodied thereon violates or infringes any common law or statutory right of any person, firm or company including, but not limited to, contractual rights, copyrights and rights of privacy or publicity; and

7     We warrant and represent that neither the Track nor the performances or any other material embodied thereon will violate or infringe upon any rights of any person or entity.

8.1.  Except with respect to material embodied on the Track, you hereby agree that all musical and/or literary works (if any) written and/or controlled in whole or in part by you or Remixer (and/or any person under your or Remixer's control) embodied on the Masters are licensed to us in order to allow us to exploit the Masters to the fullest extent and exercise our rights hereunder.

2

8.2     You agree and acknowledge that we have engaged you to furnish the services of Remixer to remix the Track and pay you the Remix Fee on the basis that neither you nor Remixer will include any sampled or replayed material (or material which is "inspired by" another person's work) in the Masters.  However, in the event that you and/or Remixer have included (or wish to include) any such material, you must notify us of this as soon as possible (and in no event after delivery to us of the Masters).  We will then decide (at our absolute discretion) if such material must be removed from the relevant Masters.  If we decide that it should be removed, you will be responsible for removing the material in question at your sole expense.  No further fee will be payable to you for carrying out such additional work and we may retain the full Remix Fee until you deliver to us Masters without the sampled or replayed material. If you have not advised us of any samples or replayed content prior to delivery, we will have the right to reduce your Remix Fee to cover the cost of any clearances.

8.3     You shall also be responsible for notifying us of any musicians performing on the Masters (insofar as the musicians were not featured on the Track as originally supplied to you).  We shall not be liable to pay any musician costs unless we have approved the costs in advance. In the event you include a musician which we have not approved in advance, you will be solely responsible for making any payments to them so that we may exploit the Masters to the fullest extent.   Alternatively, we will require that you remove the contribution of the unapproved musician at your sole cost and expense.

9.1     You shall indemnify us against any and all third party claims, costs, proceedings, demands, losses, damages and actual, verifiable, out-of-pocket expenses resulting from or by reason of a breach or alleged breach of any of your representations, warranties, agreements and undertakings in this Agreement, which claim is either adjudicated by a court of competent jurisdiction or settled with your prior written approval such approval not to be unreasonably withheld or delayed.   We shall be entitled to retain any monies otherwise payable to you in a sum sufficient to cover our potential liability under this indemnity.

9.2     We shall indemnify you against any and all claims, costs, proceedings, demands, losses, damages and actual, verifiable, out-of-pocket expenses resulting from or by reason of a breach or alleged breach of any of our representations, warranties, agreements or undertakings in this Agreement, which claim is either adjudicated by a court of competent jurisdiction or settled with our prior written approval such approval not to be unreasonably withheld or delayed.

10.1    You shall not and shall procure that Remixer shall not for a period of three (3) years after the date hereof perform any of the material embodied in the Masters for anyone other than us nor shall you or Remixer produce, mix or re-mix recordings embodying in whole or in part the same compositions and musical works as are embodied in the Masters. For the avoidance of doubt, nothing contained herein shall preclude you or Remixer from commercially exploiting material that is not embodied on the Masters.

10.2    In the event you or Remixer have contributed any content to the Masters (such as "beats" which you or Remixer have created) (**"New Parts"**), such New Parts shall be deemed to have been created for our exclusive use and you warrant and represent and shall procure that Remixer Warrants and represents that you shall not grant rights to the New Parts to any third party.

11.1    You hereby covenant that you are entitled to enter into this agreement and perform all of your obligations hereunder.

11.2    We hereby covenant that we are entitled to enter into this agreement and perform all of our obligations hereunder.

12.     We shall be free to assign, sub-license or otherwise deal with the whole or any part of our rights under this Agreement.

13.     This Agreement shall be governed by, and construed in accordance with, the laws of England and Wales, whose courts shall be the courts of exclusive jurisdiction.

Please confirm your agreement to the above by signing and returning this Agreement to us.

3

Yours faithfully,

for and on behalf of
**WARNER MUSIC UK LIMITED**

Read and Agreed:

for and on behalf of
**TELMA MUSIC LLC**

**SCHEDULE**
*Inducement Letter*

I Artem Stolyarov p/k/a Arty confirm that Telma Music LLC (**"Services Company"**) is entitled to my sole and exclusive remixing services throughout the world and is entitled to grant all rights granted by the Services Company pursuant to the above agreement (**"Services Agreement"**) including without limitation in respect of my name, likeness and biography.

I acknowledge that the Services Company has entered into the Services Agreement on my behalf for the provision of my remixing services and in consideration of the payment of the sum of one pound (£1) from Warner Music UK Limited (**"Warner"**) to me, the receipt and sufficiency of which I hereby acknowledge, I agree to guarantee all warranties, undertakings, representations, covenants and agreements made by the Services Company and will provide all services required by Warner, solely pursuant to the Services Agreement.

To the extent that any right or copyright or other rights in and/or to the product of my services under the Services Agreement or the Master(s) may remain vested in me and not the Services Company, I hereby subject always to the terms of the Services Agreement, assign (in relation to Master(s)) and license (in relation to all other of said products of my services) the same to Warner absolutely with full title guarantee for the full periods specified in the Services Agreement.

I hereby give all necessary consents and where necessary shall obtain all other necessary consents as may be required pursuant to the Copyright Designs and Patents Act 1988 or otherwise to enable you to make the fullest permitted use of the Master(s) pursuant to the Services Agreement.

I agree to look solely to the Services Company for payment of any compensation in connection with my performance of the remixing services.

By

**ARTEM STOLYAROV**

4

\*\*\*\*PLEASE READ ATTACHED INFORMATION REGARDING MUSICIANS, SAMPLES AND REPLAYED MATERIAL\*\*\*\*

**PLEASE SEE BELOW FORM WHICH MUST BE COMPLETED AND SIGNED PRIOR TO DELIVERY OF THE REMIXES.  FAILURE TO COMPLETE THIS FORM CORRECTLY WILL RESULT IN NON-PAYMENT OF THE REMIX FEE AND THE MASTERS WILL NOT BE CONSIDERED 'DELIVERED' UNDER THE AGREEMENT.**

We would like to draw your attention to clauses 6 and 8 of the remixer agreement you have been asked to sign by Warner Music UK Limited, which provides that you confirm that you have not sampled or replayed any elements of third party recordings.

Whilst you have not informed us of any samples or replayed elements being included in the Masters, we would be grateful if you would kindly sign below and return this form to confirm that you have not sampled or replayed any elements from third party recordings in the remixes delivered to us by you.

Alternatively if you have sampled, replayed or been inspired by any third party recordings, please provide us with specific details to enable us to address this issue immediately.  If you are uncertain of whether any content may need clearance or may be owned by another person, please notify us in each case and we will be able to advise you of any issues.

We will also require any musicians who performed on the Mixes to complete BPI/MU forms.  Please let me know if this is the case and we will be pleased to send you the relevant forms.

We apologies for any inconvenience this may cause, however, it is of vital importance that we have obtained all necessary clearances prior to releasing any recordings delivered to us.

**Contributor:**

Full name:                          Artem Stolyarov *("I", "me", "my")*

Professional name (if any):   "Arty"

Full address:                      c/o LaPolt Law, P.C.
                                           9000 Sunset Blvd., Suite 800
                                           West Hollywood, CA 90069
                                           Attention: Dina Lapolt, Esq.

**Track:**

Track title:                        "Hotel Song" *("the Track")*

Artist of track:                   Kita Alexander *("the Artist")*

Title of remix (if applicable):   "Hotel Song (Arty Remix)" *("the Remix(es)")*

I.      **Samples.**  Except with respect to the materials embodied on the Track, I confirm that the Master delivered by me to Warner Music UK Limited does not contain any samples, replayed elements and/or elements which infringe on any third party recordings.

II.     **Musicians.** Except with respect to the materials embodied on the Track, I confirm that <u>no musicians</u> performed on any of the Master.

SIGNED.......................................                DATED......*16/11/16*......

5

From: ISLAND RECORDS
A DIVISION OF UNIVERSAL MUSIC OPERATIONS LIMITED
364 – 366 Kensington High Street
London
W14 8NS

To:    Telma Music, LLC                                  ("we" "us" construed accordingly)
                    f/s/o Artem Stoliarov PKA Arty
                    c/o LaPolt Law, P.C.
                    9000 Sunset Boulevard, Suite 800
                    West Hollywood, California 90069
                    ("you" "your" construed accordingly)

Thursday 27th August 2015

Dear      Sirs

**REMIXING SERVICES**

1.    We engage youto provide the Remixer's services as a remixer of the Recordings.  You agree to procure that the Remixer remixes the Recordings to the best of his skill and ability at times and places to be designated by us and within the Budget and to deliver to us when we reasonably require but no later than the Delivery Date a first class master embodying the Recordings remixed by the Remixer in the Formats ("Remixer Recordings") which are technically and artistically satisfactory to us.

2.    We will pay you the Fee in respect of the Remixer's services referred to in this agreement, which Fee shall be paid as to fifty per cent (50%) when remixing commences and, subject to you signing and returning the a copy of this agreement and the Remixer signing and returning the inducement letter attached to this agreement and the forms referred to below, fifty per cent (50%) when we accept the Remixer Recordings, which acceptance we hereby acknowledge has occurred prior to the date hereof.  The Fee will be your and the Remixer's sole remuneration in respect of your and the Remixer's services and the exploitation of the Recordings and the Remixer Recordings and will constitute fair and equitable remuneration for the services to be rendered under this agreement (and the product thereof) and the rights granted under this agreement including, without limitation, all rental and lending rights.   The Fee shall be fully inclusive of all costs to be incurred in connection with the remixing by the Remixer of the Recordings which shall not exceed the Budget.  If any such costs are incurred in excess of the amount of the Budget, you shall pay such excess costs.  To the extent that such excess costs are incurred we shall have the right to deduct the same from the Fee prior to paying the balance aforesaid.  You and the Remixer shall not have, and shall not purport to have, any authority to assume any liability on our behalf.  For the avoidance of doubt any additional equipment hire over and above the amount of the Budget will only be allowed with prior written approval.  The Budget specified in the Schedule is the total amount of recording costs for the services provided for under this agreement and no additional payments will be approved by us for any other items including without limitation for per diems, food costs, phone calls, couriers and taxis.  You confirm that no excess costs have been incurred in connection with the Remixer Recordings.

3.    You irrevocably and unconditionally (and you will procure that the Remixer, to the extent of his interest, will irrevocably and unconditionally) to the fullest extent permitted by law assign to us (by way of assignment of present and future copyright) all the copyright and other rights in and to the products of your and the Remixer's services under this agreement to hold to us absolutely without reservation for the use and benefit of us and our successors, assigns and licensees throughout the world for the full period of copyright including all renewals, reversions and extensions; give all such consents as may be necessary to enable us to exploit, and authorise others to exploit, worldwide in any and all media by any and all means now known or developed in the future the products of your and the Remixer's services under this agreement; waive all so-called "moral rights" or similar rights now existing or created in the future in any part of the world in respect of the Recordings and the Remixer Recordings; grant to us the exclusive rental and lending rights in and to the products of your and the Remixer's services under this agreement which you and/or the Remixer  may have at the date hereof, or which may after the date hereof be conferred on you and/or the Remixer, whether pursuant to the Copyright and Related Rights Regulations 1996 or otherwise; and grant to us the right to use, and to authorise others to use, Remixer's professional name, approved biographical details, approved photographs and other approved likenesses in all media solely in connection with the exploitation of the products of your and the Remixer's services under this agreement.

4.    We will accord the Remixer the Credit on the label copy (including without limitation the label copy which is provided to the Digital Service Providers to create metadata ) for the Remixer Recording,  labels and, where practicable, the sleeves of all records wholly embodying the Remixer Recordings including digital booklets (but at all times subject to the compliance of the digital service providers)  but if we inadvertently fail to do so on a non repetitive basis we shall only be obliged to use reasonable endeavours to rectify the error on all labels and, if applicable, sleeves manufactured after we receive written notice of the error from you.  Where the Credit is missing from metadata, we shall request the relevant Digital Service Provider includes the same (where customary) save that any such request is subject always to the compliance of the relevant digital service provider.

5.    You agree to complete or procure that the Remixer completes and obtain signature of a BPI/Musicians' Union "Musician's Consent Form" in respect of any added musician/vocalist participating in the Remixer Recordings should there be any.

6.    You warrant that the Remixer Recordings will not embody any samples without our prior written approval and that the Remixer Recordings will not violate or infringe any common law or statutory right of any person, firm or corporation including, but without limitation, contractual rights and copyright.  You further warrant that you will or will procure that the Remixer will in addition to the Remixer Recordings, deliver to us all other tapes (to the extent that there are any) of

recordings of the Artist's performances of the composition(s) hereunder at the end of the recording sessions and that all information in the studio recording form referred to in this agreement and delivered to us is correct.  You further warrant that you do not own or control the whole or any part of the compositions and that that the Remixer has not written or composed, whether in whole or in part, any of the compositions embodied in the Recordings and/or Remixer Recordings.

7.    You shall indemnify us against any and all claims, costs, proceedings, demands, losses, damages and expenses resulting from or by reason of any third party claim arising from a breach of any of your representations, warranties, agreements and undertakings in this agreement and/or the representations, warranties, agreements and undertakings of the Remixer in the inducement letter, provided such claim has been reduced to a final, adverse, non-appealable judgment in a court of competent jurisdiction or settled with your prior written approval not to be unreasonably withheld or delayed. Notwithstanding the foregoing, we warrant that you shall not be liable for any third party claims relating solely to the Recording (as delivered to you hereunder) as opposed to the Remixer Recording.

8.    We shall indemnify you and Remixer against any and all third party claims, costs, proceedings, demands, damages and expenses resulting from or by reason of any  third party claim relating solely to the unremixed Recording (as delivered to you hereunder) as included in the Remixer Recording and conditional on the following (i) you shall not be entitled to incur any costs, damages or other expenses on our behalf (any costs incurred without our consent shall be excluded from this indemnity) and (ii) you shall hand over control and running of any such claim and/ or proceedings to us as soon as possible on receiving the same. For the avoidance of doubt nothing contained herein shall effect clause 7 above and you warrant that we shall not be liable for any claims relating solely to the content added to the Remixer Recordings by you, Remixer or third parties engaged by you or Remixer.

9.    If we agree in writing that the Remixer Recordings may embody one or more samples, you will deliver to us or will procure that the Remixer will deliver to us, at the same time as you deliver the master embodying the Remixer Recordings, a complete list of all such samples.

10.    This agreement shall be governed by, and construed in accordance with, the laws of England and Wales, whose courts shall be the courts of exclusive jurisdiction.

<u>SCHEDULE</u>

In this agreement:

| | | |
|---|---|---|
| 1. | "Artist" means: | Lauren Aquilina |
| 2. | "Budget" means: | Inclusive of Fee |
| 3. | "Credit" means: | Remixed by Arty |
| 4. | "Fee" means: | Three Thousand Dollars ($3,000.00) which shall form part of and be included in the Budget |
| 5. | "Recordings" means: | The recordings embodying the Artist's performance of the compositions entitled "Ocean" |
| 6. | "Remixer" means: | Arty |
| 7. | "Formats" means: | Vocal and instrumental and if requested by us, dub, radio edit, club mixes. Remixes to be delivered in standard 16 bit format and 24 bit/96khz format (for high resolution delivery) by a secure and previously agreed digital link. All links must be fully labelled with complete session information. All of which must be delivered directly to the A&R person issuing this Schedule. |
| 8. | "Delivery Date" means: | 27/08/2015 |

Please confirm your agreement to the above by signing and returning the enclosed duplicate of this agreement.  This agreement will be valid and binding once fully executed by the parties hereto.

Yours faithfully

_____
For and on behalf of
ISLAND RECORDS,
A DIVISION OF UNIVERSAL MUSIC OPERATIONS LIMITED

Read, agreed and accepted

_____

–2–

For and on behalf of
TELMA MUSIC, LLC

Telma Music, LLC
2015
Island Records,
A division of Universal Music Operations Limited
364 – 366 Kensington High Street
London W14 8NS

Dear Sirs

I refer to the agreement above of even date ("the Remixer Agreement") between Telma Music, LLC ("Lender") and you in which the Lender agrees to supply to you my non-exclusive services as a record remixer and I confirm and agree with all of its terms.

I warrant and agree as follows:-

1.      The Lender has the right and authority to enter into the Remixer Agreement and to provide to you my services upon the terms specified in it.

2.      I am familiar with all of the terms, covenants and conditions of the Remixer Agreement, and I consent to the Lender entering into it.

3.      I will perform and comply with all the terms, conditions and covenants of the Remixer Agreement which the Lender has agreed to procure that I will perform and comply with and I will render all of the services provided for under the Remixer Agreement.

4.      I have granted to the Lender all of the rights which the Lender requires from me to enable it to grant to you the rights granted in the Remixer Agreement.

5.      I will be paid by the Lender and not by you for the services which I provide under the Remixer Agreement. If the Lender breaches the agreement between me and it I may not refuse to perform for you in accordance with the Remixer Agreement and this letter.

6.      If the Lender ceases to exist for any reason or breaches or terminates the Remixer Agreement, I will, at your request, do whatever you require in order to give you exactly the same rights as you would have had under the Remixer Agreement if the Lender had continued to perform and observe its terms and the terms contained in the Remixer Agreement will be effective as if I had been a direct party to the Remixer Agreement in the first place. If you do request that I supply my services directly you will not have to pay me any more than you would have had to pay to the Lender had the Lender continued to exist or had not been in breach of the Remixer Agreement.

7.      If either the Lender or I breach or threaten to breach the Remixer Agreement or this letter you will be entitled to seek legal and equitable relief by way of injunction or otherwise against Lender and/or  against me without first resorting to or exhausting any rights or remedies which you may have against Lender.

8.      I will indemnify you against any and all claims, costs, proceedings, demands, losses, damages and expenses resulting from or by reason of any third party claim arising from a breach of any of my or Lender's  representations, warranties, agreements and undertakings in this agreement and/or the representations, warranties, agreements and undertakings in the Remixer Agreement and this inducement letter, provided such claim has been reduced to a final, adverse, non-appealable judgment in a court of competent jurisdiction or settled with my prior written approval not to be unreasonably withheld or delayed. Notwithstanding the foregoing, I shall not be liable for any third party claims relating solely to the Recording (as delivered to me hereunder) as opposed to the Remixer Recording.

9.      I have been advised by you prior to the date of this agreement to seek independent expert advice to enable me to fully understand the obligations entered into under it.

Yours faithfully

...................................................
ARTEM STOLIAROV (pka Arty)

October 31, 2016

Telma Music LLC f/s/o Artem Stoliarov p/k/a "Arty"
c/o LaPolt Law, P.C.
9000 Sunset Blvd., Suite 800
West Hollywood, CA 90069
Attn: Dina LaPolt, Esq.

**Remixer Agreement**

We are delighted Telma Music LLC (the "Lender") f/s/o Artem Stoliarov p/k/a "Arty" (the "Remixer") has agreed to remix certain sound recordings for Sony Music Entertainment Canada Inc. ("Sony Music"). The sound recording to be remixed as follows (the "Original Recording"):

|  |  |
|---|---|
| Artist: | Magic! ("Artist") |
| Song Title: | "No Regrets" (the "Song") |

In consideration for the covenants, agreements, representations, warranties and indemnities of the parties contained herein and for other good and valuable consideration (the receipt and sufficiency of which are hereby acknowledged by each party), the parties agree as follows:

1.    **Services**

**(a)**    *Provision of Services***:** The Lender agrees to furnish to Sony Music the personal services of Artem Stoliarov p/k/a "Arty" as the independent remixer of the Original Recording to create a new, remixed master sound recording entitled *No Regrets (Arty Remix)* (the "Master Recording"). The Remixer will perform all services customarily rendered by remixers in the record industry in a professional and timely manner**.**

**(b)**    *Delivery Materials***:** As part of performing the services, the Remixer will deliver to Sony Music the Delivery Materials (as defined in Schedule 1).  Sony Music hereby acknowledges and agrees that the Master Recording and the Delivery Materials have been delivered to and accepted by it.

**(c)**    *Recording Costs***:** The Lender will be responsible for all costs associated with the remixing of the Master Recording, including without limitation, (i) all payments, fees and advances (including without limitation union scale payments under collective bargaining agreements, fees and royalties) required to be made to the Remixer and all persons whose services are rendered in connection with the Master Recording (including without limitation all musicians, arrangers, mixers, remixers, engineers and others involved in recording, editing, mixing, remixing, mastering, re-mastering and re-recording the Master Recording), but specifically excluding any such payments, fees, and advances required to be made in connection with the Original Recording, (ii) all costs associated with the use of any studio or other location used for producing or remixing the Master Recording, (iii) all transportation, hotel and living expenses (including per diems), if any, required for the Remixer or any other session participants in connection with such Master Recording, (iv) all costs of delivering the Delivery Materials to Sony Music, and (v) all sample clearance costs.

2.    **Master Recordings Rights**

**(a)**    *Ownership of Master Recording***:** In exchange for the fees set out in this agreement, the Lender hereby agrees to sell, assign and transfer to Sony Music all right, title and interest in and to the Master Recordings and any and all excerpts, together with the performances embodied thereon, including without limitation all copyrights and other intellectual or industrial property rights therein, free and clear of any claim whatsoever. The Master Recording from the inception will be considered a work made for hire. Without limiting the generality of the foregoing, the Lender acknowledges that the Master Recording is to be the property of Sony Music and may be used by Sony Music in any and all media now or hereafter known throughout the Universe, for any purpose any number of times without obligation to pay any additional fees. All suggestions, ideas and Material (other than musical works) submitted to Sony in connection with the Master Recording shall become the property of Sony Music, free of any claim whatsoever by the Lender or the Remixer or any person deriving any right or interest from the Lender or the Remixer. Under no circumstances will Sony Music be deemed to have waived its right to the Original Recording or the Master Recording, except by a written instrument signed by a duly authorized signatory on behalf of Sony Music expressly waiving such right.

**(b)      *Waiver of Moral Rights*:** The Remixer agrees to and to cause all individuals providing services to or through the Remixer in respect of the Master Recording to absolutely and irrevocably waive in favour of Sony Music and Sony Music's successors, licensees and assigns, all moral rights in respect of the Master Recording. The Remixer will obtain from each of its employees and contractors the forgoing waiver in writing.

**(c)      *Further Assurances*:** Promptly upon the Artist's written request, the Lender will execute and deliver to Sony Music any instruments of transfer and other documents necessary (as determined by Sony Music, acting reasonably) for Sony Music to secure copyright protection in the Master Recording and the Lender hereby appoints Sony Music as the Lender's agent and attorney-in-fact for the sole and limited purpose of signing any such instruments or other documents in its name and to make appropriate disposition of them provided they are consistent with this agreement.

**3.      Fees**

Sony Music will pay to the Lender a fee for the remixing of the Master Recording of US$7,500.00 plus applicable taxes, upon full execution of this agreement. If Sony Music elects to pay any costs for which the Lender is responsible hereunder, Sony Music may demand immediate reimbursement from the Lender or may deduct such amounts from any sums becoming payable under this agreement.  Sony Music acknowledges and agrees that they have not paid any costs for which the Remixer is responsible. Lender acknowledges receipt of payment in full.

**4.      Names, Likeness and Biographies**

Sony Music will have the perpetual non-exclusive right to use and to authorize others to use the Remixer's professional name, prior written approved biographical material and prior written approved likeness solely in connection with the distribution, advertising, publicity and promotion and exploitation of the Master Recording.

**5.      Credit**

Sony Music agrees to use reasonable commercial efforts to ensure that an appropriate credit is afforded to Remixer on digital booklets, wherever metadata permits (and where applicable, in a manner which links back to your artist page on all so-called "digital service providers"), on the packaging and/or sleeves of records embodying the Master Recording which are manufactured and/or distributed by Sony Music or on their behalf, and in all advertisements for records embodying the Master Recording.  Said credit shall read substantially as follows:

"No Regrets (Arty Remix)"

**6.      Negative Covenant**

For a period of two years after the delivery of the Master Recording, the Remixer will not produce or co-produce, or authorize the production or co-production of, a master recording embodying, in whole or part, any musical work recorded in the Master Recording, for any person, firm or corporation other than Sony Music.

**7.      Representations, Warranties and Indemnities**

**(a)      *Representations and Warranties*:**

The Lender hereby represents and warrants to Sony Music and acknowledges that Sony Music is relying on these representations and warranties, that:

(i)    the Remixer is over the age of majority, of sound mind and not bankrupt;

(ii)   the Lender has all necessary rights, power and authority to enter into this agreement and to perform all of the obligations to be performed by it and to grant to Sony Music the rights granted hereunder;

(iii)  the Lender is a non-resident of Canada for the purpose of the *Income Tax Act* (Canada);

(iv)   entering into this agreement will not breach any other agreement to which the Lender or the Remixer is a party;

(v)    Neither the Lendor nor the Remixer is a party to any agreement pursuant to which the Lender or the Remixer has granted to any third party any right in or to the Master Recording or any part thereof;

(vi) except with respect to material embodied on the Original Recording, there are no liens, encumbrances or claims against the Master Recording and all costs incurred in the creation and production of the Master Recording have been paid by the Lender;

(vii) except with respect to material embodied on the Original Recording, no person other than Sony Music has any right, title or interest in or to the Master Recording and all persons who participated in the making of the Master Recording have absolutely and irrevocably waived all moral rights in respect of the Master Recording;

(viii) except with respect to material embodied on the Original Recording, the Master Recording and other materials delivered by the Lender pursuant to this agreement are not copied wholly, substantially or in any part from any other work or material and do not violate any copyright, trade-mark, patent, industrial design, right of privacy or other right of any person;

(ix) the Remixer is not the author, co-author, songwriter or co-songwriter of any musical work embodied in any of the Master Recording;

(x) there are no samples or performances by any performer included in the Master Recording (but excluding the Original Recording) that have not been approved by Sony Music or for which the Lender has not obtained all necessary consents, permissions, approvals and licenses;

(xi) the Lender has not accepted or agreed to accept, and will not accept or agree to accept from any person other than Sony Music, directly or indirectly, any consideration for the inclusion of any product, commercial endorsement or merchandising tie-in with any goods, wares, services, institutions or political or social advocacy group in the Master Recording;

(xii) the information provided as part of the Delivery Materials pursuant to section 1(a) is true, correct and complete;

(xiii) the Master Recording does not contain any undisclosed program routine, device or other feature, including, without limitation, a time bomb, software lock, drop-dead device, or malicious logic, virus, worm or trojan horse that is designed to delete, disable, deactivate, interfere with, or otherwise harm any software, hardware, system or data, nor any virus or other intentionally created, undocumented contaminant, that may, or may be used to, access, modify, delete, damage or disable any hardware, system or data or that may result in damage thereto; and

(xiv) except as expressly specified herein, Sony Music will have no obligation whatsoever to the Lender or any third party for or in connection with the creation of the Master Recording and Sony Music's exercise of any rights therein.

Sony Music hereby represents and warrants to Lender, and acknowledges that Lender is relying on these representations and warranties, that:

(i) Sony Music has all necessary rights, power and authority to enter into this agreement and to perform all of the obligations to be performed by it and to grant to the Lender the rights granted hereunder; and

(ii) entering into this agreement will not breach any other agreement to which Sony Music is a party;

(iii) the Original Recording, nor the performances or any other material embodied thereon will violate or infringe upon any rights of any person or entity.

**(b)** *Indemnity:* The Lender hereby indemnifies Sony Music and holds Sony Music harmless against any and all third party claims, losses, liabilities, damages, actual, verifiable, out-of-pocket costs and expenses (including reasonable outside legal fees) arising out of any breach by the Lender of any representation, warranty, condition or promise in this agreement, provided any such claim is reduced to a final, adverse, non-appealable judgment by a court of competent jurisdiction or settled with Lender's prior written consent, not to be unreasonably withheld.

Sony Music hereby indemnifies Remixer and holds Remixer harmless against any and all third party claims, losses, liabilities, damages, costs and expenses (including reasonable legal fees) arising out of any breach by Sony Music of any representation, warranty, condition or promise in this agreement provided any such claim is reduced to a final, adverse, non-appealable judgment by a court of competent jurisdiction or settled with Sony Music's prior written consent, not to be unreasonably withheld..

**8.** **Remixer's Relationship to Sony Music**

The Lender is an independent contractor and nothing contained in this agreement will in any way constitute the Lender to be the agent or employee of Sony Music. The Lender does not intend any person to be a third party beneficiary of this agreement. The Lender will not have any authority to bind or attempt to bind Sony Music in any manner or form whatsoever or to assume or to incur any obligation or responsibility, express or implied, for or on behalf of or in the name of Sony Music.

**9.**   **General Terms**

**(a)**   *Entire Agreement:* This agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supercedes all prior agreements, understandings, negotiations and discussions, whether written or oral. There are no conditions, covenants, agreements, representations, warranties or other provisions, expressed or implied, collateral, statutory or otherwise relating to the subject matter hereof except as provided herein.

**(b)**   *Severability:* If any provision of this agreement is determined by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such determination shall not impair or affect the validity, legality or enforceability of the remaining provisions hereof, and each provision is hereby declared to be separate, severable and distinct.

**(c)**   *Governing Law:* This agreement is to be construed, interpreted and enforced in accordance with, and the respective rights and obligations of the parties are to be governed by, the laws of the Province of Ontario and the federal laws of Canada applicable therein. Each of the parties hereby submits to the jurisdiction of the courts in the Province of Ontario. Each of the parties waives any right, and agrees not to apply, to have disputes under this agreement tried or otherwise determined by jury, except where otherwise required by law.

**(d)**   *Interpretation:* The use of sections and the insertion of headings are for reference purposes only and are not to affect the interpretation of this Agreement. Unless otherwise indicated, any reference herein to a particular section or Schedule refers to the specified section or Schedule to this agreement. In this agreement, words importing the singular number will include the plural and vice versa, words importing gender will include all genders and words importing persons will include individuals, corporations, partnerships, associations, trusts, unincorporated organizations, governmental bodies and other legal or business entities.

**(e)**   *Calculation of Time Period:* When calculating the period of time under this agreement, the date that is the reference date in calculating such period is to be excluded. If the last day of any period is not a business day, the period will end on the next business day. If any payment or calculation is to be made or any action taken on a day that is not a business day, it will be made or taken on or as of the next day that is a business day.

**(f)**   *Assignment:* Given the personal nature of the services to be provided, the Lender may not assign this agreement without Sony Music's prior written consent. Sony Music may assign its rights and obligations to an affiliate or a party acquiring all or substantially all of the assets of Sony Music. This agreement shall enure to the benefit of and shall be binding on and enforceable by the parties and their respective successors, personal representatives, heirs and permitted assigns.

**(g)**   *Amendment and Waiver:* No amendment or waiver of any provision of this agreement shall be binding on either party unless consented to in writing by such party. No waiver of any provision of this agreement will constitute a waiver of any other provision, nor will any waiver constitute a continuing waiver unless otherwise expressly provided.

**(h)**   *Currency:* All monetary amounts in this agreement are expressed in US funds.

**(i)**   *Confidentiality:* The Lender and Sony Music agree to keep the terms and conditions of this agreement confidential. However, either party may disclose information pertaining to this agreement and provide a copy of this agreement to the extent necessary (a) to perform their respective obligations under the agreement; (b) to enforce the terms of this agreement; (c) to Lender's professional representatives including, but not limited to, managers, legal and financial advisors, provided such advisors agree to keep all information and this agreement confidential; and/or (d) as required by law or judicial order.

**(j)**   *Notice:* All notices required or permitted under this agreement must be in writing and delivered in person or by courier to: (I) the Lender at the address first set out above, and (II) Sony Music Entertainment Canada Inc. at 150 Ferrand Dr., Suite 300, Toronto, Ontario M3C 3E5, Facsimile: 416-589-3010 Attention: Vice President, Legal & Business Affairs, or to such other address that a party may from time to time give notice of to the other party. A notice is deemed to have been given and received on the day it is delivered, if delivered in person or by commercial courier, or on the day on which transmission is confirmed, if

sent by facsimile. If such day is not a business day, then the notice is deemed to have been given and received on the next business day.

**(k)**      ***Counterparts and Facsimile Signatures:*** This agreement may be executed in any number of counterparts and by email or facsimile, each of which shall be deemed to be an original, notwithstanding that all of the parties are not signatory to the same counterpart or facsimile.

If you are in agreement with the terms and conditions set out above, please confirm your acceptance by signing where indicated below and returning one copy of this agreement to us for our records.

Yours truly,

**Sony Music Entertainment Canada Inc.**

By:_____
      *Authorized Signing Officer*

_____

The Lender agrees to be bound by the terms and conditions set out above.

Dated this     day of       , 2016.

**Telma Music LLC**

By: _____
      *Authorized Signing Officer*

The undersigned: (a) agrees and accepts the above terms and conditions (b) assents to the execution of the agreement and agree to be bound by all of the terms and conditions thereof, (c) represents and warrants that Telma Music LLC. is in a position to enter into this agreement and to perform all of the obligation to be performed by Telma Music LLC. and to grant the rights granted hereunder regarding the Master Recording and the undersigned, and (d) agrees that if Telma Music LLC. fails to duly and punctually perform its obligations to Sony Music, the undersigned will fulfill all the obligations in the agreement as amended hereby.

Dated as of the date first written above.

Witness:_____        _____
      Name:                                                      Artem Stoliarov p/k/a "Arty"

SCHEDULE 1 - DELIVERY MATERIALS

The Lender will deliver to Sony Music the following materials (the "Delivery Materials") in accordance with the terms set out in the agreement:

**A.   MASTER RECORDING**
*Final Mix:*
- the master tape,
- if Sony Music so requests, a safety copy of the master tape
- all "WAV" files for the Master Recording

| |
|---|
| FOR INTERNAL USE |
| FOR INTERNAL USE |
| FOR INTERNAL USE |

**B.   LABEL AND LINER COPY**
*Label Copy:* If any changes are required to the label copy in respect of the Original Recording as a result of the services provided by Mixer, label copy in the customary form, including the title of each composition, the composers, the running time of each track, the publisher, and the performing rights society information.

| |
|---|
| FOR INTERNAL USE |

*Liner Copy:* If any changes are required to the label copy in respect of the Original Recording as a result of the services provided by Mixer, liner notes, liner credits, a track-by-track list of all featured vocal performers, background vocal performers and instrumental performers on each Master Recording identifying their performances and the dates of said performances, the sequence of tracks and all courtesy credit information.

| |
|---|
| FOR INTERNAL USE |

**C.   CLEARANCES FOR MUSICIANS**
*Immigration:* immigration clearances for all persons except Artist engaged or furnished by Lender.

| |
|---|
| FOR INTERNAL USE |

*Applicable Unions:* within 48 hours after each recording session, complete written Musicians Contracts (AFM Form B-4), W-4 forms and AFTRA reports for such session (or the Canadian equivalent thereof) for musicians engaged or furnished by Lender

| |
|---|
| FOR INTERNAL USE |

**D.   GUEST ARTISTS**
*Record Company Consents:* notice of any guest artist for which third party record company consent may be required whose performance was embodied in the Master Recordings by Lender.

| |
|---|
| FOR INTERNAL USE |

*Releases:* a release (in the form attached hereto as Schedule 2) for all persons performing in the Master Recordings other than Artist whose performance was embodied in the Master Recordings by Lender.

| |
|---|
| FOR INTERNAL USE |

**E.   SAMPLE CLEARANCES**
*Sample Clearances:*
- notice of every sample embodied in the Master Recordings by Lender, including title, artist, writer, publishing and source information and CD copy of the sampled song.
- sample clearances for such samples

| |
|---|
| FOR INTERNAL USE |
| FOR INTERNAL USE |



## Involved Productions Ltd
Unit 25, 214 Bermondsey Street, London, SE1 3TQ

### REMIX AGREEMENT

17th Jan 2018

Between:

Involved Productions Ltd ("we", "us")
Unit 25, 214 Bermondsey St.
London SE1 3TQ

And

Telma Music LLC ("you") f/s/o Artem Stoliarov p/k/a "ALPHA 9"
c/o LaPolt Law, P.C.
9000 Sunset Blvd., Suite 800
West Hollywood, CA 90069
Attn: Dina LaPolt, Esq.

REMIXING My Own Hymn by Above & Beyond feat. Zoë Johnston

We are writing to confirm the terms that have been agreed to between us and you for the re-mixing of a recording by the artist **Above & Beyond feat. Zoë Johnston** entitled **My Own Hymn** (the " Recording") by **ALPHA 9** (the "Remixer")

The terms are as follows: -

1.      We hereby acknowledge your satisfactory delivery of a master recording by Remixer embodying the Recording (the "Remix") and our acceptance thereof.

2.      We shall pay you a fee of £1000 (the "Fee") for providing the services of the Remixer payable upon signature of this agreement.

3.      Remixer will be afforded credit on the labels and, where possible, the sleeves of all records embodying the Remix, and in all metadata, wherever possible, in the following form: "ALPHA 9 Remix". For the avoidance of doubt, credit will be given to Remixer in the metadata of all digital distributions as a so-called "Remix" or "Featured" artist, such that Remixer's profile is linked to the Remix. Upon notice from you or our independent discovery of same, we

will correct any failure to accord such credit on future runs of physical
distributions or within ten (10) days with respect to digital distributions.

4.    For the avoidance of doubt you hereby agree that the Fee shall be fully
inclusive of all recording costs and you shall be solely responsible for all
excess costs unless you have prior written consent from us.

5.    Remixer warrants that Remixer shall not incur any liability on our behalf
without our consent.

6.    You hereby irrevocably confirm that (to the extent that you or Remixer
owns or controls any copyright) the entire copyright in the Remix shall vest in
us absolutely throughout the World for the full periods of copyright and all
renewals and extensions thereof and thereafter (insofar as possible) in
perpetuity. Remixer further confirms that we shall be the sole and exclusive
owner of the Remix from the commencement of recording and that Remixer
shall not enforce his moral rights against us therein or records produced.

7.    You hereby warrant that the Remix (but specifically excluding the
Recording) contains no un-cleared sound recordings or composition samples.
You hereby indemnify us against any third party claims, demands, actual
verifiable out-of-pocket costs, including outside legal fees, damages and any
other liabilities arising from breaches of the foregoing warranty, provided such
claims are reduced to a final, adverse, nonappealable judgment in a court of
competent jurisdiction or settled with your prior written consent.

8.    We hereby warrant that the unremixed Recording does not infringe
upon the rights of any third parties. We hereby indemnify you against any third
party claims, demands, actual verifiable out-of-pocket costs, including outside
legal fees, damages and any other liabilities arising from breaches of the
foregoing warranty, provided such claims are reduced to a final, adverse,
nonappealable judgment in a court of competent jurisdiction or settled with our
prior written consent.

9.    This agreement shall be governed by the laws of England and Wales
whose courts shall have exclusive jurisdiction.

If the foregoing correctly reflects your understanding of our agreement would
you please sign where indicated below.


Yours faithfully                                        Accepted and Agreed




.......................                                 .......................
Gareth Jones                                            Telma Music LLC
Involved Productions Ltd

# Involved Productions Ltd

Unit 25, 214 Bermondsey Street, London, SE1 3TQ

| 3 July 2015   Heads of Agreement |
|---|

Between:
Involved Productions Ltd
Unit 25, 214 Bermondsey St.
London SE1 3TQ

And:

Telma Music LLC ("You") f/s/o Artem Stoliarov p/k/a "Arty"
c/o LaPolt Law, P.C.
9000 Sunset Blvd. Suite 800
West Hollywood, CA 90069
Attn: Dina LaPolt, Esq.

**RE:  REMIXING "Peace Of Mind" BY Above & Beyond feat. Zoë Johnston**

We are writing to confirm the terms which have been agreed to between this company and yourselves for the re-mixing of a recording by the artist **Above & Beyond feat. Zoë Johnston** entitled "Peace Of Mind" (the "Recording") by Arty (the "Remixer").

The terms are as follows:

1.      We hereby acknowledge your satisfactory delivery of a master recording by Remixer embodying the Recording (the "Remix") and our acceptance thereof.

2.      We shall pay you a fee of £2000 Pounds (the "Fee") for providing the services of the Remixer payable upon signature of this agreement.

3.      Remixer will be afforded credit on the labels and, where possible, the sleeves of all records embodying the Remix, and in all metadata, wherever possible, in the following form: "Remix and additional production by Arty". For the avoidance of doubt, credit will be given to Remixer in the metadata of all digital distributions as a so-called "Remix" or "Featured" artist, such that Remixer's profile is linked to the Remix. Upon notice from you or our independent discovery of same, we will correct any failure to accord such credit on future runs of physical distributions or within ten (10) days with respect to digital distributions.

4.      For the avoidance of doubt you hereby agree that the Fee shall be fully inclusive of all recording costs and you shall be solely responsible for all excess costs unless you have prior written consent from us.

5.      You for yourselves and on behalf of the Remixer warrant that neither you nor the Remixer shall incur any liability on our behalf without our consent.

6.      You hereby irrevocably confirm that (to the extent that you or Remixer own or control any copyright) the entire copyright in the Remix shall vest in us absolutely throughout the World for the full periods of copyright and all renewals and extensions thereof and thereafter (insofar as possible) in perpetuity. You further confirm that we shall be the sole and exclusive owner of the Remix from the commencement of recording and that the Remixer shall not enforce his moral rights against us therein or records produced.

7.      You hereby warrant that the Remix (but specifically excluding the Recording) contains no uncleared sound recordings or composition samples. You hereby indemnify us against any third party claims, demands, actual verifiable out-of-pocket costs, including outside legal fees, damages and any other liabilities arising from breaches of the foregoing warranty, provided such claims are reduced to a

final, adverse, nonappealable judgment in a court of competent jurisdiction or settled with your prior written consent.

8.      We hereby warrant that the unremixed Recording does not infringe upon the rights of any third parties. We hereby indemnify you against any third party claims, demands, actual verifiable out-of-pocket costs, including outside legal fees, damages and any other liabilities arising from breaches of the foregoing warranty, provided such claims are reduced to a final, adverse, nonappealable judgment in a court of competent jurisdiction or settled with our prior written consent.

9.      This agreement shall be governed by the laws of England and Wales whose courts shall have exclusive jurisdiction.

If the foregoing correctly reflects your understanding of our agreement would you please sign where indicated below.

Yours faithfully,                                               Accepted and Agreed,

......................                                          .........................
**Michael Farrell**                                            Telma Music LLC
**Involved Productions Ltd**                                   **The Remixer**

---

PLEASE COMPLETE AND RETURN TO US.

Full name: **Artem Stoliarov**

Artist Name: **Arty**

Key of Track:

BPM:

Full Remix Title(s): **"Peace Of Mind"**



**MUSIC GROUP**      ("Company")

## REMIXER AGREEMENT

Date: <u>5/14/14</u>

| | |
|---|---|
| 1. Remixer ("Remixer"): <u>ARTYOM STOLYAROV pka ARTY</u><br><br>Furnishing Company, if any ("Furnisher"):<br><br><u>Telma Music  LLC</u><br><br>Address of Remixer or Furnisher, as applicable:<br><u>2220 Colorado Ave</u><br><u>Santa Monica CA 90404</u><br><br>Attn: <u>Ryan Roy</u><br><br>Phone:  <u>310-865-8428</u><br><br>Email: <u>ryan.roy@umusic.com</u><br><br>Requested Credit ("Credit"):<br><br><u>Remix Produced by Arty</u> | 2. Company's Artist (the "Artist"):<br><br><u>Porter Robinson</u><br><br>3. Title of Master (s) ("Master") to be Remixed:<br><br><u>Lionhearted</u><br><br>4. Description and/or Title(s) and/or Versions of Remix(es):<br><br><u>Lionhearted (Arty Remix)</u><br><u>Lionhearted (Arty Instrumental)</u><br><br>and any other remix(es) delivered therewith (collectively, the "Remix").<br><br>5. Company Contact:<br><br>Name: <u>Ryan Del Vecchio</u><br>Email: <u>ryan.delvecchio@umusic.com</u><br>Phone: <u>310-865-5142</u> |

| | |
|---|---|
| Check and Complete Applicable Payment Method:<br><br>☒ All-In Fund ("Fund"):  $ <u>2,000</u><br>☐ Advance plus Budget:<br>   Advance: $ _____<br>   Budget:  $ _____ | **Delivery Due Date ("Due Date"):**<br><br><u>5/30/14</u><br><br>**All Remixes Must Be Delivered to Company No Later Than This Date** |

Royalty:  No royalties are payable in connection with the Remix unless specifically approved by Company. If initialed in the space below by Company's VP, Business Affairs, then the specified  royalty shall be payable in accordance with the terms hereof:
☐ Royalty: _____% Initialed: _____

Accepted and Agreed To:                                Accepted and Agreed To:

**Furnisher (if applicable)**                          **Company**

By: _____                           By: _____
   **(Please initial page 2 as well)**                    Sr., Vice President, Business Affairs

**Remixer:** _____

   **(Please initial page 2 as well)**

<u>**Subject to Standard Terms and Conditions on Page 2 Attached**</u>



MUSIC GROUP    ("Company")

## REMIXER AGREEMENT
### Standard Terms and Conditions

Page 1 of this agreement is subject to the following standard terms and conditions that have been mutually agreed upon:

1. If a Furnisher is listed on Page 1 hereof, then, for purposes of this agreement, Remixer's services hereunder shall be deemed to be furnished to Company by Furnisher, all payments otherwise payable to Remixer hereunder shall be made to Furnisher, Furnisher will be solely responsible for and will pay all amounts due to Remixer and all references to Remixer below will be deemed to refer to both Remixer and Furnisher.

2. Remixer will remix the Master and deliver the Remix to Company by no later than the Due Date. As used herein, the term "deliver" includes, without limitation: (i) delivery to, and acceptance by, Company of the Remix in a form that is both technically and commercially acceptable to Company; (ii) clearance of any and all samples to the satisfaction of Company; and (iii) delivery to Company of: (A) a clearly labeled production master in the format customarily utilized by Company; (B) the source multi-track master(s); and (C) written production credits.

3. The Remix will be deemed a "work made for hire" for Company, and Company shall have the exclusive right to copyright the Remix in its name and to secure any and all renewals and extensions of such copyright throughout the world. Accordingly, the Master, the Remix, and all duplicates and derivatives thereof, are and will be the property of Company throughout the world in perpetuity from the inception of their creation, and Company shall have the exclusive right to use or not use the Remix in any medium or manner, by any method now known or hereafter created without any compensation to Remixer other than as specifically set forth in paragraph 4 below. Remixer agrees that each recording or derivative thereof of the Remix is a work made for hire and, additionally, a contribution to a collective work. In any event, Remixer assigns to Company ownership and all rights, including the copyright, in the Remix and agree to execute and deliver to Company any additional documents Company desires to confirm same, and failing which, Company may sign such documents in Remixer's name.

4. (a) All-In Fund. If the "All-In" Fund payment method on page 1 is selected by Company, then the Fund will be paid one-half (1/2) once Remixer starts work hereunder (provided this agreement has been signed by Remixer and Company), and the balance, less any recording costs incurred or paid by Company, will be paid after the delivery to and acceptance by Company of the Remix in accordance with paragraph 2 above. In this case, Furnisher will be solely responsible for and will pay all costs incurred in connection with the Remix including, without limitation, payments to the Remixer, unions, engineers, studios, and the cost of tape and sample clearance, but excluding any payments to the Artist under the Artist's agreement with Company.

(b) Advance and Budget. If the Advance plus Budget payment method on page 1 is selected by Company, then the Advance will be paid one-half (1/2) once Remixer starts work hereunder (provided this agreement has been signed by Remixer and Company), and the balance will be paid after the delivery to and acceptance by Company of the Remix in accordance with paragraph 2 above. In this case, Company shall pay recording costs in accordance with a written budget approved in advance by Company up to a maximum of the dollar figure listed on page 1 hereof as the Budget (the "Budget"). Remixer shall be solely responsible for and shall pay any and all costs and expenses in connection with the Remix in excess of the Budget.

(c) Royalty. If and only if the royalty section on page 1 above is checked and initialed, Company shall pay Remixer the basic royalty rate indicated in such section applicable to net "full-price" sales of records embodying the Remix through normal retail channels in the United States, computed, adjusted and paid in the same manner at the

same times and subject to the same terms and conditions as the royalty payable to the artist under the artist's agreement with Company, with proportionate reductions on all sales for which reduced royalties (or no royalties) are payable under that agreement. As to records not consisting entirely of the Remix, Remixer's royalty will be prorated based on the number of versions of the Remix that are contained on each such record compared to the total number of royalty bearing master recordings (including the Remixes) contained on each such record. Company shall have the right to recoup from this royalty an amount equal to the Advance or one-half the Fund, whichever applies.

5. Company and its licensees will have the right, but not the obligation, to use Remixer's legal and professional name, likeness and biographical material on packaging and label copy, and for publicity and advertising in connection with records embodying the Remix. Company shall use its best reasonable efforts to give Remixer the Credit listed on page 1 as part of the packaging of records containing the Remix and in trade advertising for the Remix; but any inadvertent failure by Company to do so will not be deemed a breach hereof.

6. Remixer warrants and represents that: (a) Remixer has the right to enter into and perform this agreement; (b) Remixer will be solely responsible for and will pay the amounts required to be paid by Remixer hereunder; (c) Remixer will not incorporate any samples or side artist performances into the Remix without Company's prior written consent; and (d) Remixer shall obtain and supply to Company all necessary licenses, consent, permissions, waivers and other consents from all participants in the recording, as well as all payroll forms, invoices, receipts and documents pertaining to such recording sessions; and (e) no materials (including, but not limited to, samples) furnished by Remixer contained in the Remix will violate or infringe upon any rights of any person or entity. Remixer hereby irrevocably waives any claims, right, title or interest, including, without limitation, any copyright interest, in any composition embodied on the Remix. Furnisher and Remixer hereby waive any claim to any moral rights in the Remix.

7. Remixer acknowledges that the Master may not have been released to the public. Except to the extent necessary for Remixer to render Remixer's services hereunder, Remixer agrees not to sell, transfer or copy in any way (including, by CD burning, loading them onto a computer or uploading to the internet) any sound recording provided by Company. Remixer agrees not to make sound recordings provided hereunder available in any manner to a third party and will take all necessary steps to make sure that they do not pass into the possession of any third party.

8. Remixer hereby agrees to indemnify, save and hold harmless Company and Artist, and their respective licensees, assigns, employees and agents from any and all liability, costs, losses and expenses arising out of or connected with any claims by any third party or any act by Remixer which is inconsistent with any of the warranties, representations or agreements made by Remixer in this agreement.

9. This agreement may not be assigned by Remixer, shall be governed by New York law and constitutes the entire agreement among the parties superseding any other negotiations or understandings which are being merged herein.

Initialed: _XS_ (Furnisher)  _XS_ (Remixer)



**REMIX AGREEMENT**

DATED:              As of September 25, 2015

RIOT:               RIOT GAMES, INC. ("**Riot**")
                    12333 W. Olympic Blvd.
                    Los Angeles, CA 90064
                    Attention:  Legal

LENDER:             Telma Music, LLC ("**Lender**")
                    c/o La Polt Law, P.C.
                    9000 Sunset Blvd., Suite 800
                    West Hollywood, CA 90069

ARTIST:             Artem Stolyarov p/k/a Arty ("**Artist**")

    For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

    1.     Conditions Precedent.  All of Riot's obligations under this Agreement are expressly conditioned upon and subject to satisfaction of all of the following:

    (a) Artist's completion, to Riot's satisfaction, of a W-9 Form (Request for Taxpayer Identification Number and Certification), together with a valid Federal I.D. number for Lender; and

    (b) Riot's receipt of this Agreement executed by Lender and Artist.

    2.     Services.  Riot hereby engages Lender to provide the services of Artist, and Artist hereby agrees to render services as a "remixer" in connection with a master recording from Riot's 2014 World Championship album to be determined by Riot (the "**Master**") pursuant to Riot's direction.  The Master as remixed by Artist hereunder shall hereinafter be referred to as the "**Remix**." At all times Riot and its representatives and employees will have the right, but not the obligation, to provide suggestions for Artist to incorporate into the Remix.  Artist shall make a reasonable number of re-recordings and/or other modifications to the Remix, or any elements thereof designated by Riot, pursuant to comments provided by Riot, until the Remix in its entirety is technically and commercially satisfactory to Riot, in Riot's sole discretion. Lender and Artist represent that the Remix shall be consistent with the commercial quality of Artist's best musical work previously created by Artist and commercially released.

    Lender and Artist acknowledge and agree that there are no musical compositions embodied in the Remix that were written or composed, in whole or in part, by Lender or Artist, alone or in collaboration with others, or which are owned or controlled, in whole or in part, directly or indirectly, by Lender, Artist or any other person, firm or corporation in which Lender and/or Artist have a direct or indirect interest.

    3.     Schedule.  Artist's Services hereunder shall commence on September 25, 2015 and the final, Riot-approved version of the Remix shall be delivered to Riot no later than December 5, 2015 in a format and in accordance with the technical specifications designated by Riot to Artist. Lender and Artist agree and understand that time is of the essence with regard to the timely creation and delivery of the Remix.

    4.     Fees.  In full and complete consideration of the obligations performed and the rights granted by Lender and Artist hereunder and provided that neither Lender nor Artist is in breach of this Agreement and Lender and Artist have rendered and fully completed all services hereunder:

(a) Riot shall pay to Lender a fee of Five Thousand USD ($5,000.00) (the "**Fee**") for the services performed hereunder, payable within thirty (30) days following the final satisfactory delivery of the Remix and Riot's receipt of a correct invoice; and

(b) Riot agrees to reimburse Lender for reasonable, pre-approved third party production expenses actually incurred and paid by Lender in connection with the recording and production of the Remix pursuant to a budget approved by Riot in advance in writing ("**Production Expenses**"), up to but in no event exceeding Two Thousand Five Hundred USD ($2,500.00), within thirty (30) days following, and subject to, Lender providing documentation of such Production Expenses and a correct invoice to Riot, which Lender must provide to Riot no later than thirty (30) days following the written approval and acceptance by Riot of the final version of the Remix.

For avoidance of doubt, the Upfront Payment shall not be construed as payment for services rendered, but rather, a payment conditioned upon full performance of Lender's and Artist's obligations under this Agreement.

5.    Ownership.  The results and proceeds of Artist's services hereunder, including, without limitation, the Remix and any incidental materials created in connection herewith, or any portion thereof, shall hereinafter be referred to as the "**Work**." The Work shall, from the inception of its creation, be a "work made for hire" explicitly ordered or commissioned by Riot within the meaning of the copyright laws of the U.S. or any similar or analogous law or statute of any other jurisdiction.  Riot shall be deemed the sole and exclusive author of the Work for all purposes and shall own all right, title, and interest in and to the Work in any and all means and media, now known or hereafter devised, and in all languages throughout the world in perpetuity, including, without limitation, the copyrights, patents, or trademarks and other intellectual property therein and all renewals or extensions thereof, and the right to use, adapt and change said Work and to prepare derivative works therefrom and the right to manufacture, advertise, sell, license or otherwise exploit the Work in any and all manner and media now known or hereafter devised, in all configurations as Riot shall determine, upon such terms and conditions and under such trademarks as Riot shall elect, and to permit the public performance thereof by any method or means now or hereafter known.  To the extent necessary to vest all of the foregoing rights in Riot, Lender and Artist hereby irrevocably transfer, grant and assign exclusively to Riot, in perpetuity and throughout the world, all right, title, and interest Lender and Artist may have or hereafter acquire in or to the Work and all elements and components thereof and relating thereto, including, without limitation, all copyrights, patents and trademarks and all renewals and extensions thereof, and all rights under worldwide copyright or trademark laws or treaties, in and to the Work and all components thereof whether theretofore or thereafter created.  Lender and Artist waive all rights of "droit moral" or "moral rights of authors or creators" and/or any similar rights or principles of law which Lender and Artist may now or hereafter have or allege in relation to the Work.  Riot shall maintain exclusive access in perpetuity to any materials derived from the Services performed hereunder.  All employees and subcontractors of Lender and Artist performing Services hereunder (if any) shall assign to Riot the same rights to their results and proceeds in the manner required of Lender and Artist as are set forth in this Section 5.  Lender and Artist shall execute such documents and do such other acts and deeds as may be required by Riot or its assignees or licensees to further evidence or effectuate Riot's rights hereunder.  If Lender and/or Artist fail to do so, Riot may execute such documents as Lender's and Artist's attorney-in-fact, which appointment will be irrevocable and coupled with an interest, with full power of substitution and delegation.  All rights granted or agreed to be granted to Riot under this Agreement shall vest in Riot immediately and shall remain vested whether this Agreement expires in normal course or is terminated for any cause or reason.

6.    Name and Likeness.  Riot shall have the non-exclusive right to use Artist's Professional name, prior written approved likeness, prior written approved biography and prior written approved logo and other indicia and marks of Artist solely in connection with the exploitation of the Work and any and all advertising and promotion in connection therewith, so long as Artist is accurately described as remixer in any such advertising and promotion.

7.    Representations, Warranties and Indemnification.  Lender and Artist represent and warrant that: (a) Lender and Artist have the right and power to enter into this Agreement and to grant all the rights granted herein and by doing so, neither Lender nor Artist will be in conflict or violation of any agreement with a third party, (b) no materials, ideas, or other properties furnished by Lender and/or Artist and used in connection with the Work will violate or infringe upon the rights of any third party, (c) no permissions, consents or approvals of any third party, including, without limitation, any record label or publisher, is required in order for Lender and Artist to enter into and perform this Agreement and (d) other than the Fee and the Production Expenses, no other fees, royalties,

payments, amounts, charges or consideration of any kind will be due to Lender, Artist, any managers, agents, record labels, publishers, producers, mixers, re-mixers, engineers, programmers, musicians, vocalists, brokers or any other third party in connection with this Agreement and the creation and/or use of the Work.  Lender and Artist will fully indemnify, defend and hold Riot, its affiliates, successors and assigns, harmless from and against any losses, damages, claims and liabilities, including judgments, settlements, outside attorneys' fees and other costs, arising from, based upon, or in connection with any breach or alleged breach of Lender's and/or Artist's representations, warranties, obligations or agreements hereunder, provided such claim is reduced to a final, adverse, non-appealable judgment by a court of competent jurisdiction or settled with Lender and/or Artist's prior written consent (not to be unreasonably withheld, conditioned or delayed).  Neither Lender nor Artist shall have any liability with respect to any claims, costs, procedures, demands, losses, damages and expenses resulting from or by reason of any claim relating to the Master, and in such event, Riot agrees to indemnify Lender and Artist therefrom.

8.   Confidentiality.  Lender and Artist agree to maintain all proprietary and/or confidential information received from Riot, either orally or in writing, in confidence and agrees not to disclose or otherwise make available such information to any third party without the prior written consent of Riot, except to professional representatives, including but not limited to attorneys, accountants, and managers, who have a need to know such information in order to advise Lender and/or Artist and who are similarly bound to keep such information confidential .  Lender and Artist further agree to use such proprietary and/or confidential information only for the purpose of performing the services hereunder.  Notwithstanding the foregoing, confidential information does not include any information that: (i) is or subsequently becomes available to the general public other than through a breach of this Agreement by Lender or Artist; (ii) was in the possession of Lender or Artist prior to the execution of this Agreement or any previously executed confidentiality or non-disclosure agreement between the parties; (iii) Lender or Artist has rightfully received or later receives from a third party without any restriction as to confidentiality or use, so long as Lender or Artist does not know or have any reason to know that the third party's provision of such information or material is in violation of an obligation or duty of confidentiality; or (iv) is or was independently developed by Lender or Artist without the use of confidential information.  For avoidance of doubt, the existence and terms of this Agreement and the relationship between the parties hereto shall be considered Riot's confidential information and Lender and Artist shall not disclose or make reference thereto without the prior written consent of Riot for any purpose, including for marketing or promotional activities.  Lender's and Artist's obligation of confidentiality hereunder shall survive the termination or expiration of this Agreement.

9.   Credit.  For Riot's audio-only uses of the Work, Riot shall provide Artist credit in advertising and publicity and where Riot provides similar credits in substantially the following form: "Music by Riot Games remixed by Artist".  Notwithstanding the foregoing, Lender and Artist agree that a non-repetitive inadvertent failure to provide such credit will in no event be deemed a breach of this Agreement or entitle Lender or Artist to any relief or a claim for damages, provided that in the event of failure of such credit, upon written notice by Artist to Riot of such failure, Riot shall use best efforts to prospectively cure.

10.   Performance of the Work.  Lender and Artist expressly acknowledge and agree that they will not publicly perform, release other make public use of the Work or any part or version thereof unless and until Riot has publicly performed or otherwise publicly distributed the Work (the timing of which shall be in Riot's sole and absolute discretion).  Nothing herein shall be construed as a license or other grant of rights to use or perform the Work, and Lender and Artist shall be required to obtain any and all rights and licenses necessary to make any use of the Work.

11.   Non-Union.  Lender and Artist acknowledge that Riot is not a party to any guild or other collective bargaining agreement (e.g., AFM), and Artist's services shall not be subject to any such collective bargaining agreement.

12.   Termination.  In the event of Lender's and/or Artist's breach of this Agreement, without limiting Riot's rights or remedies at law or at equity, Riot will have the right to immediately terminate this Agreement.

13.   Equitable Remedies.  It is mutually agreed that Artist's services are special, unique, unusual, extraordinary, and of an intellectual character giving them a peculiar value, the loss of which cannot be reasonably or adequately compensated in damages in an action at law.  In the event of a breach of this Agreement by Riot, the rights and remedies of Lender and Artist shall be limited to Lender's and Artist's right to recover damages, if any, in

an action at law, and in no event shall Lender or Artist be entitled to terminate or rescind this Agreement or any of the rights granted hereunder or enjoin or restrain the distribution or other exploitation of the Work or any of the rights herein, or the use, publication or dissemination of any advertising, marketing or publicity issued in connection therewith, and Lender and Artist irrevocably waive any right to equitable or injunctive relief.

14.     Relationship.  Lender's and Artist's engagement hereunder is as an independent contractor and will not constitute Lender or Artist as an employee of Riot for any purpose whatsoever.  Lender and Artist agree that Lender and Artist will not be entitled to participate in or to receive the benefit of any employee plans or programs, including insurance, of Riot.  Lender and Artist represent and warrant that Lender will be solely responsible for the withholding and payment of all federal, state and local income taxes, Social Security taxes, unemployment taxes, disability insurance or similar items associated with the fees or compensation Lender receives hereunder.

15.     Loanout.  Lender shall furnish the services of Artist to Riot in accordance with all of the terms of this Agreement.  Lender is, and has been for more than thirty (30) days prior to the date hereof, a corporation duly organized and existing under the laws of Lender's state or country of incorporation.  Lender is a bona fide corporation business entity established for a valid business purpose within the meaning of the tax laws of the United States and not a mere sham, conduit, or agent for Artist.  Artist is under a written contract of employment with Lender for a term extending at least until the completion of all services required of Artist hereunder, which contract gives Lender the exclusive right to direct Artist as to when and how Artist performs Artist's services and to lend or furnish the services of Artist to Riot, as herein provided.  As Artist's employer, Lender shall discharge all obligations of an employer including, but not limited to, the withholding and reporting of contributions, insurance deductions and applicable taxes required by law, including payroll taxes and unemployment insurance.

16.     Governing Law.  This Agreement shall be governed by and construed in accordance with the law of the state of California and the courts (State and Federal) located in the country of Los Angeles, California, only, will have the jurisdiction of any controversies regarding this Agreement, and any action or other proceeding which involves such controversy will be brought in those courts and not elsewhere.

17.     Assignment.  Neither Lender nor Artist shall subcontract or make an assignment for the furnishing of any work or services under this Agreement without the prior written consent of Riot in each such instance. Neither Lender nor Artist may assign any of its rights or obligations under this Agreement without the prior written consent of Riot in each such instance.  Riot shall have the right to assign this Agreement and all or any part of Riot's rights and obligations hereunder.  This Agreement shall be binding on, and shall inure to the benefit of, the parties to this Agreement and their respective successors and permitted assigns.

18.     Notices.  All notices or other communications required or permitted hereunder shall be in writing and shall be deemed to have been duly given on the date when personally delivered, sent by confirmed fax, confirmed e-mail, or express courier, or deposited in the mail, registered or certified, postage prepaid, return receipt requested, to the parties' respective addresses set forth above.  Notice of change of address shall be given by written notice in the manner detailed in this Section 18.

19.     Miscellaneous.  This Agreement constitutes the entire agreement between the parties and supersedes all prior and contemporaneous written or oral agreements pertaining thereto and can only be modified by a writing signed on behalf of both parties hereto. If any provision of this Agreement is or becomes or is deemed invalid, illegal or unenforceable in any jurisdiction, such provision shall be deemed amended to conform to the applicable laws of such jurisdiction so as to be valid and enforceable or, if it cannot be so amended without materially altering the intention of the parties, it will be stricken, but the validity, legality and enforceability of such provision shall not in any way be affected or impaired thereby in any other jurisdiction and the remainder of this Agreement shall remain in full force and effect.  Waiver by either of the parties of any breach of any provision of this Agreement shall not operate or be construed as a waiver of any prior or subsequent breach of the same or any other provision hereof. The prevailing party in any litigation instituted under this Agreement shall, in addition to other remedies, be entitled to be reimbursed by the other party for all expenses of such litigation, including reasonable attorneys' fees. Any headings contained herein are for convenience only and shall not affect the construction hereof.  This Agreement may be

4

executed in counterparts, each of which shall be deemed an original, and all such counterparts shall constitute one instrument, and signatures transmitted by facsimile or electronic scan shall be effective.

*[Signature page to follow]*

IN WITNESS WHEREOF, the parties hereto have signed this Agreement as of the Effective Date.

ACCEPTED AND AGREED TO:

RIOT GAMES, INC.

By:      _____

Title:   _____

LENDER:

Telma Music, LLC

By: _____

Its:_____

By countersigning this Agreement, the undersigned confirms all grants made by Lender and agrees to perform the services herein provided for in accordance with the terms hereof, and the undersigned will look solely to Lender for any and all compensation hereunder.

_____
Artem Stolyarov p/k/a Arty ("**Artist**")

6

 **("Company")**

# REMIXER AGREEMENT

Date: <u>4/13/20</u>

| | |
|---|---|
| 1. Remixer ("Remixer"): <u>Artem Stoliarov p/k/a ARTY</u><br><br>Furnishing Company,<br>if any ("Furnisher"): <u>Telma Music, LLC f/s/o Artem Stoliarov p/k/a "ARTY"</u><br><br>Address of Remixer or Furnisher, as applicable:<br><u>c/o Monarch Business & Wealth Management LLC</u><br><u>9350 Wilshire Blvd, Suite 328</u><br><u>Beverly Hills, CA 90212</u><br><br>Attn: <u>Brett Bassock</u><br><br>Phone:<br><br>Email: <u>brettbassock@gmail.com</u><br><br>Requested Credit ("Credit"):<br><br><u>Remixed by ARTY</u> | 2. Company's Artist (the "Artist"):<br><br><u>Surf Mesa</u><br><br>3. Title of Master (s) ("Master") to be Remixed:<br><br><u>ily</u><br><br>4. Description and/or Title(s) and/or Versions of Remix(es):<br><br><u>ily (ARTY Remix)</u><br><u>ily (ARTY Remix Instrumental)</u><br><br>and any other remix(es) delivered therewith (collectively, the "Remix").<br><br>5. Company Contact:<br><br>Name: <u>Jenna Vitolo & Traci Fuller</u><br>Email: <u>jenna.vitolo@umusic.com & traci.fuller@umusic.com</u><br>Phone: (323) 871-5235 |
| Check and Complete Applicable Payment Method:<br><br>☒ All-In Fund ("Fund"): $ 12,000<br>☐ Advance plus Budget:<br>    Advance: $ _____<br>    Budget: $ _____ | **Delivery Due Date ("Due Date"):**<br><br><u>Company hereby acknowledges Furnisher's satisfactory delivery and Company's acceptance of the Remixes.</u> |

<u>Royalty</u>: No royalties are payable in connection with the Remix unless specifically approved by Company. If initialed in the space below by Company's VP, Business Affairs, then the specified royalty shall be payable in accordance with the terms hereof:
☐ Royalty: _____% Initialed: _____

Accepted and Agreed To:                                          Accepted and Agreed To:

**Furnisher (if applicable)**                                    **Company**

By: _____          By: _____
    **(Please initial page 2 as well)**                         Sr., Vice President, Business Affairs

**The undersigned has read and understands the foregoing agreement (including the standard terms and conditions attached) and agrees to all of the terms and conditions thereof. The undersigned agrees to guarantee his performance, and all warranties, representations, covenants and agreements made by Furnisher under the foregoing agreement, and further agrees to look exclusively to Furnisher for payment of all compensation due to the undersigned in connection with the performance of the undersigned's services as set forth in this agreement.**

**Remixer:**

_____
    **(Please initial page 2 as well)**

*__Subject to Standard Terms and Conditions on Page 2 Attached__*

-1-



("Company")

**REMIXER AGREEMENT**
**Standard Terms and Conditions**

Page 1 of this agreement is subject to the following standard terms and conditions that have been mutually agreed upon:

1.  If a Furnisher is listed on Page 1 hereof, then, for purposes of this agreement, Remixer's services hereunder shall be deemed to be furnished to Company by Furnisher, all payments otherwise payable to Remixer hereunder shall be made to Furnisher, Furnisher will be solely responsible for and will pay all amounts due to Remixer and all references to Remixer below will be deemed to refer to both Remixer and Furnisher.

2.  Remixer will remix the Master and deliver the Remix to Company by no later than the Due Date.  As used herein, the term "deliver" includes, without limitation:  (i) delivery to, and acceptance by, Company of the Remix in a form that is both technically and commercially acceptable to Company; (ii) clearance of any and all samples furnished by Remixer to the satisfaction of Company; and (iii) delivery to Company of: (A) a clearly labeled production master in the format customarily utilized by Company; (B) the source multi-track master(s); and (C) written production credits.  Company acknowledges that the Remixes have been Delivered in accordance with the terms set forth herein.

3.  The Remix (but excluding the underlying musical composition) will be deemed a "work made for hire" for Company, and Company shall have the exclusive right to copyright the Remix in its name and to secure any and all renewals and extensions of such copyright throughout the world.  Accordingly, the Master, the Remix, and all duplicates and derivatives thereof, are and will be the property of Company throughout the world in perpetuity from the inception of their creation, and Company shall have the exclusive right to use or not use the Remix in any medium or manner, by any method now known or hereafter created without any compensation to Remixer other than as specifically set forth in paragraph 4 below.  Remixer agrees that each recording or derivative thereof of the Remix is a work made for hire and, additionally, a contribution to a collective work.  In any event, Remixer assigns to Company ownership and all rights, including the copyright, in the Remix (but excluding the underlying musical composition and agree to execute and deliver to Company any additional documents Company desires to confirm same, and failing which, Company may sign such documents in Remixer's name.

4.  (a)  All-In Fund.  If the "All-In" Fund payment method on page 1 is selected by Company, then the Fund will be paid one-half (1/2) once Remixer starts work hereunder (provided this agreement has been signed by Remixer and Company), and the balance, less any recording costs incurred or paid by Company, on behalf or Remixer will be paid promptly following the delivery to and acceptance by Company of the Remix in accordance with paragraph 2 above.  In this case, Furnisher will be solely responsible for and will pay all costs incurred in connection with the Remix by Remixer including, without limitation, payments to the Remixer, unions, engineers, studios, and the cost of tape and sample clearance, but excluding any payments to the Artist under the Artist's agreement with Company.

(b)  Advance and Budget.  If the Advance plus Budget payment method on page 1 is selected by Company, then the Advance will be paid one-half (1/2) once Remixer starts work hereunder (provided this agreement has been signed by Remixer and Company), and the balance will be paid after the delivery to and acceptance by Company of the Remix in accordance with paragraph 2 above.  In this case, Company shall pay recording costs in accordance with a written budget approved in advance by Company up to a maximum of the dollar figure listed on page 1 hereof as the Budget (the "Budget').  Remixer shall be

solely responsible for and shall pay any and all costs and expenses in connection with the Remix in excess of the Budget.

(c)  Royalty.  If and only if the royalty section on page 1 above is checked and initialed, Company shall pay Remixer the basic royalty rate indicated in such section applicable to net "full-price" sales of records embodying the Remix through normal retail channels in the United States, computed, adjusted and paid in the same manner at the same times and subject to the same terms and conditions as the royalty payable to the artist under the artist's agreement with Company, with proportionate reductions on all sales for which reduced royalties (or no royalties) are payable under that agreement.  As to records not consisting entirely of the Remix, Remixer's royalty will be prorated based on the number of versions of the Remix that are contained on each such record compared to the total number of royalty bearing master recordings (including the Remixes) contained on each such record.  Company shall have the right to recoup from this royalty an amount equal to the Advance or one-half the Fund, whichever applies.

5.  Company and its licensees will have the right, but not the obligation, to use Remixer's professional name, prior written approved likeness and prior written approved biographical material on packaging and label copy, and for publicity and advertising solely in connection with records embodying the Remix on metadata in connection with electronic transmissions.  Company shall use its best reasonable efforts to give Remixer the Credit listed on page 1 as part of the packaging of records containing the Remix and in trade advertising for the Remix; but any inadvertent failure by Company to do so will not be deemed a breach hereof.  With respect to the Spotify platform, Company will use best reasonable efforts to accord Remixer credit as a so-called "primary artist" such that the Remix will appear among the "singles" listed on Remixer's Spotify page but any inadvertent failure by Company to do so will not be deemed a breach hereof, provided Company use its best reasonable efforts to cure any such failure promptly following receipt of notice from Furnisher requesting same.

6.  Furnisher warrants and represents that: (a) Remixer has the right to enter into and perform this agreement; (b) Remixer will be solely responsible for and will pay the amounts required to be paid by Remixer hereunder; (c) Remixer will not incorporate any samples or side artist performances into the Remix without Company's prior written consent; and (d) Remixer shall obtain and supply to Company all necessary licenses, consent, permissions, waivers and other consents from all participants in the recording, as well as all payroll forms, invoices, receipts and documents pertaining to such recording sessions; and (e) no materials (including, but not limited to, samples) furnished by Remixer contained in the Remix will violate or infringe upon any rights of any person or entity.  Remixer hereby irrevocably waives any claims, right, title or interest, including, without limitation, any copyright interest, in any composition embodied on the Remix.  Furnisher and Remixer hereby waive any claim to any moral rights in the Remix.  Remixer will not be responsible for and will have no liability in connection with any element or materials, including the musical composition(s), embodied in the original Master, even if such materials or elements thereof are utilized in the Remix.

7.  Remixer acknowledges that the Master may not have been released to the public.  Except to the extent necessary for Remixer to

-2-



**("Company")**

render Remixer's services hereunder, Remixer agrees not to sell, transfer or copy in any way (including, by CD burning, loading them onto a computer or uploading to the internet) any sound recording provided by Company.  Remixer agrees not to make sound recordings provided hereunder available in any manner to a third party and will take all necessary steps to make sure that they do not pass into the possession of any third party.

8.   Furnisher hereby agrees to indemnify, save and hold harmless Company and Artist, and their respective licensees, assigns, employees and agents from any and all liability, actual, verifiable out-of-pocket costs, losses and expenses arising out of or connected with any claims by any third party or any act by Remixer which is inconsistent with any of the warranties, representations or agreements made by Remixer in this agreement to the extent reduced to a final judgment (prior to appeals) in a court of competent jurisdiction or settled with Remixer's prior written consent, such consent not to be unreasonably withheld.

9.  This agreement may not be assigned by Remixer, shall be governed by California law and constitutes the entire agreement among the parties superseding any other negotiations or understandings which are being merged herein.

Initialed _____ (Furnisher) _____ (Remixer)

DocuSign Envelope ID: 668A3E35-02EB-444C-ADEF-36EB8F2C9E05

From: VIRGIN EMI RECORDS ("we, our, us")
A division of Universal Music Operations Limited
4 Pancras Square
London N1C 4AG

To: Telma Music, LLC ("you, your")  f/s/o Artem Stoliarov p/k/a "ARTY" ("Remixer")
c/o LaPolt Law, P.C.
9000 Sunset Blvd., Suite 800
West Hollywood, CA 90069
Attn: Dina LaPolt, Esq.

20.09.19

**RE: ARTY remixing the Gorgon City & MK track 'There For You'**

Dear ARTY

**YOUR MIXING SERVICES**

1.0     We engage you to provide your Remixer's services as a re-mixer of the Recording (defined below).  You agree to cause Remixer to re-mix the Recording to the best of Remixer's skill and ability at times and places to be designated by us and to deliver to us when we reasonably require a first class master embodying the Recording re-mixed by Remixer ("Re-Mix") which is technically satisfactory to us and artistically commensurate with recordings previously re-mixed by Remixer and released to the public on general sale.

2.0     We will pay you the Fee (defined below) in respect of Remixer's services referred to in this agreement, which Fee shall be paid to you as follows: One Hundred Percent (100%) upon full execution of this agreement.  We hereby acknowledge satisfactory completion of your and/or Remixer's services and obligations hereunder and agree that the Re-Mix has been delivered to and accepted by us. The Re-Mix shall be deemed not to include any performance(s) by Remixer, unless it shall actually embody such performance(s). Any and all such performance(s) by Remixer shall be deemed for all purposes to be non-featured session performances. The Fee will be your sole remuneration in respect of your services referred to in this agreement and the exploitation of the Recording and the Re-Mix and will constitute fair and equitable remuneration for the services to be rendered under this agreement (and the product thereof) and the rights granted under this agreement including, without limitation, all rental and lending rights granted herein. You shall pay all costs solely incurred by you in connection with the re-mixing of the Recording and, accordingly, the Fee shall be inclusive of all such costs. You shall not have, and shall not purport to have, any authority to assume any liability on our behalf.

3.0   You irrevocably and unconditionally to the fullest extent permitted by law assign to us (by way of assignment of present and future copyright) all the copyright and other rights in and to your contributions to the Re-Mix (but excluding the underlying musical

DocuSign Envelope ID: 668A3F35-02EB-444C-ADEF-36EB8F2C9E05

composition) to hold to us absolutely without reservation for the use and benefit of us and our successors, assigns and licensees throughout the world for the full period of copyright including all renewals, reversions and extensions; give all such consents as may be necessary to enable us to exploit, and authorise others to exploit, worldwide in any and all media by any and all means now known or developed in the future your contributions to the Re-Mix; waive all so-called "moral rights" or similar rights now existing or created in the future in any part of the world in respect of the Re-Mix; grant to us the exclusive rental and lending rights in and to the products of your services as a remixer under this agreement (i.e. the Re-Mix) (but excluding the underlying musical composition) which you may have at the date hereof, or which may after the date hereof be conferred on you, whether pursuant to the implementation of the EEC Directive 92/100 EC or 19 November 1992 or otherwise; and grant to us the right to use, and to authorise others to use Remixer's professional name ("ARTY"), prior written approved biographical details, prior written approved photographs and other prior written approved likenesses in all media solely in connection with the Re-Mix.

4.0     We will accord Remixer the Credit (defined below) on digital booklets, wherever metadata permits, and on the labels, liner notes and, where practicable, the sleeves of all records wholly embodying the Re-Mix and in all advertisements related to the Re-Mix, but if we inadvertently fail to do so on a non-repetitive basis we shall only be obliged to use reasonable endeavours to promptly rectify the error on all labels, metadata, advertising and, if applicable, sleeves manufactured after we receive written notice of the error from you or after our independent discovery of same.

5.0     You warrant that the Re-Mix (but specifically excluding the Recording): (i) will not embody any samples without our prior written approval and (iii) will not violate or infringe any common law or statutory right of any person, firm or corporation including, but without limitation, contractual rights and copyright. You shall indemnify us against any and all third party claims, costs, proceedings, demands, losses, damages and actual, verifiable, out-of-pocket expenses resulting from or by reason of any third party claim arising from a breach of any of your representations, warranties, agreements and undertakings in this agreement, provided such claim is reduced to a final, adverse judgment by a court of competent jurisdiction or settled with your prior written approval.

5.1     We warrant and represent that neither the underlying Recording nor the performances or any other materials embodied thereon will violate or infringe upon any rights of any person or entity. We shall indemnify you and Remixer against any and all claims, costs, proceedings, demands, losses, damages and expenses resulting from or by reason of any third party claim arising from a breach of any of our representations, warranties, agreements and undertakings in this agreement, provided such claim is reduced to a final, adverse judgment by a court of competent jurisdiction or settled with our prior written consent, not to be unreasonably withheld or delayed.

6.0     If we agree in writing that the Re-Mix may embody one or more samples, you will deliver to us, at the same time as you deliver the master embodying the Re-Mix, a complete list of all such samples.

7.0     This agreement shall be governed by, and construed in accordance with, the laws of

England and Wales, whose courts shall be the courts of exclusive jurisdiction.

8.0    This agreement may be executed in one or more counterparts, each of which when taken together, will be deemed to constitute one and the same instrument.  Facsimile or .PDF digital signatures on this agreement will be deemed originals for all purposes.

4818-8911-8638, v. 1

## <u>SCHEDULE</u>

In this agreement:

1.       "Artist" means Gorgon City & MK.

2.       "Credit" means "Remix and additional production by ARTY ".

3.       "Fee" means $10,000 (Ten Thousand Dollars).

4.       "Recording" means the master recording embodying the Artist's performance of the composition entitled "There For You".

Please confirm your agreement to the above by signing and returning the enclosed duplicate of this agreement.

Yours faithfully

_____                    _____
**VIRGIN EMI RECORDS**                                      **VIRGIN EMI RECORDS**
A division of Universal Music Operations Ltd          A division of Universal Music Operations Ltd

**Read, agreed and accepted**

_____

**Telma Music, LLC f/s/o Artem Stoliarov p/k/a "ARTY"**

_____

4818-8911-8638, v. 1